## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

### ALEXANDRIA DIVISION

| | |
|---|---|
| **AJP EDUCATIONAL FOUNDATION, INC. d/b/a AMERICAN MUSLIMS FOR PALESTINE**, a California corporation with its principal place of business at 6404 Seven Corners Place, Ste. N, Falls Church, VA 22044, | CIVIL ACTION No.: |
| *Plaintiff*, | |
| vs. | **PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND TEMPORARY RESTRAINING ORDER** |
| **JASON S. MIYARES**, in his official capacity as Attorney General of Virginia, 202 North 9th St. Richmond, VA 23219 | |
| *Defendant*. | |

### PLAINTIFF'S VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND TEMPORARY RESTRAINING ORDER

Plaintiff AJP Educational Foundation, Inc. d/b/a American Muslims for Palestine ("Plaintiff" or "AMP"), by and through undersigned counsel, files this Complaint for Declaratory and Injunctive Relief against Defendant Jason S. Miyares, in his official capacity as Attorney General of Virginia ("Attorney General" or "Defendant Miyares"). Plaintiff presents the following claims for relief and supporting factual background.

### I.      INTRODUCTION

For nearly two years, Defendant Miyares has abused the power of his office to target and harass AMP simply because Defendant Miyares disagrees with AMP's protected speech and association. AMP seeks a declaration from this Court finding the actions of Defendant Miyares against AMP violate the Constitution of the United States of America. Plaintiff AMP also asks this

Court to issue an injunction prohibiting Defendant Miyares from enforcing the pending Civil Investigative Demand ("CID") against AMP until either this Court or the Virginia courts rule on AMP's constitutional challenges to the CID.

## II.    PARTIES

1.    Plaintiff AJP Educational Foundation, Inc. is a nonprofit organization incorporated in California under Section 501(c)(3) of the Internal Revenue Code. It maintains its principal place of business in Falls Church, Virginia. It operates under the designated fictitious name American Muslims for Palestine ("AMP").

2.    Defendant Miyares is the Attorney General of Virginia and has held that office since January 2022.

## III.    JURISDICTION AND VENUE

3.    This Court possesses federal question jurisdiction under 28 U.S.C. § 1331 and jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201.

4.    Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) because AMP is headquartered in this district and "a substantial part of the events or omissions giving rise to the claim occurred" in this district.

## IV.    STATEMENT OF FACTS

**Background on AMP**

5.    Plaintiff AMP alleges and incorporates by reference all numbered paragraphs above.

6.    AMP is a nonprofit grassroots organization based in Virginia "dedicated to advancing the movement for justice in Palestine by educating the American public about Palestine and its rich cultural, historical and religious heritage." *See* American Muslims for Palestine, *Who is AMP?*, https://www.ampalestine.org/about-amp (last visited Sept. 18, 2025).

7.    The cornerstone of AMP's work is education through workshops, seminars, and trainings across the country. AMP also publishes reports and educational materials.

8.    Each year, AMP hosts an annual convention during Thanksgiving weekend in Chicago, which is the largest gathering for Palestine in the U.S. It features educational workshops, entertainment, and a cultural market.

9.    AMP also enjoys its proximity to Washington, DC to engage in limited advocacy with lawmakers on issues related to Palestine. In 2021, AJP Action incorporated as an affiliated 501(c)(4) organization that can engage in lobbying related to legislation.

10.   AMP also engages in organizing efforts to build an empowered grassroots community that brings awareness to the issue of Palestine.

11.   AMP does not accept donations from outside of the United States, and spends all of its money within the United States on projects furthering its mission.

