

**13TH JUDICIAL CIRCUIT COURT**
**COMMONWEALTH OF VIRGINIA**
**RICHMOND CITY**

**AJP EDUCATIONAL**
**FOUNDATION, D/B/A AMERICAN**
**MUSLIMS FOR PALESTINE,**

             Petitioner,

    vs.

**JASON MIYARES**, in his official
capacity as Attorney General of the
Commonwealth of Virginia;

             Defendants.

Case No. *CL 23-5213 - RBC*

Hon.

## PETITION FOR AN ORDER TO MODIFY OR SET ASIDE ATTORNEY GENERAL'S CIVIL INVESTIGATIVE DEMAND ISSUED TO AMERICAN MUSLIMS FOR PALESTINE

Petitioner **AJP EDUCATIONAL FOUNDATION, D/B/A AMERICAN MUSLIMS FOR PALESTINE ("AMP")**, by and through its undersigned counsel, files this Petition for an Order to Modify or Set Aside Virginia Attorney General Investigative Demand dated October 27, 2023 ("CID") pursuant to Virginia Code § 59.1-9.10F, and states as follows:

**EXHIBIT A**

1

## INTRODUCTION

American Muslims for Palestine, the d/b/a of AJP Educational Foundation ("AMP"), operates wholly within the United States and has done so in accordance with all IRS requirements since 2006. AMP operates for the lawful purpose of educating the public about the rich history and culture of Palestine. The office of the Attorney General of Virginia issued a Civil Investigative Demand ("CID") to AMP in late October seeking documents and responses regarding AMP's activities within the State of Virginia and its incorporation status. Most of that falls within the proper purview of the Attorney General's office. What does not, however, fall within the proper activities of the office of the Attorney General of Virginia is the inflammatory rhetoric employed by Attorney General Miyares since then, in public statements, and its erroneous and questionable reliance on unproven allegations contained within a private lawsuit in another state, which predate the incorporation of AMP in Virginia and any fundraising on its part within this State.

The CID issued by the Attorney General's office speaks to compliance with the statutory requirement to file its Initial Registration Statement for a Charitable Organization (Form 102) with the Office of Charitable and Regulatory Programs and its compliance with the VSOC. AMP agrees to comply with that legitimate purpose, and will provide relevant information regarding its filings and charitable acts within

2

the State of Virginia. However, the CID goes far beyond that legitimate purpose and exceeds the scope of the Attorney General's authority, as set forth below.

The CID improperly seeks detailed information regarding donors, including donors from outside the State of Virginia and donations not reasonably related to the legitimate timeframe or topics at issue here. *Ams. For Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2377-78 (2021) (concluding that it requires narrow tailoring to ensure the requested information is relevant to the governmental interest). For the reasons set forth below and pursuant to the authority of the State of Virginia, the Attorney General cannot properly seek this information in the context of the CID. In addition, the requests in this regard are of a vague and unclear nature that do not sufficiently demonstrate their connection to any legitimate purpose of the CID. The CID further seeks information protected by the attorney client and work product privileges, which AMP will not provide. Any request for documents or responses infringing on these protected communications exceeds the authority of the State of Virginia.

AMP therefore seeks an Order of this Court restricting the inquiry of the office of the Attorney General of Virginia to appropriate areas of focus within its purview, restricting disclosures in accordance with precedent of this Court and the Supreme Court of the United States. The CID next improperly seeks information related to ongoing litigation in other states which has no bearing on any legitimate motive of

3

the Attorney General here, or legitimate purpose of the CID. That intrusion further contradicts existing orders of the Northern District of Illinois, as well as seeks information which will encompass immigration proceedings which have been favorable resolved and closed, and exceed both the scope and jurisdiction of the Attorney General. AMP asks this Court to narrow the scope of the CID accordingly to an appropriate inquiry directly related to discoverable information related to AMP's fundraising activities within the State of Virginia, and appropriate compliance with Virginia statutes. Extraneous topics, inflammatory language and press conferences do not comprise evidence, nor do they provide a basis for use of State resources in an inquiry beyond the scope of the relevant Virginia statutes.

