IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

| | |
|---|---|
| AJP EDUCATIONAL FOUNDATION, INC. d/b/a AMERICAN MUSLIMS FOR PALESTINE, <br><br> *Plaintiff*, <br><br> vs. <br><br> **JASON S. MIYARES**, <br><br> *Defendant*. | CASE No.: 1:25-cv-01617-LMB-IDD |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION
FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

I. **INTRODUCTION**

Absent immediate action by this Court, Plaintiff AJP Educational Foundation, Inc. d/b/a American Muslims for Palestine ("Plaintiff" or "AMP") faces imminent harm from the actions of Defendant Jason Miyares ("Attorney General" or "Defendant Miyares"), based on a Virginia order issued by the Richmond City Circuit Court on September 29, 2025 that orders AMP to comply in full with unconstitutional demands made by Defendant Miyares no later than Friday, October 3, 2025, despite AMP's ongoing state level appeal of the demands and the failure by any court to rule on AMP's constitutional objections to date. Defendant Miyares insists on enforcing broad and overreaching demands made in an investigation into AMP, despite the facts that AMP properly challenged the objectionable portions of the investigation, produced responsive documents otherwise, timely appealed the lower court decision, and that appeal remains pending. Defendant Miyares identified only one previous failure on AMP's part: the oversight of not knowing about one of the required forms in Virginia for nonprofit organizations operating there (AMP had

registered with the Secretary of State throughout its full duration of work in Virginia, but did not know about the additional requirement discussed below). AMP promptly remedied its error upon learning of it in 2023, has remained compliant since, and even submitted all required retroactive forms for prior years. Therefore, no failure to comply by AMP exists, and Defendant does not identify any. Defendant simply disagrees with AMP's political stances, speech, and association, and uses his office to paint AMP in a negative light without foundation. Defendant's CID demands disclosure of extensive donor information with no correlation established between the one identified procedural oversight AMP already remedied and these intrusive and chilling demands. AMP therefore respectfully requests this Court's prompt action to prohibit Defendant's unlawful actions and preserve the status quo.

## II. FACTS AND PRODEDURAL HISTORY

Plaintiff AMP is a nonprofit organization incorporated in California, with its principal place of business in Virginia. AMP's mission is to "advance the movement for justice in Palestine by educating the American public about Palestine and its rich cultural, historical, and religious heritage." Complaint at ¶ 6. AMP moved its headquarters to Virginia in 2016 and received a Certificate of Authority to Transact Business in Virginia as a Foreign Corporation. *Id*. ¶ 21. Prior to October 2023, AMP remained unaware of any omission in its filings with the Commonwealth. *Id*. ¶ 19. At no time prior to October 2023 did Defendant Miyares' office attempt to communicate with AMP about any oversights or deficiencies on its part.

On October 31, 2023, Defendant Miyares announced through a press conference and published press release the initiation of an investigation into AMP for alleged violations of Virginia's Solicitation of Contributions ("VSOC") law. *Id*. ¶ 12. That was the first AMP learned of the investigation. AMP subsequently received a Civil Investigative Demand ("CID") dated

October 27, 2023. *Id.* ¶ 18; Exhibit A, Civil Investigative Demand. Prior to October 2023, AMP was unaware of any requirement to register with the Virginia Department of Agriculture and Consumer Services ("VDACS"), pursuant to the VSOC law, nor did any representative from VDACS or the Attorney General's office contact AMP to communicate this requirement. Complaint at ¶ 24.

