**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **AJP Educational Foundation d/b/a** | ) | |
| **American Muslims for Palestine,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 1:25-cv-01617-LMB-IDD** |
| **v.** | ) | |
| | ) | |
| **JASON S. MIYARES, in his official** | ) | |
| **capacity as Attorney General of Virginia,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |


**<u>DEFENDANT'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

## INTRODUCTION

It is not an emergency when a party files a federal lawsuit after litigating a claim against the same party for almost two years in state court, loses at every turn, is ordered to comply with a state court judgment, and then is held in contempt for failing to comply with the state court's order. Under settled legal principles, AJP Educational Foundation d/b/a American Muslims for Palestine ("AMP" or "Plaintiff") is barred from seeking untimely relief from a federal court for judgments entered by state courts.

This matter relates to a nearly-two-year-old investigation of AMP's solicitation of charitable contributions in the Commonwealth of Virginia, and a Civil Investigative Demand ("CID") issued by the Attorney General to AMP that remains largely unanswered to this day[1] due to a litany of delay tactics employed by AMP to evade, delay, and thwart the investigation. Now AMP seeks to relitigate in federal court matters that already have been briefed, considered, and decided in state court proceedings, including an unsuccessful suit it initiated nearly two years ago to challenge the Attorney General's CID.

After choosing to challenge the Attorney General's CID in state court and losing, Virginia state courts have ordered AMP to comply with the CID or suffer monetary sanctions. In a last-ditch effort to avoid the consequences of losing repeatedly in state court, AMP brings a

---

[1] Of the 31 requests for production issued to AMP, 27 remain entirely unanswered. Of the four to which AMP responded, three were plainly deficient. The Attorney General also posed twelve interrogatories to AMP, six of which remain unanswered to this date. AMP answered six of those interrogatories, but did not answer the interrogatories under oath, as required by state law and the CID instructions. Many of the requests to which AMP failed to respond seek AMP's solicitation materials; its registration materials submitted to the Office of Charitable and Regulatory Programs; corporate bylaws; financial statements; contracts and communications with professional solicitors; information about how solicited funds are being spent; and governance documents, such as board meeting minutes.

constitutional challenge in federal court. However, the state courts have resolved these exact issues and rejected AMP's claim.

AMP's constitutional claims are barred by res judicata, the *Rooker-Feldman* doctrine, *Younger* abstention, and sovereign immunity. For this reason, AMP's likelihood of success on the merits in this case is zero. Moreover, AMP cannot establish any of the remaining three *Winter* factors needed to support a preliminary injunction: AMP is unlikely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tips in the Attorney General's favor, and the public interest demands that an injunction not enter.

## **BACKGROUND**

**I.    The Attorney General issues the Civil Investigative Demand to AMP**

The Attorney General has broad authority over the protection of charitable assets, and to investigate possible violations of, and enforce the Virginia Solicitation of Contributions ("VSOC") law, Virginia Code §§ 57-48 to 57-69. *See* Va. Code §§ 2.2-507.1 and 57-59(C)–(D).

Among other things, the VSOC law imposes on charitable organizations a requirement that they register with the Commissioner of Agriculture and Consumer Services (the "Commissioner") prior to soliciting charitable contributions in the Commonwealth. Va. Code § 57-49(A). The registration must include, among other things, the charitable organization's governing documents, financials, and statements regarding how solicited funds are being used, including a statement that no funds have been or will be spent to support terrorists. Va. Code § 57-49(A) and (A1). It is a violation of the VSOC law for charitable organizations to solicit contributions in the Commonwealth without first being registered with the Commissioner. Va. Code §§ 57-49 and 57-57(K). The VSOC law also prohibits, among other things, persons from using "any device, scheme or artifice to defraud" in connection with a charitable solicitation or to "obtain money or property by any misrepresentation or misleading statement"; "us[ing] or permit[ting] the use of the funds

raised by a charitable solicitation for any purpose other than the solicited purpose"; and "us[ing] or permit[ting] the use of funds raised by a solicitation or by contribution to benefit or provide support, directly or indirectly, . . . to terrorists, terrorist organizations, terrorist activities or to the family members of any terrorist." Va. Code § 57-57(L), (N), and (R).

In connection with the Attorney General's authority under the VSOC law, the Attorney General issued a Civil Investigative Demand ("CID") to AMP on October 27, 2023. Compl. ¶ 4. The CID issued by the Attorney General sought documents from, and propounded interrogatories to, AMP, seeking information relating to AMP's charitable registration, its organizational structure, its solicitation activities, the sources of its funding, and how donated funds are spent by the charitable organization. Compl. ¶¶ 26–28.

## II. AMP challenges the Attorney General's Civil Investigative Demand in state court

On November 27, 2023, AMP attempted to stop the Attorney General's investigation by filing a Petition in the Circuit Court of the City of Richmond ("Circuit Court") to set aside or modify the Attorney General's CID ("Petition to Set Aside the CID"). Compl. ¶ 32; Pet. to Set Aside CID, ECF No. 1-2. In its Petition, as it does in its Complaint, AMP admitted to violating the VSOC law by failing to properly register with the Commissioner in connection with its charitable solicitation activity.[2] Compl. ¶¶ 24–25; Pet. to Set Aside CID 5 n. 1. Nevertheless, AMP argued that the Attorney General lacked reasonable cause to issue the CID requests and that the CID was issued in bad faith. Pet. to Set Aside CID 12–14. AMP additionally maintained that the request for

---

[2] Though AMP asserts in its Emergency Motion for a Temporary Restraining Order that it "remains in compliance with the VSOC law," the violations to which it has publicly admitted cannot be cured by a prospective registration. Each solicitation made while unregistered is evidence of a separate violation of state law, each of which may be punishable with a civil penalty of up to $5,000 per violation. *See* Va. Code § 57-57(K) (making it a violation to *solicit* while being unregistered); 57-59(E) (authorizing the Attorney General to recover civil penalties of up to $5,000 per violation).

3

donor records violated its donors' First Amendment rights and that the information sought by the Attorney General was protected by other unspecified common law rights, privileges, protections, and doctrines. *Id*. at 4–12.

The Attorney General explained at length the bases for propounding these investigative requests upon AMP in his Opposition to AMP's Petition to Set Aside the CID. Resp. in Opp. to Pet. to Set Aside CID, attached as Ex. 1. First, he explained that AMP had been soliciting charitable contributions in the Commonwealth without properly registering with the Commissioner during the period from at least 2016 until 2023. *Id.* at 10. Registering would have required AMP to certify that donated funds would not be used to support terrorists, terrorist organizations, terrorist activities, or family members of terrorists. Va. Code § 57-49(A1); Resp. in Opp. to Pet. to Set Aside CID 12, 16, 19. Second, the Attorney General cited his office's awareness of public allegations that AMP is merely a reconstituted version of several organizations that were held liable in the mid-2000s for providing support to Hamas terrorists, and that current officers or directors of AMP had purported ties to those organizations or to Hamas terrorists. Resp. in Opp. to Pet. to Set Aside CID 6–9. Third, the Attorney General highlighted inconsistencies and missing disclosures in AMP's Forms 990 filed with the United States Internal Revenue Service that his office discovered. *Id*. at 10–12. All of these sources supplied the Attorney General with the requisite "reasonable cause" to initiate his investigation and issue a CID. Va. Code § 57-59(C).