**Defendant Miyares Initiates an Investigation**

12.   On October 31, 2023, Defendant Miyares announced through a press conference and published press release the initiation of an investigation into AMP for alleged violations of Virginia's Solicitation of Contributions ("VSOC") law.[1]

13.   The next day, Defendant appeared at an event outside of his office at which surplus materials donated by Virginia law enforcement agencies at Defendant Miyares' direction were loaded onto trucks to be transported to Israel.[2]

---

[1] Office of the Attorney General, *Attorney General's Office Opens Investigation Into American Muslims for Palestine Nonprofit*, OFFICE OF THE ATTORNEY GENERAL NEWS RELEASES (Oct. 31, 2023), https://www.oag.state.va.us/media-center/news-releases/2630-october-31-2023-attorney-generals-office-opens-investigation-into-american-muslims-for-palestine-nonprofit.

[2] Graham Moomaw, *After opening probe of pro-Palestinian group, Virginia AG sends supplies to Israel*, VIRGINIA MERCURY (Nov. 1, 2023, 3:26pm),

14.     When asked at that event about the source of the allegations against AMP, Defendant declined to "reveal both our sources and how we got this information."

15.     Defendant Miyares' press release linked to an order from May 2022 from the Northern District of Illinois denying AMP's 12(b)(6) motion to dismiss a lawsuit against it.

16.     Since the order denied AMP's motion to dismiss, it necessarily did not pass judgement on the veracity of the allegations against AMP, yet Defendant Miyares relied on it over a year later as the basis for opening an investigation.

17.     The link directed to a PDF hosted on the website of the Investigative Project on Terrorism, a non-profit think-tank recognized for its significant anti-Muslim bias.

18.     AMP subsequently received a Civil Investigative Demand ("CID") via U.S. Mail dated October 27, 2023.

19.     The press conference was the first time AMP received any notice of any purported violation of Virginia law, despite operating in Virginia since 2016.

20.     AMP first incorporated in California in 2006.

21.     AMP then moved its principal place of business to Virginia in 2016, at which time it applied for and received a Certificate of Authority to Transact Business in Virginia.

22.     In 2017, AMP applied for and received a Virginia Certificate of Trade Name indicating that it operates under the name of American Muslims for Palestine.

23.     AMP continued to file yearly reports with the Commonwealth of Virginia as required by law.

---

https://virginiamercury.com/2023/11/01/after-opening-probe-of-pro-palestinian-group-virginia-ag-sends-supplies-to-israel/.

24.    Prior to October 2023, AMP was unaware of any requirement to register with the Virginia Department of Agriculture and Consumer Services ("VDACS") pursuant to the VSOC law, nor did any representative from VDACS or the Attorney General's office contact AMP to communicate that requirement.

25.    As soon as AMP learned about the need to register with VDACS, via Defendant Miyares' press conference, it promptly did so, and remains in compliance.

26.    The CID requested AMP produce thirty-one (31) categories of documents, some with subcategories, and respond to twelve (12) interrogatories (three with sub-parts).

27.    The CID requested a broad range of information, ranging from all documents submitted to VDACS, to "all meeting minutes and agendas for any meeting of your board of directors," documents reflecting all "checking, depository, savings, investment, credit card, debit card, charge card, loan, or other financial account," and "all donor lists."

28.    The interrogatories also demanded information ranging from whether AMP registered with VDACS to whether AMP provided any funds to "terrorists, terrorist organizations, terrorist activities or to family members of any terrorist[.]"

29.    Defendant Miyares subsequently lead a group of twenty-two states attorneys general in filing an *amicus curiae* brief before the Eastern District of Virginia in a lawsuit brought against AMP, claiming that he possessed a special interest in the subject matter of the suit. *See* Motion of Commonwealth of Virginia, State of Iowa, and 20 Other States for Leave to File Brief as Amici Curiae, *Parizer et al. v. AJP Educational Foundation Inc., et al.*, No. 1:24-cv-00724-RDA-IDD (E.D. Va. Sept. 20, 2024), ECF No. 91.