## ARGUMENTS AND AUTHORITIES

A.    The CID Wrongfully Seeks Protected and Extraneous Donor Information

The First Amendment of the United States Constitution protects the rights of all speakers to advocate for all viewpoints on issues of public concern. "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *W. Va. State Bd. of Educ. v. Barnette* 319 U.S. 624, 642 (1943). The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes

4

irreparable injury." *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 828 (9th Cir. 2013)
(quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)).

AMP is aware of no other time that the Virginia Attorney General's office
used its authority under the Virginia Solicitation of Contributions ("VSOC"),
Virginia Code §§ 57-48 to 57-69, to issue a CID seeking donors, supporters, and
members of a nonprofit organization.[1]   The sweeping scope of the CID seeks not
only to chill AMP and other organizations advocating for Palestinian rights from
operating in the Commonwealth of Virginia, but will also violate the privacy rights
of its supporters and donors, and those of other organizations advocating for
Palestinian rights or other causes not in the favor of the current Attorney General of
Virginia. Since the Attorney General's office issued a press release announcing its
investigation into American Muslims for Palestine, AMP has endured negative press
and feedback, based on the purely inflammatory allegations asserted by the Attorney
General, without proof, and has suffered interference with and damage to both its
reputation and its business dealings.[2]

---

[1] Nor is AMP aware of the Virginia Attorney General using his authority under the VSOC to
investigate a nonprofit organization on the basis that it solicited contributions from the
Commonwealth of Virginia without first being registered with the Commissioner of the Virginia
Department of Agriculture and Consumer Services. Regardless, AMP has properly filed its Initial
Registration Statement for a Charitable Organization (Form 102) with the Office of Charitable and
Regulatory Programs and is now in compliance with the VSOC come into full compliance. AMP's
registration is "effective, if complete, upon receipt by the Commissioner." Va. Code Ann. §57-
61.1A.
[2] Affidavit of Dr. Osama Abuirshaid, Ex. A, demonstrating the negative impact on AMP arising
from these inflammatory allegations.

5

Disclosure of donor records subjects non-parties to unnecessary scrutiny and disclosure. And if the names, addresses, and contact information of AMP's donors are disclosed, these individuals are likely to be targeted and harassed by members of public society The Attorney General can show no compelling reason to counter these legitimate privacy interests of AMP and its donors.

The Virginia Attorney General's authority under VSOC authorizing it to supervise and regulate charitable fundraising does not empower that office to infringe upon AMP's constitutional rights and those of its members, supporters, and donors ("For at least a quarter-century, [the United States Supreme Court] has made clear that even though a person has no "right" to a valuable government benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests— especially, his interest in freedom of speech"). *Perry v. Sindermann*, 408 U.S. 593, 597 (1972); *see also Rumsfeld v. Forum for Acad. & Institutional Rts, Inc.*, 547 U.S. 47, 59 (2006) (internal citation omitted) (re-affirming the unconstitutional conditions doctrine).

The VSOC, as the Attorney General seeks to apply it to the American Muslims for Palestine, violates the unconstitutional conditions doctrine because it forces AMP to choose between surrendering its First and Fourteenth Amendment rights to

6

freedom of speech and freedom of association and complying with the Virginia Attorney General's CID. AMP finds itself caught in a Hobson's choice, where it must either disclose information about it donors and supporters in violation of its own and their rights to freedom of speech and freedom of association, or bear the penalties of noncompliance. Va. Code Ann. §§ 59.1-9.10(J).

The United States Supreme Court has repeatedly held that laws requiring the disclosure of membership lists for groups seeking anonymity are unconstitutional because they necessarily make "group membership less attractive" and "affect[] the group's ability to express its message" in violation of the First Amendment. *Rumsfeld*, 547 U.S. at 69; *Bates v. City of Little Rock*, 361 U.S. 516, 523 (1960) ("It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute an effective restraint on freedom of association." (cleaned up)); *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 458-59, 462 (1958) (finding an association's nexus with its supporters sufficient to permit it to act as their representative and assert their constitutional rights in resisting official inquiry into its membership lists, because "[t]o require that it be claimed by the members themselves would result in nullification of the right at the very moment of its assertion"); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 343 & n.6 (1995) (recognizing a long and "respected tradition of anonymity in the advocacy of political causes" in the United States).