AMP promptly complied with the VSOC law, and remains in compliance. *Id.* ¶ 25. AMP also responded directly to the portions of the CID it did not challenge on December 7, 2023, and produced responsive records. *Id.* ¶ 31. It also filed a Petition to set aside or modify the CID with the Richmond City Circuit Court on November 27, 2023, pursuant to Va. Code Ann. § 59.1-9.10. *Id.* ¶ 32. AMP's Petition argued that portions of the CID breached AMP's constitutionally protected rights. *Id.* ¶ 34. AMP and attorneys from Defendant's office appeared before the Richmond City Circuit Court on July 16, 2024, at which time the Circuit Court ruled only that Defendant Miyares had the right to <u>initiate</u> a CID, and did not address AMP's challenges to the scope of that CID. *Id.* ¶¶ 35-38. AMP timely appealed that order to the Virginia Court of Appeals, and sought a stay of enforcement of the CID from the Circuit Court and Court of Appeals, pending the outcome of AMP's appeal, but both courts declined to issue a stay. *Id.* ¶¶ 39-43.

While AMP's timely-filed appeal remained pending, Defendant's office filed a separate action to enforce the CID in the Richmond City Circuit Court on January 14, 2025. *Id.* ¶ 44. The Circuit Court in that matter found that it could not stay enforcement of the CID and ordered AMP to comply with the CID, despite the pending appeal. *Id.* ¶ 46. On August 5, 2025, Defendant moved for a Rule to Show Cause in the enforcement action, which the Circuit Court entered. *Id.* ¶ 50.

AMP and attorneys from Defendant's office appeared before the Richmond City Circuit Court on September 29, 2025. The Circuit Court held that AMP is in contempt of the order

3

enforcing the CID, and issued sanctions of $8,000, with more sanctions to accrue daily if AMP does not fully comply with the CID as written by Friday, October 3, 2025. *See* Exhibit B, Order. Defendant once again issued a press release regarding the outcome of the hearing.[1] To date, no court has ruled on the constitutionality of the scope of the CID as issued. AMP filed this action on September 26, 2025, seeking declaratory and injunctive relief from this Court. ECF No. 1. AMP now files this Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction in due to the already existing sanctions against it and imminent additional sanctions.

### III.   STANDARD OF REVIEW

A temporary restraining order preserves the status quo until such time as the court can review a request for preliminary injunction. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999). A preliminary injunction, on the other hand, preserves the status quo until the court can make a final decision on the merits. *Id.* In support of both requests, plaintiffs must show that 1) they are likely to succeed on the merits; 2) they are likely to suffer irreparable harm without preliminary relief; 3) the balance of equities falls in the plaintiff's favor; and 4) that an injunction is in the public interest. *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009) (citing *Winter v. NRDC*, 129 S. Ct. 365, 374 (2008)). If plaintiffs demonstrate that they meet all four requirements, they establishment their entitlement to the requested orders. *Id.*

---

[1] Office of the Attorney General, *American Muslims for Palestine Found in Civil Contempt of Court*, OFFICE OF THE ATTORNEY GENERAL NEWS RELEASES (Sept. 29, 2025), https://www.oag.state.va.us/media-center/news-releases/2917-september-29-2025-american-muslims-for-palestine-found-in-civil-contempt-of-court.

## IV. <u>ARGUMENT</u>

**A.   AMP is Likely to Succeed on the Merits of its Challenge to the CID's Scope**

AMP is likely to show that the CID is impermissibly broad and violates AMP's First and Fourth Amendment rights and therefore succeed on the merits of its claims against Defendant Miyares. Defendant issued the CID under the authority of the Virginia Code § 57-59, which incorporates by reference the provisions and protections of Virginia Code § 59.1-9.10. That section requires that a civil investigative demand may not "contain any requirement that would be unreasonable or improper if contained in a subpoena duces tecum issued by a court of this Commonwealth." Va. Code Ann. § 59.1-9.10(B). Further, Virginia Code allows any recipient of a CID the right to challenge that CID with a petition to modify or set aside the CID based on "any constitutional or other legal right or privilege." *Id.* § 59.1-9.10(F). AMP responded to the requests within the appropriate scope (Complaint at ¶ 31), and timely filed a petition to set aside or modify other portions of Defendant Miyares' CID, based on constitutional violations; the City of Richmond Circuit Court failed to address those constitutional objections. *See* Complaint at ¶ 38. The Circuit Court ruled only that Defendant Miyares was justified in *initiating* the CID based on AMP's now-remedied earlier failure to file one form. *Id*. AMP can show that the CID represents an improper use of Defendant Miyares' investigative powers and AMP will likely succeed on those claims, fulfilling the first factor for a TRO and preliminary injunction.[2]