At a hearing on July 16, 2024,[3] AMP's counsel again admitted that AMP did not register until November 2023 thereby conceding AMP's long running violation of the VSOC law's registration requirements. Va. Ct. of Appeals Br. of Appellee Attorney General ("Br. of Appellee")

---

[3] This hearing, originally scheduled for April 5, 2024, had to be rescheduled twice due to AMP's delay tactics related to local counsel.

8, attached as Ex. 2; *see* Compl. ¶¶ 35–36. The Circuit Court questioned AMP's counsel regarding all of AMP's arguments, including those concerning the constitutionality (and specifically, the application of *Ams. for Prosperity v. Bonta*, 594 U.S. 595 (2021) to the Attorney General's requests for AMP's donor information) and purported overbreadth of the Attorney General's CID requests. Br. of Appellee 8.

Upon consideration of the arguments raised by the parties, the Circuit Court denied AMP's Petition to Set Aside the CID, observing that the "Attorney General was entirely within its statutory authority because AMP had directly admitted it did not register properly prior to soliciting donations." *Id.* at 8 (citing and quoting appellate record); *see* Compl. ¶¶ 35–36. The Court found "[t]hat in itself . . . provided reasonable cause for legitimate concerns" regarding whether "funds [were] being used for their stated purpose" pursuant to the VSOC law." Br. of Appellee 9 (citing and quoting record). "Upon mature consideration of the pleadings and oral arguments of the parties," the Circuit Court subsequently entered an order on July 30, 2024 ("July 30, 2024 Order") consistent with and memorializing its July 16, 2024 oral ruling. July 30, 2024 Order, ECF No. 1-3. In that order, the Circuit Court held that AMP's admitted violations of the VSOC law gave the Attorney General "*per se* reasonable cause for legitimate concerns as to whether funds were being used for their stated purpose, pursuant to Code §§ 57-59 and 59.1-9.10." *Id.* Rejecting AMP's claim to the contrary, the Court further found "that the Attorney General acted in good faith and reasonably in accordance with the statutory requirement and [had] not exceeded its authority" and denied in toto AMP's Petition to Set Aside the CID. *Id.* Notably, after the Circuit Court issued its ruling from the bench at the July 16, 2024 hearing, AMP immediately sought a stay of the court's order and specification of a *supersedeas* bond, which, after the parties' briefing, was denied, and

denied again after AMP moved the court to reconsider. *See* Compl. ¶¶ 40–41; Oct. 11, 2024 Order, attached as Ex. 3; Nov. 6, 2024 Order, attached as Ex. 4.

AMP appealed the Circuit Court's July 30, 2024 Order to the Virginia Court of Appeals and the matter was fully briefed. *See* Compl. ¶ 39; Br. of Appellee. In response to AMP's assignments of error to the appellate court, the Attorney General's brief explained why the Circuit Court in denying the Petition to Set Aside the CID in its entirety was not required, as a matter of well-established Virginia law, to make specific findings or rulings on each of the arguments raised by AMP in rejecting those arguments by denying the Petition. Br. of Appellee 12–15. And the Attorney General explained why the CID was lawful on the merits. Br. of Appellee 27–37. Oral argument was held on July 15, 2025, where the Virginia Court of Appeals questioned the parties regarding the constitutional arguments raised by AMP. Mem. 7 n. 3, ECF No. 9-1.

During oral argument, AMP cited to *First Choice Women's Resource Center v. Platkin*, 24-781, U.S. (*cert. granted* June 16, 2025) as potentially controlling authority, and the Virginia Court of Appeals permitted subsequent briefing on the supplemental authority. *See* Appellee's Resp. to Supp. Br. of Appellant, attached as Ex. 5. The Attorney General's briefing points out that, though AMP presented *Platkin* as controlling authority, it in actuality has very little to do with this matter. *Id.* at 2–4. The United States Supreme Court in *Platkin* took up deciding *when* a CID recipient may mount a § 1983 challenge to a state-attorney-general-issued CID in a first filed action, not whether it could do so to collaterally attack an adverse decision in an action it previously filed in state court, as AMP is doing here. *Id.* At that time, the Attorney General observed that AMP already challenged the CID by initiating state court proceedings in 2023, and that "a subsequent attempt by AMP to challenge the CID in a new action would be plainly barred by res judicata." *Id.* at 4.

### III.    The Attorney General petitions the state court to enforce the CID, the state court orders AMP to comply with the CID, and the state court holds AMP in contempt

On January 14, 2025, the Attorney General filed a Petition to enforce the CID in the Circuit Court ("Petition to Enforce"). Compl. ¶ 7; Pet. to Enforce CID, attached as Ex. 6. In response, AMP filed a Plea in Bar, arguing that the parallel proceeding before the Virginia Court of Appeals precluded the Attorney General from proceeding with enforcement of his CID because, it argued, Virginia's CID statute stayed enforcement of a CID while its Petition to Set Aside remained on appeal. May 9, 2025 Op., attached as Ex. 7. The Circuit Court considered the parties' arguments on April 11, 2025 and questioned the parties specifically regarding the impact of the pending appeal on the enforcement of the CID. *Id.*

After hearing argument, the Court issued an opinion letter on May 9, 2025, holding that the statutory stay of enforcement of a CID only applied while a petition to set aside or modify a CID was pending in the *Richmond City Circuit Court* due to the plain language of the statute. Compl. ¶ 46; May 9, 2025 Op. "To rule otherwise," the court reasoned, "would render the statute practically inoperable and gut the Attorney General's authority to engage in pre-enforcement civil investigations and promote the public interest." *Id.* at 2. The Court stated that AMP "shall comply with the CID" and subsequently entered an order on June 13, 2025 directing AMP to comply with the CID within 14 days of the order. *Id.*; June 13, 2025 Order, attached as Ex. 8.

This ruling prompted AMP to request the Virginia Court of Appeals to intervene and order a stay of compliance with the CID. Compl. ¶ 42. On June 29, 2025, the Court of Appeals denied AMP's motion for a stay after receiving briefing from the parties. Compl. ¶ 43; June 9, 2025 CAV Order, attached as Ex. 9.

The court-ordered deadline for AMP to comply with the CID fell on June 27, 2025, and that deadline passed without any communication whatsoever from AMP. July 3, 2025 Letter to Pl.,

ECF No. 1-4 at 13–14; Mot. for Rule to Show Cause, ECF No. 1-4 at 4–7. After the Attorney General's subsequent efforts to contact AMP regarding its non-compliance with the Order went unanswered, on August 5, 2025, he moved the Richmond Circuit Court for a Rule to Show Cause to direct AMP to appear on September 29, 2025 to show cause why it should not be held in contempt for violating the June 13, 2025 Order. Compl. ¶ 50; Mot. for Rule to Show Cause, ECF No. 1-4 at 4–9. On August 26, 2025, the Circuit Court entered the Rule to Show Cause. ECF No. 1-4 at 15–16. AMP did not respond to the Attorney General's Motion for Rule to Show Cause or the Court's Rule to Show Cause.