30.    In that matter, this Court ultimately held that those Plaintiffs failed to state a claim for relief under the Anti-Terrorism Act and did not plead facts sufficient to state that AMP engaged

in material support to terrorism. *See* Memorandum Opinion and Order, *Parizer et al. v. AJP Educational Foundation Inc., et al.*, No. 1:24-cv-00724-RDA-IDD (E.D. Va. Aug. 15, 2025), ECF No. 161.The plaintiffs in that case did not file an amended complaint, despite the Court allowing them the opportunity to do so.

**AMP Petitions to Set Aside or Modify the CID**

31.     AMP responded directly to the portions to the CID it did not challenge on December 7, 2023, and produced responsive records to Defendant's office.

32.     AMP also filed a Petition to set aside or modify the CID with the City of Richmond Circuit Court, on November 27, 2023 pursuant to Va. Code Ann. § 59.1-9.10, attached hereto as Exhibit A.

33.     AMP's Petition asked the Virginia Circuit Court to set aside the portions of the CID that reflected an impermissibly broad use of the Attorney General's authority to investigate violations of the VSOC law.

34.     AMP argued that portions of the CID breach AMP's protected freedom of speech and association under the First Amendment, and violate AMP's right to due process enshrined in the Fourteenth Amendment.

35.     AMP and attorneys from the Attorney General's office appeared before the City of Richmond Circuit Court on July 16, 2024.

36.      At that time the Circuit Court made an oral ruling denying AMP's Petition to set aside or modify the CID without explanation as to its reasoning other than there had been reason for Defendant to initiate a CID due to the lack of filing with VDACS.

37.     The Circuit Court later issued a written order on July 30, 2024.

38.    The Circuit Court's Order did not address the constitutional issues AMP raised in its Petition, and instead held only that "the Attorney General was entirely within his statutory authority to <u>initiate</u> a Civil Investigative Demand." *See* Order, Exhibit B (emphasis added).

39.    AMP timely filed an appeal of that order with the Virginia Court of Appeals.

40.    On August 5, 2024, AMP requested the Circuit Court stay enforcement of the CID pending the outcome of AMP's appeal.

41.    The Circuit Court denied AMP's request on October 11, 2024.

42.    AMP then requested the Court of Appeals to stay enforcement of the CID.

43.    That court too declined to stay enforcement of the CID on June 9, 2025.

**Defendant Files a Separate Petition to Enforce**

44.    While AMP's timely-filed appeal remained pending, Defendant filed a separate Petition to enforce the CID on January 14, 2025.

45.    Defendant's office marked that filing with a second press release, proclaiming without support that AMP "may have used solicited funds for impermissible purposes, such as benefiting or providing support to terrorist organizations."[3]

46.    The Circuit Court in that matter issued an order on May 9, 2025 finding that the stay of enforcement contemplated by the statute lifts when proceedings conclude in the Circuit Court, and ordered "[AMP] shall comply with the CID."

---

[3] Office of the Attorney General, *Attorney General Miyares Holds American Muslims for Palestine Accountable for Refusing to Comply with Investigation*, OFFICE OF THE ATTORNEY GENERAL NEWS RELEASES (Jan. 14, 2025), https://www.oag.state.va.us/media-center/news-releases/2825-january-14-2025-attorney-general-miyares-holds-american-muslims-for-palestine-accountable-for-refusing-to-comply-with-investigation.

47.     Defendant's office issued yet another press release on May 13, 2025, again asserting with no support that AMP "may have used solicited funds for impermissible purposes, such as benefiting or providing support to terrorist organizations."[4]

48.     Defendant Miyares also shared a links to news articles about the order on his social media accounts, including Facebook and X.[5]

49.     The article, from *Jewish Insider*, includes statements falsely accusing AMP officials of having ties to Hamas.[6]

50.     On August 5, 2025, Defendant moved for a Rule to Show Cause, which the Circuit Court entered. *See* Exhibit C.

51.      The hearing for the Rule to Show Cause is presently scheduled for September 29, 2025.

52.     To date, no court has substantively addressed or ruled on the Constitutional objections AMP timely raised.

53.     The Supreme Court of the United States in the upcoming term will hear a case that addresses this very issue: whether a federal court may review constitutional objections to state action while related cases are pending in state court, and whether a party must suffer harm prior to federal court review. *See* Brief for Petitioner, *First Choice Women's Resource Centers, Inc. v. Platkin*, No. 24-781 (U.S. Aug. 21, 2025).