7

The *NAACP v. Alabama* Court held that a production order issued by the Alabama Attorney General compelling the disclosure of affiliation with an organization engaged in advocacy of particular beliefs "must be regarded as entailing the likelihood of a substantial restraint upon the exercise by petitioner's members of their right to freedom of association." *Patterson*, 357 U.S. at 462 (quoting *Am. Commc'ns Ass'n v. Douds*, 339 U.S. 382, 402 (1950)). The Court went on to characterize the production order as being analogous to "requir[ing] that adherents of particular religious faiths or political parties wear identifying arm-bands." *Id.*

The United States Supreme Court has "not drawn fine lines between contributors and members," but has instead "treated them interchangeably." *Buckley v. Valeo*, 424 U.S. 1, 6 (1976). "[F]und-raising for charitable organizations is fully protected speech." *Gaudiya Vaishnava Soc. v. San Francisco*, 952 F.2d 1059, 1063 (9th Cir. 1991); *accord Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 789 (1988); *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980). It does not make any difference whether that disclosure occurs to the public or the relevant donor information has already been disclosed to the IRS as a condition of federal tax-exempt status. *Ams. for Prosperity Found.*, 141 S. Ct. at 2388; *Shelton v. Tucker*, 364 U.S. 479, 486 (1960). In fact, federal tax laws bar state officials from receiving 501(c)(3) organizations' information on the names and addresses of the

8

organization's contributors. 26 U.S.C. § 6104(d)(3)(A) (the cooperation provisions of the tax code concerning 501(c)(3) organizations "shall not require the disclosure of the name or address of any contributor to the organization").

Here, the CID requests the following information that exceeds lawful inquiries into its donors, members, and supporters:

Document Request #6: All Internal Revenue Service forms filed by you during the relevant time period, including IRS Forms W-2, Forms W-3, Forms 990, Forms 1023, Forms 1096, and Forms 1099. This request also includes all filed IRS Forms 990-EZ.

CID, p. 6.

As a 501(c)(3) tax-exempt, charitable organization, AMP files its required annual tax returns ("Form 990") with the IRS. It also meets its annual requirements to separately file a Schedule B, as appropriate, containing information about its top donors, with their names, total contributions, and addresses during a given tax year. *See* 26 C.F.R. §§ 1.6033–2(a)(2)(ii)(f), (iii) (2020). The federal tax returns of nonprofit organizations are "made available to the public," except for the "name or address of any contributor" to the organization. 26 U.S.C. §§ 6104(b), (d)(3)(A). Donor names and addresses included on Schedule B are not made available to the public. Unauthorized disclosure of Schedule B and its information can result in civil or criminal penalties. 26 U.S.C. §§7213, 7431.

9

Document Request #10: Documents relating to any checking, depository, savings, investment, credit card, debit card, charge card, loan, or other financial account in any bank, credit union, or other institution or service (including person-to-person (PDP) electronic transfer accounts (e.g. PayPal, Venmo, CashApp) held in your name or otherwise holding funds on behalf of you, including the following: … (c) monthly statements, …(e) canceled checks or carbon copies of such checks including front and back detail, (f) check registers, (g) savings account registers, (h) deposit slips and deposit items to which those slips relate, (i) records of transfer of funds by wire or collection…

CID, pp. 6-7.

The requested documents contain the identities of donors and the amounts that they donated to American Muslims for Palestine, in violation of federal law and precedent of both Virginia courts and the U.S. Supreme Court. *NAACP Legal Def & Educ. Fund, Inc. v. Comm. on Offenses etc.*, 133 S.E.2d 540, 546 (Va. 1963) (concluding that while the State has power to protect its interests, the State must show an "overriding and compelling state interest" to invade constitutionally protected freedoms); *Ams. for Prosperity Found.*, 141 S. Ct. at 2386 (describing as "sensitive" the names of donors, the amounts they contributed, and their addresses); *Famine Relief Fund v. West Virginia*, 905 F.2d 747, 751 (4th Cir. 1990) (explaining that a regulation that regulates speech must be narrowly tailored).

10

Document Request #16: "All grants and contributions received and held by you each year.

CID, p. 8.