*1.   The CID infringes on AMP's First Amendment rights*

The First Amendment protects freedom of speech and freedom of association, as well as against government discrimination based on viewpoint. The scope of the CID as issued infringes

---

[2] The First and Fourth Amendments apply to the states through the Fourteenth Amendment's incorporation doctrine. *See, e.g., Cantwelll v. Connecticut*, 310 U.S. 19 (1940); *Palko v. Connecticut*, 302 U.S. 319 (1937).

5

on those First Amendment protections and therefore violates not only the U.S. Constitution, but the protections available in the Virginia Code. AMP is likely to show that the CID purposefully seeks to chill AMP's protected speech and association.

Attorney General Miyares issued a CID that restricts AMP's protected speech by subjecting it to investigation for its speech on a matter of public concern with which Defendant disagrees. *See Menders v. Loudoun Cnty. Sch. Bd.*, 65 F.4th 157, 164 (4th Cir. 2023) (explaining that a plaintiff shows harm under the First Amendment where it refrained from participating in protected activity, rather than risk punishment); *see also* Brief for Petitioner at 30, *First Choice Women's Resource Center, Inc. v. Platkin*, No. 24-781 (U.S. Aug. 22, 2025) (pending before the United States Supreme Court and asking the Court to address whether a demand for disclosure of donors objectively chills First Amendment Rights). AMP is likely to show that Defendant Miyares targeted AMP for that protected speech with a CID that fails to be narrowly tailored to further a significant government interest. The CID purports to investigate Virginia's charitable solicitation laws, but seeks information about participants and speakers at AMP's events, names of all donors to AMP, and all documents pertaining to AMP's use of funds, among other numerous requests. *See* Exhibit A at 9-10. This extensive scope shows that the CID attempts to punish speech, rather than investigate a violation of Virginia law. Representatives of the Attorney General's office have yet to articulate a need for all records requested by the CID, even via oral argument to the Virginia Court of Appeals, and instead return again and again to AMP's one, now remedied, prior omission of a filing requirement. A federal court just this week found that U.S. government agencies are reviewing individual-specific information and unlawfully taking adverse action against individuals based on their First Amendment-protected speech. *See Am. Ass'n of Univ. Professors v. Rubio*, Civil Action No. 25-10685-WGY, 2025 U.S. Dist. LEXIS 193069 (D. Mass. Sept. 30, 2025).

AMP is likely to show that the CID also violates AMP's right to free association. Defendant's actions significantly burden AMP's ability, along with its donors and collaborators, to express its political and social viewpoints, and Defendant's actions are not narrowly tailored to any compelling state interest. *See Roberts v. United States Jayvees*, 468 U.S. 609, 623 (1984). States cannot compel disclosure of membership lists, including lists of donors, because even the risk of chilling association faces strict scrutiny. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460-63 (1958); *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 609-12 (2021). Defendant Miyares seeks disclosure of invasive information that will chill the association rights of AMP and its donors and collaborators, and therefore the action faces strict scrutiny. Defendant Miyares cannot show the CID is narrowly tailored to any compelling state interest, because its broad scope addresses far more than the sole specific violation—admittedly long remedied—that the Attorney General cited as cause to initiate the investigation. No court to date has ruled on AMP's constitutional objections, let alone articulated whether Defendant's requests survive strict scrutiny.[3] AMP will therefore likely succeed on the merits of this challenge to the CID.