The parties appeared in the Circuit Court on September 29, 2025. Compl. ¶ 51; Mem. 3–4; Sept. 29, 2025 Order, attached as Ex. 10. After AMP's counsel admitted that nothing had been done to comply with the June 13, 2025 Order, the Circuit Court found AMP in civil contempt, ordered it to comply by no later than Friday, October 3, 2025, and imposed a $1,000 per day penalty for each day thereafter that AMP had not complied with the order. Mem. 2; Sept. 29, 2025 Order 1–2. The Circuit Court also ordered AMP to reimburse the Attorney General for $8,000 in attorneys' fees he incurred in attempting to secure compliance with the June 13, 2025 Order, filing the Motion for Rule to Show Cause, and preparing for the show cause hearing. Sept. 29, 2025 Order.

IV.    **Twenty-two months after the Attorney General issued the CID and twenty-one months after AMP elected to challenge the CID in state court, AMP files suit in federal court seeking to prevent the Attorney General from enforcing state court judgments**

On September 26, 2025, Plaintiff filed a Complaint seeking declaratory and injunctive relief in a late and groundless attempt to avoid compliance with the CID and the order of the Circuit Court. Compl. 14–15, ECF No. 1. The Complaint is entirely based on the CID and the state court proceedings described in Sections II through III above. Compl. ¶¶ 12–98. Plaintiff asserts five

8

causes of action. In Count I, Plaintiff asserts a free-standing claim regarding its freedom of speech pursuant to the First Amendment to the U.S. Constitution. *Id.* ¶¶ 54–64. Plaintiff alleges that the CID is overly broad and, as a result, chills its speech by subjecting it to investigation. *Id.* ¶¶62–64. In Count II, Plaintiff asserts a free-standing claim regarding its freedom of association pursuant to the First Amendment to the U.S. Constitution. *Id.* ¶¶ 65–75. Plaintiff alleges that the CID violates its First Amendment right to expressive association by seeking its list of donors and partners. *Id.* In Count III, which is brought pursuant to 42 U.S.C. § 1983, Plaintiff alleges that the Attorney General violated the First Amendment by retaliating against it for its protected speech by issuing the CID. *Id.* ¶¶ 76–88. Count IV asserts a free-standing claim of viewpoint discrimination pursuant to the First and Fourteenth Amendments to the U.S. Constitution on the basis that the Attorney General allegedly issued the CID because he disagrees with Plaintiff's speech. *Id.* In Count V, Plaintiff asserts a free-standing claim of unreasonable search and seizure pursuant to the Fourth Amendment to the U.S. Constitution on the grounds that the CID does not have a legitimate purpose. *Id.* ¶¶ 89–98.

As relief, Plaintiff asks this Court to issue a temporary restraining order prohibiting enforcement of the CID pending the outcome of this litigation. *Id.* at 14. In addition, Plaintiff seeks declarations that the Attorney General violated the First and Fourth Amendments to the U.S. Constitution and 42 U.S.C. § 1983. *Id.* Plaintiff seeks a preliminary injunction to prevent the Attorney General from enforcing the CID until a court rules on the constitutionality of the scope of the CID. *Id.* at 15.

On October 1, 2025, Plaintiff filed its Emergency Motion for a Temporary Restraining Order and Preliminary Injunction. Emergency Mot., ECF No. 9. Plaintiff's motivation for filing its Emergency Motion and seeking a hearing less than 48 hours later is apparently due to the Circuit

Court issuing sanctions against it of $8,000 with more sanctions to accrue if Plaintiff does not comply with the CID by October 3, 2025. Mem. in Supp. of Pl.'s Emergency Mot. ("Mem.") 2, ECF No. 9-1. Plaintiff requested a hearing on the morning of October 3, 2025. Notice of Hr'g, ECF No. 10. Plaintiff did not serve the Attorney General with the Complaint until the afternoon of October 2, 2025.

## LEGAL STANDARD

"[T]he Supreme Court has repeatedly admonished lower courts that a preliminary injunction 'is an extraordinary remedy never awarded as of right.'" *AFT v. Bessent*, No. 25-1282, 2025 U.S. App. LEXIS 20397, at *6, 2025 WL 2313255, __ F.4th __ (4th Cir. Aug. 12, 2025). To obtain a temporary restraining order or preliminary injunction, a plaintiff must satisfy the four-factor *Winter* test. *Id.* (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)). These factors are "(1) that they are likely to succeed on the merits,[4] (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that the injunction is in the public interest." *Id.* But "a preliminary injunction can be granted only if every factor is met," and thus "the rejection of a single factor" results in denying the preliminary injunction. *Id.* at *6–7 (quoting *Frazier v. Prince George's Cnty.*, 86 F.4th 537, 544 (4th Cir. 2023)). And Plaintiff "carries the burden of persuasion" and must satisfy each element "*by a clear showing.*" *Id.* at *7 (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (italics in the original).

"[S]ome requests for preliminary injunctions can be quickly resolved on just the first *Winter* factor," likelihood of success on the merits, "alone." *Id.* at *8. This is especially true

---

[4] Likelihood of success on the merits, "refers to the party's likelihood of success *in the lawsuit before the court*, including both merits *and* jurisdictional issues." *Bessent*, 2025 U.S. App. LEXIS 20397, at *6 n.3.

"when a plaintiff must prevail on several independent issues, each potentially dispositive of the case, to prevail overall." *Id.* In such cases, the plaintiff has a "multiplicative problem" that means even if they are likely to win *each* of those issues they are unlikely to win *all* of them.[5] *Id.* A "plaintiff must therefore show an extremely high likelihood of success on each individual issue in order to have a normal likelihood of success overall." *Id.* at *9. This "creates a probabilistic structure that stacks the deck against a plaintiff who must prevail on multiple independent issues to prevail overall." *Id.* at *2.

## ARGUMENT

AMP cannot meet any of the *Winter* factors, and, as result, its emergency motion for a temporary restraining order should be denied. First, it cannot demonstrate likelihood of success on the merits because its claims are subject to dismissal. AMP's constitutional claims are barred by res judicata (claim and issue preclusion), the *Rooker-Feldman* doctrine, *Younger* abstention, and sovereign immunity. Second, the absence of a preliminary injunction will not result in irreparable harm because AMP will only incur monetary sanctions, which is definitionally not an irreparable harm. Furthermore, the Attorney General is statutorily required to maintain the confidentiality of AMP's responses to the CID with limited exceptions. In addition, AMP's delay in seeking the temporary restraining order is evidence that it will not suffer irreparable harm. Finally, the balance of the equities weighs decisively against a preliminary injunction, which would not be in the public interest.