---

[4] Office of the Attorney General, *Attorney General Miyares Secures Court Decision Requiring American Muslims for Palestine to Comply with Investigation*, OFFICE OF THE ATTORNEY GENERAL NEWS RELEASES (May 13, 2025), https://www.oag.state.va.us/media-center/news-releases/2865-may-13-2025-attorney-general-miyares-secures-court-decision-requiring-american-muslims-for-palestine-to-comply-with-investigation.

[5]     Jason     Miyares     (@JasonMiyaresVA),     X     (May     13,     2025,     8:39     AM), https://x.com/JasonMiyaresVA/status/1922285592009679331.

[6] Matthew Kassel, *Judge orders American Muslims for Palestine to disclose financial documents*, JEWISHINSIDER (May 13, 2025), https://jewishinsider.com/2025/05/american-muslims-for-palestine-judge-order-virginia-fundraising-links/.

## V.    CAUSES OF ACTION

**Count 1: First Amendment – Freedom of Speech**

54.    Plaintiff alleges and incorporates by reference all numbered paragraphs above.

55.    The First Amendment prohibits the government from restricting speech with which it does not agree.

56.    As one of its most important functions, the First Amendment protects discussion of governmental affairs.

57.    Plaintiffs bear the burden to show that the challenged government action restricts protected speech.

58.    Defendants then must prove the speech restriction is permissible by demonstrating that 1) the government has a significant interest; 2) the act furthers that interest; and 3) the act is sufficiently tailored to further that interest.

59.    AMP's speech falls within the protections of the First Amendment because it serves to educate people about Palestine, as well as advocate for an issue of public concern—the actions of the U.S. government abroad.

60.    Defendant Miyares asserts the CID is necessary to evaluate whether AMP is using donor funds for an improper purpose, since AMP was not registered with VDACS.

61.    AMP remains properly registered with VDACS and timely submitted the necessary renewal forms for subsequent years.

62.    The CID as worded is not narrowly tailored to meet that interest, as it seeks a broad range of information unrelated to AMP's use of donor funds.

63.    It serves only to chill AMP's speech by subjecting it to investigation for its speech on matters of public concern and other protected matters.

64.     Plaintiff AMP is entitled to a temporary injunction prohibiting enforcement of the CID, declaratory relief from this Court finding that the CID wrongfully curtails AMP's protected speech, and injunctive relief prohibiting Defendant Miyares from enforcing compliance with the CID prior to any courts' ruling on the constitutionality of the CID's requests.

**Count II: First Amendment – Freedom of Association**

65.     Plaintiff alleges and incorporates by reference all numbered paragraphs above.

66.     The First Amendment protects expressive association, the right of individuals to join together and advance shared ideas and beliefs.

67.     Courts engage in a three-part balancing test to determine whether a challenged action infringes on expressive association: 1) whether the group engages in expressive association; 2) whether the challenged act significantly burdens the group's ability to advocate its viewpoints; and 3) whether the state's interest justifies the burden by being narrowly tailored to a compelling state interest unrelated to suppressing ideas. *See Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984).

68.     AMP engages in expressive association through advancing the shared goal of educating the American public about Palestine and its rich history and culture.

69.     The scope of Attorney General Miyares' CID significantly burdens AMP's ability to advocate for its viewpoints because it seeks lists of donors, employees, collaborators, and others associated with AMP.

70.     This request remains publicly available since the Attorney General posted the CID on the internet with his initial press release.