The requested documents contain the identities of donors and the amounts that they donated to American Muslims for Palestine. *See e.g., NAACP Legal Def & Educ. Fund, Inc. v. Comm. on Offenses etc.*, 133 S.E.2d at 546; *Ams. for Prosperity Found.*, 141 S. Ct. at 2386; *Famine Relief Fund,* 905 F.2d at 751.

Document Request #19: Documents sufficient to show for each fundraising or educational event or conference sponsored or organized by or on behalf of you, including: ... (c) the participants in the event, including speakers, (d) any sponsors of the event, ...

CID, p. 9.

The requested documents also contain the identities of donors, members, and supporters for American Muslims for Palestine, subjecting them to unnecessary harassment and retaliation. *See e.g., NAACP Legal Def & Educ. Fund, Inc. v. Comm. on Offenses etc.*, 133 S.E.2d at 544 ("One would have to be deeply insensible to the affairs of present day life, or a modern Rip Van Winkle, to fail to observe the opposition in Virginia and in many parts of the Nation to the activities of the NAACP and its affiliates in the field of racial relations.").

11

Document Request #21: All donor lists, including list-servs and email groups.

CID, p. 9.

The requested documents would reveal the identities of donors, members, and supporters for American Muslims for Palestine. For the reasons and under the authority cited above, this Request exceeds the permissible scope of the Attorney General's office's authority.

Likewise, the Interrogatories bear the same faults, including attempting to obtain information regarding donors to which the office of the Attorney General is not entitled. For example, Interrogatory No. 8 seeks all electronic means "by you to communicate with donors and prospective donors" among other information. CID at p. 12.

B.    No Objective Reasonable Cause Exists for the Requests in the CID

The CID improperly seeks information and documents sought related to "knowingly us[ing] or permit[ing] the use of funds raised by a solicitation of contributions to provide support to terrorists, terrorist organizations, terrorist activities, or family members of terrorists," because the Virginia Attorney General does not have an objective "reasonable cause to believe" that AMP has any information related to any such alleged violation. Va. Code Ann. § 57-59B; *see also Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 722 S.E.2d 626, 634 (Va. 2012)

12

(McClanahan, J., concurring in part) (explaining that a CID is insufficient where it fails to clearly explain "the nature of the conduct constituting the alleged violation").

C.    The CID Shows Bad Faith with Intent to Harass

The CID is issued in bad faith with the intent to harass and further political objectives. The press release issued by Attorney General Miyares on October 31, 2023 claims that "the Attorney General will investigate allegations that the organization may have used funds raised for impermissible purposes under state law, including benefitting or providing support to terrorist organizations."[3]  Yet the only "allegations" on which the Attorney General purports to rely derive from a lawsuit in another state, brought by private individuals seeking to recover on an earlier unrelated judgment, with the sole claims against AMP in that lawsuit being that AMP is the alter ego of an earlier judgment debtor.[4]  And yet, no claims in that lawsuit have been found proven by any court. No criminal charges of any sort exist against AMP in Illinois, where that suit is filed, or in any other state.  No charges

---

[3] Office of the Attorney General, *Attorney General's Office Opens Investigation Into American Muslims for Palestine Nonprofit*, https://www.oag.state.va.us/media-center/news-releases/2630-october-31-2023-attorney-generals-office-opens-investigation-into-american-muslims-for-palestine-nonprofit (last visited November 21, 2023).

[4] *Id.*, linking to *Stanley Boim, et al. v. American Muslims for Palestine, et al.*, Cause No. 17-cv-3591 (N.D. Ill.), Docket No. 250, Memorandum Opinion and Order dated May 17, 2022 as posted on the investigative project website (ordering that "the complaint alleges" claims sufficient to "survive[] dismissal" and that "Defendants shall answer the operative complaint" for the case to proceed), located at the link as provided in the Attorney General's press release: https://www.investigativeproject.org/case_docs/boim-et-al-v-amp-et-al-boim-20-case/4566/court-opinion-and-order-denying-motion-to-dismiss.pdf.

13

exist against AMP by the federal government in any form. And the Attorney General's office provides no context or justification for its sudden interest in a civil case in another state, pending since 2017, relying on the denial of a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6) that was issued in May of 2022, nor any reason those allegations and an order finding them minimally sufficient to proceed would justify directing taxpayer resources and inflammatory rhetoric by a public official of this state in AMP's direction. Yet, seemingly out of the blue, that's exactly what Attorney General Miyares does. On its face, the CID does not demonstrate a good faith basis for the allegations lodged against AMP.