   2.   The CID infringes on AMP's Fourth Amendment rights

Defendant Miyares issued an overbroad CID in bad faith, violating AMP's Fourth Amendment rights to be free from unreasonable search and seizure. *See* Complaint at ¶¶ 89-98. AMP is likely to succeed on the merits of the claim because the CID is overly broad, and extends beyond a reasonable purpose, making it impermissible under the constitution and Virginia Code. Attorney General Miyares bears the burden to show that the investigation has a legitimate purpose,

---

[3] *See* Audio of Oral Argument, *AJP Educational Foundation, d/b/a American Muslims for Palestine v. Jason Miyares, In His Official Capacity as the AG of the Commonwealth of Virginia*, No. 1420-24-2 (Va. Ct. App. July 15, 2025), https://www.vacourts.gov/coa/oral-arguments/archive?field_release_date_value=07/15/2025&session_date=20250715&region=74.

the information sought is relevant, the demands are sufficiently specific, and that he followed the appropriate procedural steps. *See United States v. Powell*, 379 U.S. 48, 57-58 (1964). While AMP has never challenged the Attorney General's right to initiate a CID in general, and did respond to the appropriate inquiries contained in the CID, the scope of the information requested exceeds any relevant response, and the requests are not sufficiently specifically tailored. *See United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) (finding that investigations may not be indefinite or excessively broad). Because AMP promptly came into and remains in compliance with the VSOC law, Attorney General Miyares' office remains unable to articulate a legitimate need for the information requested in the CID, beyond the improper purpose described above. Therefore, AMP will likely succeed on the merits of this claim as well.

**B.     AMP Will Suffer Irreparable Harm Through Enforcement of the CID**

AMP will suffer irreparable harm if forced to turn over the full scope of the documents the CID requests prior to any ruling on AMP's constitutional challenges. If AMP must turn over lists of donors and collaborators, doing so will chill the First Amendment rights of those donors and collaborators. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury."). The people on those lists likely face further government investigation at the state and/or federal levels. *See* Nat'l Sec. Presidential Memorandum/NSPM-7, *Countering Domestic Terrorism and Organized Political Violence* (Sept. 25, 2025), https://www.whitehouse.gov/presidential-actions/2025/09/countering-domestic-terrorism-and-organized-political-violence/; *see also* Hina Shamsi, *ACLU Statement on the Trump Administration's Memorandum Targeting Political Opponents*, AM. CIVIL LIBERTIES UNION (Sept. 25, 2025), https://www.aclu.org/press-releases/aclu-statement-on-the-trump-administrations-memorandum-targeting-political-

8

opponents (explaining that the purpose of NSPM-7 is to investigate nonprofits and activists with which the President disagrees). The disclosure of individual names to government agencies is not only an overbroad request, but raises the prospect of unlawful adverse action against those identified. *See Am. Ass'n of Univ. Professors*, 2025 U.S. Dist. LEXIS 193069.

The Virginia Circuit Court ruled on September 29, 2025 that AMP is in contempt of the order enforcing the CID, and issued sanctions of $8,000, with more sanctions to accrue daily if AMP does not fully comply with the CID as written by Friday, October 3, 2025. *See* Exhibit B. This threat is imminent and will cause concrete irreparable injuries to AMP and its supporters, easily satisfying AMP's burden to demonstrate this factor of the test.

**C.      The Balance of the Equities and Public Interest Favor Injunction**

AMP also demonstrates that the balance of equities and the public interest favor this Court granting a temporary restraining order as well as injunction. *See Nken v. Holder*, 556 U.S. 435 (2009) (holding that these two factors merge when the opposing party is a state actor). AMP faces irreparable harm, as described above, if forced to comply with the CID as broadly written. In contrast, Defendant Miyares faces no harm from this Court preventing him from enforcing the CID while this Court addresses the constitutionality of the CID's scope (an issue also simultaneously pending before the Virginia Court of Appeals). AMP remains in compliance with the VSOC law, the related requirements, and all federal laws. Therefore, no harm to the Defendant exists.