---

[5] The Fourth Circuit offered the following "example for clarity: If plaintiffs in a case had a 75% chance of prevailing on each of five independent issues, but they needed to prevail on *all* of them to receive relief, then their likelihood of overall success is $(0.75)^5$ = ~24%. Despite being 3:1 favorites on each issue, plaintiffs are 3:1 underdogs in the case overall. The other side's odds are mirrored; despite being 3:1 underdogs on each issue, defendants are 3:1 favorites overall. The mere existence of multiple issues disfavors plaintiffs." *Bessent,* 2025 U.S. App. LEXIS 20397, at *9 n.4.

I.   **AMP cannot demonstrate likelihood of success on the merits because its constitutional claims are subject to dismissal**

a.   **AMP's action is barred by issue and claim preclusion because the Circuit Court already rejected its arguments**

The recipient of a CID is barred from relitigating in federal court a state-court challenge to the CID. The Courts of Appeals for the Second and Third Circuits have considered similar federal court challenges to investigative subpoenas issued by the Attorney Generals of New Jersey and Massachusetts, and have held that res judicata bars the federal actions when the state court has already ruled on the challenges to the subpoenas. *Smith & Wesson Brands, Inc. v. Atty. Gen. of N.J.*, 105 F.4th 67 (3d Cir. 2024); *Exxon Mobil Corp. v. Healey*, 28 F.4th 383 (2d Cir. 2022). This Court should follow the Second and Third Circuits and rule that AMP's federal action is barred by issue and claim preclusion.

Federal courts give state court judgments the same preclusive effect the judgments would receive under state law. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481–82 (1982); *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008). This rule equally applies in the 42 U.S.C. § 1983 context to bar "relitigat[ion] [of] an issue already decided in state court." *Allen v. McCurry*, 449 U.S. 90, 101, 104 (1980).

Under Virginia law, issue preclusion bars a subsequent suit where "a particular point or question" is litigated by the same parties or their privies in the first action which would be "final and conclusive in the second" suit. *Storm v. Nationwide Mut. Ins. Co.*, 199 Va. 130, 134 (1957). The party seeking to assert issue preclusion must establish the following:

> (1) the parties [or their privies] to the two proceedings must be the same, (2) the issue of fact sought to be litigated must have been actually litigated in the prior proceeding, (3) the issue of fact must have been essential to the prior judgment, and (4) the prior proceeding must have resulted in a valid, final judgment against the party against whom the doctrine is sought to be applied.

*Lane v. Bayview Loan Servicing, LLC*, 297 Va. 645, 654 (2019) (citing *Glasco v. Ballard*, 249 Va. 61, 64 (1995)).

The related doctrine of claim preclusion bars a subsequent suit "on any claim or cause of action that arises from that same conduct, transaction or occurrence" as the first suit. *Lane*, 297 Va. at 654 (quoting Va. Sup. Ct. R. 1:6). This rule applies even if "the second suit includes alternative legal theories or would require evidence not present in the first suit." *Funny Guy, LLC v. Lecego, LLC*, 293 Va. 135, 150 (2017). The elements of claim preclusion in Virginia are: "(1) a final judgment on the merits, (2) the same parties (or their privies) in both proceedings, also expressed as identity of the parties, and (3) both causes of action arising out of the same conduct, transaction, or occurrence." *Id.* (citing Va. Sup. Ct. R. 1:6).

Issue preclusion and claim preclusion bar all of AMP's constitutional claims raised in this action. All the elements of issue preclusion are met here. The parties to the Petition to Set Aside the CID and this federal action are the same. *Compare* Pet. to Set Aside CID 1 *with* Compl. 1. The issues of fact sought to be litigated in this action were litigated in the Petition to Set Aside the CID in the Circuit Court, and the issues of fact surrounding AMP's First and Fourth Amendment claims were essential to AMP's claims and the July 30, 2024 Order. *Compare* Pet. to Set Aside CID 4–15 *with* Compl. ¶¶ 54–98; Br. of Appellee 8. For example, Plaintiff now claims the Attorney General "issued an overbroad CID in bad faith." Mem. 7. But the Circuit Court found "the Attorney General acted in good faith." July 30, 2024 Order. Similarly, Plaintiff now challenges whether there was a "legitimate purpose" for the CID. Mem. 7. But the Circuit Court found there were "legitimate concerns as to whether funds were being used for their stated purpose." July 30, 2024 Order. And the Circuit Court ruled on AMP's constitutional arguments, which were raised in that

case, when it denied its Petition to Set Aside the CID.[6] *Id.* Finally, the Petition to Set Aside the CID resulted in a final judgment against AMP. *See* July 30, 2024 Order. Accordingly, AMP's claims in this action are barred by issue preclusion.

While AMP complains that the July 30, 2024 Order did not individually address every argument it made, Compl. ¶ 38, that is not required under well-established precedent in Virginia. "There is no general requirement that trial courts must state for the record the reasons underlying their decisions." *Callison v. Glick*, 297 Va. 275, 294 (2019) (quoting *Shannon v. Commonwealth*, 289 Va. 203, 206 (2015)). Rather, "[i]t is well-established that '[t]he trial court is presumed to know and correctly apply the law absent clear evidence to the contrary.'" *Cedeno v. For Every Body, LLC*, No. 1842-22-4, 2024 Va. App. LEXIS 227, at *33 (April 23, 2024) (quoting *Rainey v. Rainey*, 74 Va. App. 359, 377 (2022)). "In accordance with that principle, trial courts are not required to 'state for the record the reasons underlying their decisions,' or include 'findings of fact and conclusions of law' in a final order." *Id.* (first quoting *Shannon*, 289 Va. at 206 and then quoting *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982)). "[U]nless directed otherwise by statute, a trial court is presumed to have properly considered all relevant, significant factors in making its ruling without having to explicitly address each factor or piece of evidence." *Id.* Neither the VSOC law nor any other statute requires the Circuit Court to address each argument made in a proceeding to modify or set aside a civil investigative demand when rejecting those arguments. *See* Va. Code §§ 57-59(C); 59.1-9.10(F); *Cedeno*, 2024 Va. App. LEXIS 227, at *34 (explaining

---

[6] The Attorney General addressed AMP's argument that the Circuit Court did not address its constitutional arguments at length in its brief to the Court of Appeals of Virginia. Br. of Appellee. Due to the limited time available to prepare this brief, the Attorney General incorporates by reference its argument from that brief. Br. of Appellee at 12–15.

"the circuit court's rulings in favor of [appellee] demonstrate implicit rejection of appellant's arguments after due consideration").

The three elements of claim preclusion are also met here, which provides an additional bar to the Complaint. *Funny Guy, LLC*, 293 Va. at 150. The July 30, 2024 Order was a final judgment on the merits of the Petition to Set Aside the CID, which AMP appealed. Compl. ¶¶ 37, 39; July 30, 2024 Order. The parties were the same in both proceedings. *Compare* Pet. to Set Aside CID 1 *with* Compl. 1. And it is indisputable that both the Petition to Set Aside the CID and the Complaint arose out of the same conduct, transaction, or occurrence, namely the Attorney General's issuance of the CID to AMP. *Compare* Pet. to Set Aside CID 2–4 *with* Compl. 1–8. This is the textbook example of claim preclusion. And this Court will be in good company reaching that conclusion.