71.     Potential donors and partners hesitate to associate with AMP for fear they will be caught up in an investigation, hindering AMP's ability to continue its expressive mission. *See,*

*e.g.,* Declaration of Dr. Osama Abuirshaid at ¶¶ 8-9, *Boim et al. v. American Muslims for Palestine et al.*, No. 17-cv-03591 (N.D. Ill. Sept. 12, 2024), ECF No. 459-3 (explaining that AMP has experienced a decline in donations due to fears that donors names will become public and they will be investigated).

72.    The Attorney General's CID fails to narrowly tailor its scope to enforcement of the VSOC law, as it requests information far beyond anything Defendant may need to determine whether AMP violated Virginia law.

73.    The U.S. Supreme Court held that states cannot compel disclosure of membership lists, as such compelled disclosure chills free association. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958).

74.    Defendant's improper request constitutes an attempt to chill AMP's association through demanding such disclosure of membership and partnership lists.

75.    Plaintiff AMP is entitled to a temporary injunction prohibiting enforcement of the CID, declaratory relief from this Court that Defendant Miyares violated the First Amendment, and injunctive relief prohibiting Defendant Miyares from using a CID to unlawfully access AMP's protected lists of members and donors.

**Count III: First Amendment – Retaliation, Violation of 42 U.S.C. § 1983**

76.    Plaintiff alleges and incorporates by reference all numbered paragraphs above.

77.    Supporting its claim for First Amendment retaliation, AMP shows that 1) it engaged in a protected First Amendment activity; 2) Defendant Miyares took an adverse action that would deter a person of ordinary firmness from continuing to engage in that activity; and 3) a causal relationship between the protected activity and the adverse action. *See Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685-86 (4th Cir. 2000).

78.    AMP engaged in protected First Amendment speech and association through its activities in furtherance of its mission in Virginia and elsewhere in the country.

79.    Defendant Miyares took adverse action against AMP by very publicly initiating an investigation into AMP that characterized it as a terrorist-supporting organization, subsequently reiterating those unsupported allegations, and sharing media posts with false allegations tying AMP to terrorist groups.

80.    That targeting necessarily discourages AMP from continuing its protected First Amendment speech and association and sends a message to other groups and individuals that promoting education about Palestine will elicit targeting by Commonwealth officials.

81.    Defendant Miyares relies only on a court order on a motion to dismiss, already two years old at the time, as the sole identified justification for initiating his search.

82.    Defendant clearly articulated, in multiple press conferences, his motivation in taking actions against AMP as silencing AMP's protected speech with which Defendant disagrees.

83.    Therefore, Plaintiff AMP is entitled to a temporary injunction prohibiting enforcement of the CID, declaratory relief from this Court finding that Defendant Miyares violated the law in retaliating against AMP for its protected speech and association, and injunctive relief prohibiting Defendant Miyares from enforcing an unlawful CID.

**Count IV: First and Fourteenth Amendments – Viewpoint Discrimination**

84.    Plaintiff alleges and incorporates by reference all numbered paragraphs above.

85.    Defendant Miyares unlawfully targeted AMP for its speech in support of Palestine, while actively encouraging speech and actions in support of Israel.

86. The U.S. Supreme Court describes viewpoint discrimination "an egregious form of content discrimination" that is subject to strict scrutiny. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

87. Defendant Miyares unlawfully used the power of his office to exclude and/or attempts to chill AMP's speech simply because he disagrees with it.

88. Plaintiff AMP is entitled to a temporary injunction prohibiting enforcement of the CID, declaratory relief from this Court that Defendant Miyares' actions constitute unlawful viewpoint discrimination, and injunctive relief prohibiting Defendant Miyares from targeting AMP simply because of its advocacy of ideas with which he does not agree.

**Count V: Fourth Amendment – Unreasonable Search and Seizure**

89. Plaintiff alleges and incorporates by reference all numbered paragraphs above.

90. Courts consider CIDs, like subpoenas, to be a "constructive search," and recipients have the right to challenge them in court before complying.