Interrogatory No. 1 is equally inflammatory, if not more so.    This Interrogatory asks, with no basis or context, whether AMP has "provided any funds or permitted the use of funds raised by a solicitation or by contribution to benefit or provide support, directly or indirectly, in case or in kind, to terrorists, terrorist organizations, terrorist activities or to family members of any terrorist, including the organization known as HAMAS that was designated as a foreign terrorist organization by the United States Department of State in 1997?" CID at p. 13.[5]

---

[5] While AMP objects to the harassing and unfounded nature of this Interrogatory as well, it will gladly provide its full answer, without qualification, to this Interrogatory: No.

14

D.    The Scope of the CID Exceeds the Virginia Attorney General's Limited
       Statutory Authority

The CID constitutes an impermissibly overbroad use of the Virginia Attorney

General's limited authority under the VSOC to investigate charitable fundraising

within the Commonwealth of Virginia. Va. Code Ann. § 57-59(C) (authorizing the

Attorney General to investigate "violation[s] of the provisions of this chapter")

(emphasis added).

E.    Requests For Information and Documents are Vague and Overbroad

The CID is overbroad and requests documents and information far beyond the

stated purpose of the investigation.    Additionally, the statement in the CID

describing the nature of the conduct under investigation is not sufficient to

adequately inform AMP of the scope and nature of the investigation.  Nor is it

sufficient to determine the relevancy of the documents and information demanded

for investigation. *See, e.g., Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 722

S.E.2d 626, 634 (Va. 2012) (McClanahan, J., concurring in part) (agreeing with the

lower court's holding that found the CID insufficient because it failed to clearly

explain "the nature of the conduct constituting the alleged violation").

F.    The CID Requests Information Protected by Law

Relief from the CID should be granted with respect to all documents and

information covered by applicable statutory and common law rights, privileges,

15

protections, and doctrines, and American Muslims for Palestine reserves the right to raise such objections with respect to specific documents and information as appropriate as it continues to prepare its responses. Petitioner's assessment of the CID and the requested documents and information is ongoing and therefore reserves the right to assert such other grounds for relief as petitioner deems appropriate.

## ADDITIONAL BRIEFING ON THE MERITS

Should this Court desire additional briefing, American Muslims for Palestine is prepared to submit that in accordance with any schedule established by this Court.

## CONCLUSION

American Muslims for Palestine moves this Honorable Court to enter an Order in form of the Prayer for Relief below, protecting it and non-parties affected by the overreaching CID from severe and irreparable harm, including the loss of their First Amendment rights.

## PRAYER FOR RELIEF

WHEREFORE, American Muslims for Palestine respectfully requests that the Court enter an Order to:

1.    Stay the running of time for compliance with the CID while the Petition is pending;

2.    Prohibit the Attorney General from compelling American Muslims for Palestine to disclose documents and information that reveal information

16

related to donors, members, and supporters, or from taking any action to implement or enforce his demand for this information;

3.     Allow American Muslims for Palestine to engage in counter-discovery to determine whether the Attorney General issued the CID in bad faith and for improper objectives.  Specifically, American Muslims for Palestine requests counter-discovery to

(1) determine the identity of the persons who participated in the decision to initiate the investigation and to issue the demand; and,

(2) identify documents relating on their face to the decision to investigate the petitioner and to issue the demand.  *See Civ. Investigative Demand No. H-13, LE 56, No. H-13, LE 56.*, 1981 WL 180532, at *1, *7-8 (Va. Cir. Ct. June 3, 1981).