Further, public interest weighs strongly in favor of granting this Motion. The public has a strong interest in ensuring First Amendment and Fourth Amendment protections remain intact, and that the Attorney General does not abuse the power of his office to target speech with which he does not agree. The public also has an interest in maintaining the purpose and effectiveness of appeals to the Virginia Court of Appeals, which Defendant Miyares' actions also threaten.

## V. CONCLUSION

AMP meets all required factors required for both a temporary restraining order and a preliminary injunction, and therefore respectfully asks this Court to enter a TRO enjoining Defendant Miyares from enforcing the CID against AMP, and schedule a hearing promptly to enter a preliminary injunction as to the same. AMP will likely succeed on the merits of its challenges to the CID because Defendant Miyares' demands impermissibly exceed any reasonable or relevant scope, and constitute retaliation for AMP's speech and association. Further, AMP faces imminent harm from the chilling of its speech, in addition to monetary harm after being found in contempt of the Virginia Circuit Court's enforcement order on September 29, 2025, with additional daily fines accruing beginning on Friday, October 3, 2025. Defendant Miyares faces no harm from being unable to enforce his overly broad demands until after this Court addresses the constitutional issues presented by the CID. Finally, the balance of equities and public interest favor this Court entering a TRO in AMP's favor. AMP came into compliance with all applicable Virginia and federal laws, remains that way, and simply asks to be treated the same as any other nonprofit organization operating in Virginia--not singled out for its views or lawful affiliations.

Respectfully submitted this 1st day of October, 2025.

        MAHDAVI, BACON, HALFHILL, & YOUNG, PLLC

        */s/ James T. Bacon, Esq.*
        James T. Bacon, Esq. (VSB# 22146)
        11350 Random Hills Road, Suite 700
        Fairfax, VA 22030
        703-352-1300
        703-352-1301 (Fax)
        jbacon@mbhylaw.com

        Constitutional Law Center for Muslims in America*

        Christina A. Jump (*pro hac vice*)
        Samira S. Elhosary (*pro hac vice*)
        100 N. Central Expy. Suite 1010
        Richardson, Texas 75080
        Tel: (972) 914-2507; Fax (972) 692-7454
        cjump@clcma.org
        selhosary@clcma.org
        **The Constitutional Law Center for Muslims in America*
        *is the legal division of the Muslim Legal Fund of America*

## CERTIFICATE OF CONFERENCE

Pursuant to Fed. R. Civ. P. 65(b)(1), the undersigned affirms that the Complaint in this matter and the accompanying Motion "show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Notice to Defendant should not be required due to the risk of immediate harm. Counsel will provide a courtesy copy via email to counsel for Defendant who appeared on September 29, 2025 in the Richmond City Circuit Court and informed that court of Defendant's awareness of this lawsuit.

        MAHDAVI, BACON, HALFHILL, & YOUNG, PLLC

        */s/ James T. Bacon, Esq.*
        James T. Bacon, Esq. (VSB# 22146)

        */s/Christina A. Jump*
        Christina A. Jump (admitted *pro hac vice*)

## CERTIFICATE OF SERVICE

I certify that on October 1, 2025, I served the Complaint in this matter and this Memorandum via email to mkubiak@oag.state.va.us (Mark S. Kubiak, Esq.), as stated above, and hand delivery via courier to

    Jason S. Miyares, Esq.
    Attorney General of Virginia
    Office of the Attorney General
    202 North Ninth Street
    Richmond, VA 23219

        MAHDAVI, BACON, HALFHILL, & YOUNG, PLLC

        */s/ James T. Bacon, Esq.*
        James T. Bacon, Esq. (VSB# 22146)
        11350 Random Hills Road, Suite 700
        Fairfax, VA 22030
        703-352-1300

703-352-1301 (Fax)
jbacon@mbhylaw.com

13