The Third Circuit Court of Appeals recently addressed almost an identical issue in *Smith & Wesson Brands, Inc. v. AG of N.J.*, 105 F.4th 67 (3d Cir. 2024). There, the New Jersey Attorney General issued a subpoena for documents to Smith & Wesson pursuant to its authority under its state consumer fraud act. *Id.* at 70. In response, Smith & Wesson filed a civil rights lawsuit in federal court to enjoin the enforcement of the subpoena. *Id.* The New Jersey Attorney General filed a subpoena enforcement action in state court, which Smith & Wesson opposed with the same arguments it raised in its federal complaint. *Id.* The state-court matter resolved first. *Id.* The state court rejected Smith & Wesson's objections to the subpoena and ordered compliance with the subpoena. *Id.* The federal court then dismissed Smith & Wesson's federal action on the grounds of claim preclusion. *Id.* The Third Circuit applied New Jersey law on claim preclusion and affirmed the district court's order. *Id.* at 73. The Third Circuit noted that Smith & Wesson's request for relief in both the state and federal actions were the same: enjoining the enforcement of the subpoena. *Id.* at 77. The court held that the differences in postures between the state and federal

matters, namely that Smith & Wesson was in a defensive posture in the state proceeding, was insignificant to the claim preclusion analysis. *Id.* at 81.

The Second Circuit reached a similar conclusion in another highly analogous case. In *Exxon Mobil Corp. v. Healey*, the Massachusetts Attorney General initiated an investigation into whether energy company Exxon Mobil committed consumer fraud. 28 F.4th 383, 388 (2d Cir. 2022). The Massachusetts Attorney General served Exxon with a subpoena to produce documents. *Id.* at 389. Exxon then filed a federal complaint against the Massachusetts Attorney General seeking to enjoin the subpoena because the investigation allegedly violated the First, Fourth, and Fourteenth Amendments. *Id.* A day later, Exxon initiated a state court proceeding to quash the subpoena and the Massachusetts Attorney General moved to compel enforcement. *Id.* at 389–90. The state-court matter resolved first, and the state court held the subpoena was legitimate. *Id.* at 390. Applying Massachusetts state law, the federal district court dismissed Exxon's federal complaint on claim preclusion grounds. *Id.* at 391. The Second Circuit affirmed on the same grounds. *Id.* at 403. It rejected Exxon's argument that the state enforcement proceeding did not afford the company a full and fair opportunity to litigate its federal claims. *Id.* at 401.

This Court should follow the lead of the Courts of Appeal for the Second and Third Circuits and hold that Virginia's issue and claim preclusion law bars AMP's Complaint. If anything, AMP's position is weaker than that of Smith & Wesson and Exxon because rather than file a federal action immediately upon receipt of the CID, as they did, AMP waited almost two years to file its federal action.

Nor does AMP's reliance on the Supreme Court granting certiorari in *First Choice Women's Resource. Centers, Inc. v. Platkin* alter the analysis. No. 23-23076, 2024 U.S. Dist.

LEXIS 6993, *2–3 (D. N.J. January 12, 2024), aff'd 2024 U.S. App. LEXIS 31558 (3d Cir. December 12, 2024). Compl. ¶ 53; Mem. 6. That case concerns when a challenge to a state CID becomes ripe such that it could be challenged in a first filed federal court action. The issue there is that if federal litigation is not ripe until after state court adjudication, which requires the federal suit to be the second filed suit, the subsequent federal suit will be precluded. To avoid res judicata, a plaintiff would need to litigate in federal court first, which requires the dispute to be ripe.[7] This issue of *when* a plaintiff can go to federal court is entirely irrelevant here, because AMP made its choice two years ago when it chose to litigate in state court. There can be no first filed federal action here.

That its Complaint is barred by claim and issue preclusion should be no surprise to AMP— the Attorney General previously put it on notice that such an action would be barred by res judicata. Appellee's Resp. to Supp. Br. of Appellant 4.

### b. The *Rooker-Feldman* doctrine bars AMP's action

Plaintiffs cannot use constitutional claims to relitigate issues already decided by Virginia state courts. The *Rooker-Feldman* doctrine recognizes that federal district courts have no jurisdiction to hear what is essentially an appeal of a state court judgment. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). "A litigant may not circumvent" the principles of federalism, in which the Supreme Court of the United States is the only federal court vested with the authority to review the constitutionality of state court judgments "by instituting a federal

---

[7] Indeed, the lower court in *Platkin* observed that, in adhering to the rule that a § 1983 claim was not ripe for adjudication until the state court enforced the subpoena, it was "functionally finding that" such challenges "may seldom if ever be ripe for adjudication in federal court because . . . if a plaintiff's claims in federal court are not ripe until after a state court has ruled on the enforceability of a subpoena, res judicata principles will likely bar a plaintiff from filing in federal court." *First Choice Women's Res. Ctrs., Inc. v. Platkin*, 2024 U.S. Dist. LEXIS 6993, *12 n. 7 (D. N.J. January 12, 2024), *aff'd*, 2024 U.S. App. LEXIS 31558 (3d Cir. Dec. 12, 2024).

action which, although not styled as an appeal, amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court." *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003) (alteration in the original; internal quotation omitted). To determine whether *Rooker-Feldman* deprives a federal court of jurisdiction, the analysis turns on "whether a party seeks the federal district court to review a state court decision and thus pass upon the merits of that state court decision." *Id.* (quoting *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997), *cert. denied*, 522 U.S. 1077 (1998)). The "doctrine applies not just to constitutional claims presented or adjudicated by the state courts but also to claims that are inextricably intertwined with a state court judgment." *Marshall v. Marshall*, 523 F. Supp. 3d 802, 831 (E.D. Va. 2021) (quoting *Jordahl*, 122 F.3d at 199) (internal quotations omitted).

This Court lacks jurisdiction over AMP's constitutional claims because exercising jurisdiction would amount to a review of the Circuit Court's decisions in the litigation concerning the Petition to Set Aside the CID and the Petition to Enforce. "Under the *Rooker-Feldman* doctrine, a 'party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court.'" *Am. Reliable Ins. Co.*, 336 F.3d at 316 (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)).

Here, AMP lost the litigation concerning its Petition to Set Aside the CID when the Circuit Court entered its July 30, 2024 Order denying that Petition in full. July 30, 2024 Order. The Attorney General subsequently petitioned to enforce its CID, and the Circuit Court ordered AMP to comply with it. June 13, 2025 Order. Subsequently, the Circuit Court held AMP in contempt of its June 13, 2025 for not complying. Sept. 29, 2025 Order. AMP's Complaint and Emergency Motion invite this Court to review and reject the state court judgments that rejected AMP's constitutional arguments and the order for AMP to comply with the CID. Compl. 14–15.