91. CIDs must limit their scope and purpose reasonably and may not be indefinite or excessively broad.

92. Courts have authority to refuse to enforce a CID where it was issued in bad faith or for an improper purpose, including to harass or retaliate against the target.

93. Government actors must show that the investigation bears a legitimate purpose, the information sought is relevant, the demand is sufficiently specific, and procedural steps have been followed. *United States v. Powell*, 379 U.S. 48, 57-58 (1964).

94. Defendant Miyares issued his overly broad CID because that improperly seeks information irrelevant to the stated purpose of investigating any violation of the VSOC law.

95.    The CID harasses AMP with the improper purpose of targeting AMP for its protected speech and association.

96.    Defendant Miyares cannot and has not demonstrated the CID bears a legitimate purpose, since AMP remains in compliance with the VSOC law, and all other Virginia and federal laws.

97.    Defendant Miyares presented no evidence to any court that AMP uses its funds for any impermissible purpose.

98.    Plaintiff AMP is entitled to a temporary injunction prohibiting enforcement of the CID, declaratory relief from this Court finding that the CID constitutes an unreasonable search, and injunctive relief prohibiting Defendant Miyares from enforcing compliance with the CID.

## VI.    PRAYER FOR RELIEF

Plaintiff AMP prays for judgment in its favor and against Defendant Miyares, and respectfully requests this Court grant the following relief:

1.    Issue a temporary restraining order prohibiting enforcement of the CID pending the outcome of this litigation;

2.    Declare that the CID issued by Defendant Miyares violates the First Amendment to the United States Constitution;

3.    Declare that Defendant Miyares' actions against AMP violate 42 U.S.C. § 1983;

4.    Declare that the CID issued by Defendant Miyares violates the Fourth Amendment to the United States Constitution;

5.    Preliminarily enjoin Defendant Miyares from enforcing compliance with the CID until any court (this Court, the Virginia Court of Appeals, or the Virginia Circuit Court) issues a ruling as to the constitutionality of the scope of the CID;

6.    Permanently enjoin Defendant Miyares from enforcing compliance with requests in the CID that violate the United States Constitution;

7.    Award Plaintiff AMP with its costs and reasonable fees incurred in this action; and

8.    Grant such other relief as the Court may deem just and proper.


Respectfully submitted,
AJP EDUCATIONAL FOUNDATION, INC.
D/B/A
AMERICAN MUSLIMS FOR PALESTINE
By Counsel


## VERIFICATION

I hereby certify under penalty of perjury under the laws of the United States, that I have read the foregoing Verified Complaint and that the facts set forth therein are true and accurate.


Executed on:    9/25/2025    _____

AJP EDUCATIONAL FOUNDATION, INC.
D/B/A
AMERICAN MUSLIMS FOR PALESTINE

By: Munjed Ahmad

Its: Co-Founder, Vice Chairman, and Duly Appointed Agent

Dated: September 25, 2025

MAHDAVI, BACON, HALFHILL, & YOUNG, PLLC

/s/ James T. Bacon
James T. Bacon, Esq. (VSB# 22146)
11350 Random Hills Road, Suite 700
Fairfax, VA 22030
703-352-1300
703-352-1301 (Fax)
jbacon@mbhylaw.com

Constitutional Law Center for Muslims in America*

Christina A. Jump (*pro hac vice forthcoming*)
(D.C. ID No. TX151)
Samira S. Elhosary (*pro hac vice forthcoming*)
(D.C. Bar No. 90013901)
Christina A. Boyd (*pro hac vice forthcoming*)
(D.C. Bar No. 1672210)
100 N. Central Expy. Suite 1010
Richardson, Texas 75080
Tel: (972) 914-2507; Fax (972) 692-7454
cjump@clcma.org
selhosary@clcma.org
aboyd@clcma.org
*The Constitutional Law Center for Muslims in America
is the legal division of the Muslim Legal Fund of America*