4.     Modify or set aside the CID in its entirety, pursuant to Virginia Code § 59.1-9.10(F); and

5.     Award any other relief that the Court deems just and appropriate.

17

November 27, 2023

Respectfully submitted,

Faisal Gill (VSB 93255)
Gill Law Firm
1717 Pennsylvania Ave Suite 1025
Washington DC 20006
fgill@glawoffice.com
310-418-6675
Counsel for Petitioner


CAIR LEGAL DEFENSE FUND


/s/ Lena F. Masri
Lena F. Masri (VA Bar No. 81161)
    lmasri@cair.com
453 New Jersey Ave., SE
Washington, DC 20003
Phone: (202) 742-6420
Fax: (202) 488-0833


/s/ Christina A. Jump
Christina A. Jump
D.C. ID No. TX151
cjump@clcma.org
Constitutional Law Center
for Muslims in America
(*legal division of Muslim Legal Fund of America*)
100 N. Central Expy., Ste. 1010
Richardson, TX 75080
(972) 914-2507
*Pro hac vice motion pending*

18

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2023 a copy of the above and foregoing was served

on all counsel of record, either by facsimile, hand delivery, electronic mail, or by placing same in

the U.S. mail, postage prepaid.

Mark Kubiak
Senior Assistant Attorney General/Unit Manager
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
O: (804) 786-7364
mkubiak@oag.state.va.us

Faisal Gill

19

19

### DECLARATION OF DR. OSAMA ABUIRSHAID,
### EXECUTIVE DIRECTOR  FOR AMERICAN MUSLIMS FOR PALESTINE

I, Dr. Osama Abuirshaid, do hereby state under penalty of perjury under the laws of the United States of America that the following is true and accurate based on my personal knowledge:

1.    I am the Executive Director of AJP Educational Foundation, d/b/a American Muslims for Palestine ("AMP").

2.    AMP is a national education and grassroots-based organization, dedicated to educating the American public about Palestine and its rich cultural, historical, and religious heritage.

3.    As a result of its decades of hard work and dedication, including its coordination with multiple interfaith groups, AMP has earned its reputation as a premier grassroots nonprofit organization within the United States.

4.    AMP raises funds solely within the United States, and operates solely within the United States.  AMP does not send any money overseas, and never has.

5.    AMP neither supports nor funds terrorism, and never has.

6.    On October 31, 2023, Virginia Attorney General Jason Miyares announced a civil investigation into AMP.  Attorney General Miyares identified the purpose as being into whether AMP properly registered before conducting fundraising.

7.    Attorney General Miyares also made the public statement that his office would investigate "allegations" of whether AMP "used funds for impermissible purposes"

including possible "benefitting or providing support to terrorist organizations[.]"

8.   In that press release, Attorney General Miyares linked to a copy of a document located on the website of Investigative Project, which has been investigated in the past by government officials as a hate group.[1]

9.   The linked document is an eighteen month old ruling allowing a six year old civil case in Illinois, brought by two private individuals, to proceed to the stage of mutual discovery.

10.  That order did not find that AMP committed any acts of wrong-doing; instead, the order stated that if true, the allegations by those plaintiffs could potentially form the basis of some liability.

11.  To date, no court and no government entity has ever identified any proof to support allegations that AMP in any way supports any form of terrorism.

12.  Nonetheless, the unsupported statements by Attorney General Miyares containing the inflammatory use of the allegation of "terrorist" support have harmed AMP's hard-earned reputation and good standing within the United States.

13.  Since the date of Attorney General Miyares' public statement, AMP has received numerous calls and inquiries pointing to Attorney General Miyares' assertion that AMP supports terrorists.

14.  AMP has further had unusual difficulty with its efforts since then to obtain a contract

---

[1] https://ag.ny.gov/press-release/2022/attorney-general-james-warns-hate-group-immediately-stop-spying-muslim

2

to hold its upcoming annual Convention the weekend after Thanksgiving.

15.    This difficulty has caused AMP severe hardship, additional expense and undue burden in locating an appropriate facility for its Convention. And, AMP has had to scramble to effectively re-plan its annual Convention in the space of about two weeks, for what normally takes several months to plan and coordinate.

16.    While some of these complications predated the issuance of the CID, they have grown far more complicated since then, and AMP has had to endure questioning regarding the allegations in Attorney General Miyares' press release and link to the unrelated lawsuit, in the course of its business operations.

Dated: 11/22/2023

_____
Dr. Osama Abuirshaid

Subscribed and sworn before me this 22 day of November, 2023

State of Virginia   City/County of Fairfax

7968708
Notary Registration Number

_____
Notary Public

MINH-TRAM DINH
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES AUG. 31, 2025
COMMISSION # 7968708

Aug. 31, 2025
My commission expires

3