As the substance of AMP's Complaint constitutes a challenge of the July 30, 2024 Order, a state-court judgment that has been raised on direct appeal in Virginia's state-court system, and the June 13, 2025 and September 29, 2025 Orders, this Court is without jurisdiction. *See Chien v. Motz*, No. 3:18-cv-106, 2019 U.S. Dist. LEXIS 14541, at \*15–17 (E.D. Va. Jan. 7, 2019) (recommending dismissal pursuant to the *Rooker-Feldman* doctrine of lawsuit where the plaintiff could have raised alleged constitutional violations on direct appeal).

Therefore, Plaintiff's claims are barred by the *Rooker-Feldman* doctrine, this Court is without jurisdiction, and the Complaint should be dismissed. Accordingly, the Plaintiff cannot prevail on the merits.

### c.  The *Younger* abstention doctrine bars AMP's action

To the extent this Court has subject matter jurisdiction, it should abstain from exercising it pursuant to the *Younger* abstention doctrine. *Younger* abstention requires "federal courts to refrain from interfering with ongoing state judicial proceedings that implicate important state interests." *Life Partners, Inc. v. Morrison*, 484 F.3d 284, 300 (4th Cir. 2007). The doctrine bars "federal courts from providing most types of declaratory relief as well as injunctive relief from state proceedings." *Epes v. Green Tree Servicing, LLC*, No. 3:04cv455, 2004 U.S. Dist. LEXIS 32947, at \*23 (E.D. Va. Dec. 14, 2004) (citing *Samuels v. Mackell*, 401 U.S. 66 (1971)).

There is a three-part test for evaluating whether a federal court should abstain from exercising jurisdiction and interfering in a state court proceeding under *Younger*: "(1) there is an ongoing state judicial proceeding brought prior to substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides adequate opportunity to raise constitutional challenges." *S.C. Ass'n of Sch. Adm'rs v. Disabato*, 460 F. App'x 239, 241-42 (4th Cir. 2012) (quoting *Nivens v. Gilchrist*, 444 F.3d 237, 241 (4th Cir. 2006)).

All three factors of this test are met here. First, AMP first initiated proceedings in the Circuit Court in November 2023, and the Attorney General filed his enforcement action in January, 2025. Compl. ¶¶ 32, 44. Meanwhile, this action was not filed until September 26, 2025, and is still taking its first breaths. Compl. Both of the state court matters are ongoing. The litigation concerning AMP's Petition to Set Aside the CID is awaiting a decision by the Virginia Court of Appeals. *Id.* ¶¶ 39, 44. The Petition to Enforce the CID litigation is also pending and set for a further hearing on October 28, 2025. *See* Sept. 29, 2025 Order. Second, enforcement of a state's charitable solicitation laws implicate important state interests. *See* Va. Code §§ 57-48 to 57-69 (VSOC law); *see also, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 612 (2021) (recognizing the "substantial interest[] in protecting the public from fraud."). Furthermore, this Court has recognized that contempt proceedings to enforce state court orders are an important state interest. *Dacha v. Landry*, No. 3:25-CV-516 (RCY), 2025 LX 230681, at *10-11 (E.D. Va. July 18, 2025) (citing *Juidice v. Vail*, 430 U.S. 327, 336 (1977)). Third, AMP has the opportunity to raise its constitutional concerns in the state court proceedings and has done so. Pet. to Set Aside CID 4–12; Br. of Appellee 10 (setting out AMP's Assignments of Error in its appeal). State court judges are fully competent to handle constitutional issues subject to review by the Supreme Court of the United States. *Charnock v. Virginia*, No. 2:16-cv-493, 2017 U.S. Dist. LEXIS 172629, at *8 (E.D. Va. Jan. 4, 2017) (citing *Bonner v. Cir. Ct. of St. Louis*, 526 F.2d 1331, 1336 (8th Cir. 1975)). "The right to present a constitutional issue in the state forum, within the meaning of *Younger*, does not equate with an assurance that those issues will be fully addressed or rightly decided. Rather, it means that there is a right to a fair hearing on the issues." *Colonial First Props. v. Henrico Cnty.*, 236 F. Supp. 2d 588, 597 (E.D. Va. 2002). As the state court proceedings, and any appeals, will

provide—and have provided—an opportunity for a fair hearing on AMP's constitutional arguments, this factor is also met.

Because the elements of *Younger* abstention are satisfied, this Court should abstain from exercising jurisdiction over the Complaint and dismiss it pursuant to Rule 12(b)(1). For this additional reason, AMP has no likelihood of success on the merits.

### d. Sovereign immunity bars AMP's requested relief

AMP's desired relief is additionally barred by the Commonwealth's sovereign immunity. Plaintiff sues the Attorney General in his official capacity as Attorney General of Virginia. Compl. 1. But state officers acting in their official capacity are entitled to Eleventh Amendment protection because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and, "[a]s such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Plaintiff cannot use 42 U.S.C. § 1983 to circumvent the Commonwealth's sovereign immunity as "Congress has not abrogated sovereign immunity for § 1983 suits." *Biggs v. N.C. Dep't of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020). Likewise, the Declaratory Judgment Act does not abrogate a state's sovereign immunity. *Booth v. State of Maryland*, 112 F.3d 139, 146 (4th Cir. 1997). Nor does the limited *Ex parte young* exception apply here. "[T]his exception does not apply when the alleged violation of federal law occurred entirely in the past" and the exception requires that "the relief sought is only prospective." *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 747 (4th Cir. 2018). To the extent that AMP seeks prospective relief here, as opposed to declarations regarding past conduct, such relief primarily concerns orders of the Circuit Court directing compliance and holding AMP in contempt. But this suit is against the Attorney General, not the Circuit Court. And it is the Circuit

Court which has ordered Plaintiff to "fully comply with the Court's Order" and will sanction Plaintiff until it complies. Sept. 29, 2025 Order 2.

### e. AMP's constitutional claims fail on the merits

Given the multiple jurisdictional bars to Plaintiff's suit, this Court need not reach the substance of Plaintiff's claims to conclude that AMP is not likely to succeed on the merits. Those threshold bars alone warrant denying the Motion. But even if the Court reached the merits, Plaintiff would fare no better. As the litigation in the Virginia state courts reflects, Plaintiff's constitutional claims are baseless. Due to the time limitations in preparing this brief caused by Plaintiff's delay tactics (*i.e.* failing to move for a temporary restraining order until October 1, 2025 while requesting a hearing on the morning of October 3, 2025), Defendant respectfully refers the Court to its brief submitted to the Virginia Court of Appeals, attached hereto, for more fulsome responses to Plaintiff's claims. *See* Br. of Appellee 17–37. Defendant will further expound upon these responses, if necessary, in its forthcoming motion to dismiss.

First, Plaintiff primarily argues that the CID infringes on its First Amendment rights. Mem. 5–7. Those arguments are refuted on pages 27 to 33 of the Attorney General's Brief of Appellee in the Virginia Court of Appeals. Most notably, Plaintiff continues to cite *Bonta* and similar cases for the supposed proposition that "States cannot compel disclosure of membership lists, including lists of donors." Mem. 7. Such a rule would, of course, be irrelevant to the vast majority of the CID at issue here. But, more importantly, *Bonta* disproves Plaintiff's point. That case expressly sanctioned the use of investigative tools, such as subpoenas like the CID in the present case, to obtain donor information in the context of targeted investigations. *Bonta*, 594 U.S. at 612–615. In contrast to such investigations, *Bonta* concerned a California charities registration statute that required *all* charitable organizations to submit donor lists to the California Attorney General's Office before

they solicited charitable contributions in the state. *Bonta*, 594 U.S. at 602. That is not the case here. Similarly, Plaintiff strangely asserts that the Attorney General is "yet to articulate a need for all records requested by the CID." Plaintiff simply ignores pages 22 to 27 of Appellee's Brief (amongst other filings), which walks through each Request for Production and each Interrogatory explaining why the information it seeks is relevant. Second, Plaintiff claims the CID infringes its Fourth Amendment rights. That argument is addressed on pages 37 to 38 of Appellee's Brief. Defendant notes that its ability to respond to Plaintiff's arguments here with cross references to its state court briefing further confirms that claim and issue preclusion bar this suit.

*        *        *

Accordingly, this Court should find that AMP has no likelihood of success on the merits and deny the TRO.

## II.    The absence of a temporary restraining order will not result in irreparable harm

### a.    The monetary penalty for non-compliance with the CID does not cause irreparable harm

The absence of a temporary restraining order or a preliminary injunction will not result in irreparable harm for AMP. Should AMP elect to continue to disobey the Circuit Court's June 13, 2025 Order, it will incur a monetary sanction. Sept. 29, 2025 Order. As this Court has observed, "monetary sanctions" do not constitute irreparable harm as "'mere injuries, however substantial, in terms of money, time, and energy expended in the absence of a stay are not enough' to satisfy the irreparable harm requirement." *Advanced Training Grp. Worldwide, Inc. v. Proactive Techs. Inc.*, No. 1:19-cv-0505-TSE, 2021 U.S. Dist. LEXIS 263423, at *8–10, 2021 WL 9860368 (E.D. Va. Jan. 8, 2021) (quoting *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (cleaned up). Accordingly, this Court should not find that AMP will suffer an irreparable harm if the Court does not enter a temporary restraining order.

**b. AMP will not suffer irreparable harm if it complies with the CID because state law requires the Attorney General to maintain the confidentiality of documents and information obtained from the CID**

AMP will not suffer irreparable harm if it complies with the Circuit Court's orders of June 13, 2025 and September 29, 2025. By law, the Attorney General has a duty to maintain the secrecy of information and documents obtained in response to a CID. Va. Code § 57-59(C) (authorizing the Attorney General to issue CIDs pursuant to the VSOC law and incorporating the provisions of Va. Code § 59.1-9.10, including the secrecy provision, for CIDs issued in connection with VSOC investigations). Specifically, Va. Code § 59.1-9.10(N) provides that: "It shall be the duty of the Attorney General, or his designees, to maintain the secrecy of all evidence, testimony, documents or other results of such investigations."[8] Accordingly, AMP's concerns regarding supposed harm to its donors and collaborators during the period that AMP was out of compliance with the VSOC law are overstated and entirely speculative.

**c. AMP's delay in seeking emergency relief from this Court weighs against affording such relief**

Setting aside that AMP has known of its obligations under the CID for nearly two years, AMP has also been on notice of the Attorney General's continued intent to enforce the CID since January 2025, and has been directly ordered to comply with the CID since June 13, 2025. Compl. ¶ 44; June 13, 2025 Order. Moreover, AMP was aware well in advance of the hearing on the Rule to Show Cause on September 29, 2025. Pl.'s Acceptance of Service, ECF No. 1-4. Despite this knowledge, AMP delayed until October 1, 2025 to seek a temporary restraining order—and only did so after it was found in contempt of court and sanctioned for violating the June 13, 2025 Order.

---

[8] The two limited exceptions to this provision are for: (1) disclosure to federal or state law-enforcement authorities with similar confidentiality restrictions or (ii) disclosure in an enforcement action brought by the Attorney General under VSOC. Va. Code § 59.1-9.10(N).

"[A] plaintiff's delay in seeking relief weighs against granting a TRO or preliminary injunction." *Perez v. City of Petaluma*, No. 21-cv-06190, 2021 U.S. Dist. LEXIS 153026, 2021 WL 3934327, at *1 (N.D. Cal. Aug. 13, 2021) (denying motion for temporary restraining order where plaintiff waited "a full month" after the issuance of the challenged city resolution to seek a TRO). A plaintiff's "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Miller ex rel. NLRB v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993) (quotation marks and citation omitted). Delays of one month or more are common grounds for denying motions for temporary restraining orders, and some courts deny emergency relief based on delays of as little as ten days. *West v. PBC Mgmt. LLC*, No. 23-cv-03283-BLF, at *5 (N.D. Cal. July 10, 2023) (collecting cases).

AMP's delay in seeking an emergency TRO and preliminary injunction belies its claim that it will suffer irreparable harm in the absence of a TRO. AMP has known of the CID for close to two years and the Circuit Court ordered it to comply with the CID on June 13, 2025. To the extent that these long-known facts create an emergency, it is an emergency entirely of AMP's making.

*    *    *

Accordingly, this Court should find that AMP will not suffer any irreparable harm in the absence of a TRO.

## III.    The balance of the equities strongly weighs against a temporary restraining order or preliminary injunction, which would not be in the public interest

When an injunction is sought against government actors, the requirements that a plaintiff show that the balance of equities and public interest are in their favor merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). In this case, that balance clearly favors the Attorney General. The public has a plain interest in ensuring its charitable contributions are legally solicited and utilized. Va.

Code § 2.2-507.1 ("The assets of a charitable corporation . . . in Virginia shall be deemed to be held in trust for the public."). And as the Supreme Court has recognized in this context: "It goes without saying that there is a 'substantial interest[] in protecting the public from fraud.'" *Bonta*, 594 U.S. at 612 (quoting *Schaumburg v. Citizens for Better Environment*, 444 U.S. 620, 636 (1980)). That is the very reason that the VSOC law, which the Attorney General enforces, exists. *See* Va. Code §§ 57-48 to 57-69; *see also* Va. Code § 2.2-507.1 (providing that the Attorney General has the "authority to act on behalf of the public" with respect to charitable assets). The key tool for the Attorney General to fulfill that responsibility is the authority to issue "a civil investigative demand." Va. Code § 57-59(C). In an obvious harm to the public and the Attorney General, AMP seeks to nullify the Commonwealth's ability to investigate violations of the VSOC law and protect charitable assets by enjoining enforcement of a CID issued nearly two years ago and upheld by Virginia's courts. Simply put, the public interest is not served by permitting investigative targets to evade compliance with state law by filing meritless litigation for purposes of delay.

Moreover, the posture of this case where AMP is effectively asking this Court to interfere with state court proceedings tips the scales even more decisively in Defendant's favor. Courts have long recognized that "considerations of comity and federalism [] plainly play into th[e] court's consideration of the public's interest." *Banks v. N.C. ex rel. N.C. State Bar*, No. 6:94-CV-680, 1995 U.S. Dist. LEXIS 5037, at *13 (M.D.N.C. Mar. 10, 1995). Apart from interfering with the Attorney General's investigation, those concerns are amplified here because Virginia's judiciary has already adjudicated Plaintiff's challenge to the CID and refusal to comply culminating in a contempt order. As the Supreme Court has explained "[t]he contempt power lies at the core of the administration of a State's judicial system," which makes the "contempt process" a "surely [] important interest." *Juidice v. Vail*, 430 U.S. 327, 335 (1977); see also *Kahn v. McNicholas*, 67 Va. App. 215, 226 (Va.

26

Ct. App. 2017) (quoting *Carter v. Commonwealth*, 2 Va. App. 392, 395 (Va. Ct. App. 1986)) ("The power to punish for contempt is inherent in, and as ancient as, courts themselves. It is essential to the proper administration of the law, to enable courts to enforce their orders, judgments and decrees . . . ."). And, as courts in this circuit have recognized, "a TRO issued by a federal court that invades the inner workings of a state court and its judicial officers would subvert foundational principles of federalism, comity, and separation of powers, and interfere with the defendants' performance of their official duties, which would clearly run counter to the public interest." *McGagh v. Sup. Court*, No. MJM-24-1015, 2024 U.S. Dist. LEXIS 160266, at *3-4 (D. Md. Sep. 6, 2024).

Yet that is what AMP asks this Court to do—because any claimed harm to AMP runs from the state court's contempt order enforcing its prior order compelling compliance with the CID, to afford AMP relief this Court would need to somehow enjoin a Virginia state court from enforcing its own orders, including its contempt order. Doing so—and undermining the authority of Virginia courts and their orders—is plainly against the public interest. *See, e.g.*, *Juidice v. Vail*, 430 U.S. 327, 336 (1977) ("[I]nterference with the contempt process not only unduly interferes with the legitimate activities of the State, but also can readily be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles.") (cleaned up); *Banks v. N.C. ex rel. N.C. State Bar* Civil No. 6:94-CV-680, 1995 U.S. Dist. LEXIS 5037, at *13 (M.D.N.C. Mar. 10, 1995) (denying TRO and preliminary injunction) ("Of even greater importance is the public's fundamental interest in preserving the sanctity and respect of court orders.").

In response to these weighty considerations—protecting charitable assets, enforcing state law, ensuring the effectiveness of the judicial system, federalism, comity—AMP offers a cursory assertion that the balance of equities and public interest favor an injunction.

First, AMP repeats its flawed claim of irreparable harm. Mem. 9. As explained above, those arguments are unavailing. *See* Section II, *supra*. Second, AMP asserts that there is no harm to the Attorney General because after years of admitted non-compliance with the VSOC law, AMP claims it is now "in compliance" with certain requirements of the law. Mem. 9. Of course, that was not the case when the CID was issued and, in any event, the Attorney General's authority extends to whenever "any person *has operated*, is operating or is about to operate in violation of the provisions of" the VSOC law. Va. Code § 57-59(C) (emphasis added). Subsequent prospective compliance does not erase past violations. Nor does it eliminate the Attorney General's authority to investigate under the VSOC law.

Third, AMP references the public's generalized interest in protecting constitutional rights. But those rights have been fully protected through the state court proceedings authorized by the CID statute, which AMP voluntarily availed itself of here. *See* Va. Code 59.1-9.10(F) (authorizing a "challenge [to] a civil investigative demand" via "a petition for an order of [the Richmond City circuit] court modifying or setting aside such demand."). Moreover, this argument presumes AMP is correct on the merits of its claim. It is not. *See* Section I. e., *supra*.

Lastly, and apparently due to its dissatisfaction with Virginia's courts repeatedly denying AMP's stay requests, Mem. 3, AMP suggests that the Virginia Court of Appeals needs this Court's assistance "in maintaining [its] purpose and effectiveness." Mem. 9. This assertion is baseless. The Virginia Court of Appeals is perfectly capable of fulfilling its "purpose" and ensuring its "effectiveness" and was well within its rights to deny AMP's stay motion. Mem. 3, 9. Indeed, AMP's argument on this front further confirms that it is essentially asking this Court to impermissibly step into the shoes of the Virginia Court of Appeals.

In sum, the balance of equities and public interest plainly favor Defendant. Even if that were not clear cut, however, AMP would still come up short because "[a] party requesting a preliminary injunction must generally show reasonable diligence" and "in considering the balance of equities" unnecessary delay by the plaintiff weighs against affording the requested relief. *Benisek v. Lamone*, 585 U.S. 155, 159–60 (2018). Here AMP delayed bringing this suit for nearly two years for no reason. While the suit would have similarly been meritless and at later points barred, AMP could have initiated this action when it received the Attorney General's CID nearly two years ago. It could have filed after the Circuit Court denied AMP's Petition to Set Aside the CID. It could have brought suit when the Attorney General filed a Petition to Enforce the CID. Or when the Circuit Court granted that Petition. Or when the Circuit Court entered a Rule to Show Cause. It did not. Instead, AMP waited until the eve of a contempt hearing to file suit. And then waited another five days, until after being found in contempt, to file a motion for a TRO and request a summons. That is manifestly not "reasonable diligence." It is gamesmanship. The Motion should be denied.

## **CONCLUSION**

To prevail on the *Winter* elements for obtaining a preliminary injunction, Plaintiff must make a "clear showing" it is entitled to relief. *Bessent*, 2025 U.S. App. LEXIS 20397, at *6–7. AMP has not only failed to clearly show all four elements are met, it has failed to meet a single one. Moreover, the Attorney General is also entitled to dismissal of this action pursuant to its forthcoming motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

For the reasons stated above, this Court should deny AMP's emergency motion for a temporary restraining order and a preliminary injunction, and award the Attorney General any further such relief the Court deems necessary and appropriate.

Dated: October 2, 2025                    Respectfully submitted,

**JASON S. MIYARES, in his official capacity as Attorney General of Virginia**

By Counsel:    /s/ Christopher P. Bernhardt
Christopher P. Bernhardt* (VSB No. 80133)
Senior Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 371-0977
Facsimile: (804) 371-2087
Email: cbernhardt@oag.state.va.us

      /s/ Mark S. Kubiak
Mark S. Kubiak* (VSB No. 73119)*
Senior Assistant Attorney General
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
Telephone: (804) 786-7364
Facsimile: (804) 786-0122
Email: mkubiak@oag.state.va.us

*Counsel of Record for Defendant*

Jason S. Miyares
Attorney General of Virginia

Thomas J. Sanford
Deputy Attorney General

## CERTIFICATE

I hereby certify that on October 2, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a copy to all counsel of record.

/s/ Christopher P. Bernhardt
Christopher P. Bernhardt (VSB No. 80133)
Senior Assistant Attorney General