UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

AJP Educational Foundation d/b/a          )
American Muslims for Palestine,           )
                                          )
        Plaintiff,                        )
                                          )   Case No. 1:25-cv-01617-LMB-IDD
v.                                        )
                                          )
JASON S. MIYARES, in his official         )
capacity as Attorney General of Virginia, )
                                          )
        Defendant.                        )
_____  )

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

## <u>INTRODUCTION</u>

This matter relates to a nearly-two-year-old investigation of AJP Educational Foundation d/b/a American Muslims for Palestine's ("AMP") solicitation of charitable contributions in the Commonwealth of Virginia, and a Civil Investigative Demand ("CID") issued by the Attorney General to AMP that remains largely unanswered to this day. AMP seeks to relitigate in federal court matters that already have been decided in state court proceedings, including an unsuccessful suit it initiated nearly two years ago to challenge the constitutionality of the CID.

After AMP's constitutional challenge to the CID was rejected, a Virginia state court ordered AMP to comply with the CID. AMP did not appeal that order yet chose to ignore it. Unsurprisingly, the state court held AMP in contempt and imposed sanctions. AMP now brings a constitutional challenge in federal court to enjoin the Attorney General's enforcement of the CID.

AMP's constitutional claims seeking to permanently enjoin the Attorney General's enforcement of the CID are barred by *Younger* abstention, res judicata, and the *Rooker-Feldman* doctrine. Accordingly, they should be dismissed pursuant to Fed. R. Civ. Proc. 12(b)(1). Alternatively, this Court should stay further proceedings in this action pending a final resolution of AMP's state court appeal of the denial of its challenge of the CID pursuant to the *Colorado River* abstention doctrine.

Furthermore, AMP has failed to state a claim that the Attorney General's CID violated any of its constitutional rights. The scope of the CID is proportional to AMP's admitted violation of Virginia's solicitation of contributions law over the course of almost seven years and the Attorney General has a compelling interest in enforcing Virginia's laws governing the solicitation of funds. Accordingly, AMP's claims should be dismissed pursuant to Fed. R. Civ. Proc. 12(b)(6).

## FACTUAL ALLEGATIONS AND BACKGROUND

The parties and the Court are familiar with the factual allegations and background of this action, which was addressed in detail in the Attorney General's Opposition to AMP's Emergency Motion for TRO and Preliminary Injunction, ECF No. 15, and this Court's Memorandum Opinion, ECF No. 19. Accordingly, the Attorney General presents a condensed summary of this action and highlights certain facts not previously addressed. The Attorney General continues to rely on the exhibits to his Opposition to AMP's Emergency Motion for a TRO and Preliminary Injunction.[1]

**I.    The Attorney General issues the Civil Investigative Demand to AMP**

In connection with his authority under the Virginia Solicitation of Contributions ("VSOC") law, the Attorney General issued a Civil Investigative Demand ("CID") to AMP on October 27, 2023 in connection with an investigation into violations of the VSOC law. Compl. ¶ 4; CID, ECF No. 15-1 at 34–35.[2] The CID sought documents from, and propounded interrogatories to, AMP, seeking information relating to AMP's charitable registration, its organizational structure, its solicitation activities, the sources of its funding, and how donated funds are spent by the charitable organization. Compl. ¶¶ 26–28; ECF No. 15-1 at 34–52. The Attorney General limited the scope of the entire CID to the period from November 29, 2016 to October 27, 2023, a period which corresponds to when AMP moved its headquarters to Virginia and then  operated in violation of

---

[1] Courts may consider relevant facts obtained from a public record on a motion to dismiss "so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint." *Cartwright v. T-Mobile US, Inc.*, No. 1:23-cv-625 (LMB/IDD), 2023 U.S. Dist. LEXIS 162888, at *5 n.3 (E.D. Va. Sep. 13, 2023) (citation and internal quotation omitted). The exhibits to the opposition to AMP's Emergency Motion for TRO qualify because they consist of materials filed in the state court matters. *See* ECF Nos. 15-1 through 15-10.

[2] This Court may consider a document, such as the CID, "submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Cartwright*, 2023 U.S. Dist. LEXIS 162888, at *5 n.3 (citation omitted); *see* Compl. ¶¶ 26–27, 70 (describing the CID).

the VSOC law and raised more than $10 million. ECF No. 15-1 at 5, 35–36; ECF No. 15-6 at 2–3; ECF No. 25 at 30.

## II.    AMP challenges the Attorney General's CID in state court

On November 27, 2023, AMP filed a Petition in the Circuit Court of the City of Richmond ("Circuit Court") to set aside or modify the Attorney General's CID ("Petition to Set Aside the CID"). Compl. ¶ 32; Pet. to Set Aside CID, ECF No. 1-2; *see* Va. Code § 59.1-9.10(F). In its Petition and at the subsequent hearing, AMP admitted to violating the VSOC law from 2016 through 2023 by soliciting charitable contributions in the Commonwealth without being properly registered with the Commissioner of Agriculture and Consumer Services (the "Commissioner") in connection with its charitable solicitation activity. *See* Pet. to Set Aside CID 5 n. 1; Tr. of July 16, 2024 Hr'g 204:3–10, attached as Ex. 1. AMP asserted that the CID violated its rights under the U.S. Constitution. Compl. ¶ 34; Pet. to Set Aside 4–12.

The Attorney General explained at length the bases for propounding these investigative requests upon AMP in his Opposition to the Petition to Set Aside the CID. Resp. in Opp. to Pet. to Set Aside CID, ECF No. 15-1.

AMP mistakenly contends that no court has ruled on the constitutional objections it raised in its Petition to Set Aside. Compl. ¶ 52. At a hearing on July 16, 2024, AMP presented arguments regarding the constitutionality of the CID, including the application of *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595 (2021). Tr. of July 16, 2024 Hr'g 16:19–21:6, 24:6–25:12; 29:12–31:25; *see* Compl. ¶¶ 35–36. The Circuit Court questioned AMP's counsel regarding its argument that the CID's request for the donor information violated the First Amendment and was contrary to *Bonta*. Tr. of July 16, 2024 Hr'g 29:12–31:25. AMP's counsel also argued its objections to the scope of the CID, which the Circuit Court acknowledged. *Id.* at 209:1–19.

The Circuit Court, after taking a recess to collect its thoughts, denied AMP's Petition to Set Aside the CID, observing that the "Attorney General was entirely within its statutory authority because AMP had directly admitted it did not register properly prior to soliciting donations." Tr. of July 16, 2024 Hr'g 34:3–20, 35:23–36:13; *see* Compl. ¶¶ 35–36. The Court found "[t]hat in itself . . . provided reasonable cause for legitimate concerns" regarding whether "funds [were] being used for their stated purpose" pursuant to the VSOC law. Tr. of July 16, 2024 Hr'g 36:3–7. "Upon mature consideration of the pleadings and oral arguments of the parties," the Circuit Court subsequently entered an order on July 30, 2024 ("July 30, 2024 Order") consistent with and memorializing its July 16, 2024 oral ruling. July 30, 2024 Order, ECF No. 1-3. In that order, the Circuit Court held that AMP's admitted violations of the VSOC law gave the Attorney General "*per se* reasonable cause for legitimate concerns as to whether funds were being used for their stated purpose, pursuant to Code §§ 57-59 and 59.1-9.10." *Id.* The Court further found "that the Attorney General acted in good faith and reasonably in accordance with the statutory requirement and [had] not exceeded its authority" and denied in toto AMP's Petition to Set Aside the CID. *Id.*

While AMP contends that the Circuit Court should have "substantively addressed or ruled on the Constitutional objections" in more detail, there is no requirement in Virginia law for it to do so. *See* Compl. ¶¶ 38, 52. "[Virginia trial] courts are not required to 'state for the record the reasons underlying their decisions,' or include 'findings of fact and conclusions of law' in a final order." *Cedeno v. For Every Body, LLC*, No. 1842-22-4, 2024 Va. App. LEXIS 227, at *33 (April 23, 2024) (first quoting *Shannon v. Commonwealth*, 289 Va. 203, 206 (2015) and then quoting *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982)). "[U]nless directed otherwise by statute, a trial court is presumed to have properly considered all relevant, significant factors in making its ruling without having to explicitly address each factor or piece of evidence." *Id.* Neither the VSOC

law nor any other statute required the Circuit Court to address each argument made by AMP in its Petition to Set Aside the CID when rejecting those arguments. *See* Va. Code §§ 57-59(C); 59.1-9.10(F); *Cedeno*, 2024 Va. App. LEXIS 227, at *34 (explaining "the circuit court's rulings in favor of [appellee] demonstrate implicit rejection of appellant's arguments after due consideration"). In short, as a matter of Virginia law, the Circuit Court ruled on AMP's constitutional arguments.

AMP appealed the Circuit Court's July 30, 2024 Order to the Court of Appeals of Virginia. *See* Compl. ¶ 39. Oral argument was held on July 15, 2025, where the Court of Appeals questioned the parties regarding AMP's constitutional objections to the CID. Mem. 7 n. 3, ECF No. 9-1.

## III.    The Attorney General enforced the CID in the Circuit Court, and the Circuit Court found AMP in contempt and imposed sanctions

On January 14, 2025, the Attorney General filed a Petition to enforce the CID in the Circuit Court ("Petition to Enforce"). Compl. ¶ 7; Pet. to Enforce CID, ECF No. 15-6. After denying AMP's Plea in Bar, the Court granted the Petition and subsequently entered an order on June 13, 2025 ("June 13, 2025 Order") directing AMP to comply with the CID within 14 days of the order. May 9, 2025 Op., ECF No. 15-7; June 13, 2025 Order, ECF No. 15-8. AMP never appealed the June 13, 2025 Order, which was a final order. *See* Pet. to Enforce Docket, attached as Ex. 2.

After the Attorney General's efforts to contact AMP regarding its non-compliance with the Order went unanswered, the Circuit Court entered a Rule to Show Cause that directed AMP to appear on September 29, 2025 to show cause why it should not be held in contempt for violating the June 13, 2025 Order. Compl. ¶ 50; ECF No. 1-4 at 4–9, 15–16. On September 29, 2025, the parties appeared in the Circuit Court on the Rule to Show Cause. Compl. ¶ 51; Sept. 29, 2025 Order, ECF No. 15-10. The Circuit Court found AMP in contempt, imposed sanctions, and ordered it to comply with the CID by no later than October 3, 2025. Sept. 29, 2025 Order.

IV.    **AMP files suit in federal court seeking to prevent the Attorney General from enforcing the CID and the state court judgments**

On September 26, 2025, AMP filed the Complaint in this matter against the Attorney General in his official capacity seeking prospective declaratory and injunctive relief in an attempt to avoid compliance with the CID and the order of the Circuit Court. Compl. 1, 14–15.[3] The Complaint is entirely based on the CID and the state court proceedings described in Sections II through III above. *Id.* ¶¶ 12–98. As relief, AMP seeks declarations that the Attorney General violated the First and Fourth Amendments to the U.S. Constitution and 42 U.S.C. § 1983. *Id.* at 14. AMP seeks a preliminary injunction to prevent the Attorney General from enforcing the CID until any court rules on the constitutionality of the scope of the CID. *Id.* at 15. AMP seeks to permanently enjoin the Attorney General from enforcing the CID. *Id.*

On October 3, 2025, this Court granted AMP's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction. ECF No. 19.

## <u>LEGAL STANDARD</u>

I.    **Rule 12(b)(1)**

"Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss an action for lack of subject matter jurisdiction." *Allen v. College of William & Mary*, 245 F. Supp. 2d 777, 782 (E.D. Va. 2003). "A defendant moving for dismissal for lack of subject matter jurisdiction may either attack the complaint on its face, asserting that the complaint 'fails to allege facts upon which subject matter jurisdiction can be based,' or, may attack 'the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Jackson v. Blessing*, No. 3:21cv772, 2022 U.S. Dist.

---

[3] The Attorney General understands AMP's request for injunctive relief to be prospective only. *See* ECF No. 25 at 24–25. To the extent that AMP attempts to seek relief from conduct that occurred in the past, sovereign immunity would operate as a bar. *Id.*

LEXIS 105733, at *7 (E.D. Va. June 13, 2022) (quoting *White v. CMA Const. Co., Inc.*, 947 F. Supp. 231, 233 (E.D. Va. 1996)). "A plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Erdem v. United States*, No. 1:20-cv-00506, 2020 U.S. Dist. LEXIS 261488, at *5 (E.D. Va. Aug. 24, 2020) (citation omitted).

Motions to dismiss based on the *Younger* abstention doctrine, *Younger v. Harris*, 401 U.S. 37 (1971), tend to be analyzed under Rule 12(b)(1), especially when called for on the face of the complaint. *Briggman v. Martin*, No. 5:21-cv-00074, 2022 U.S. Dist. LEXIS 73845, at *2 (W.D. Va. Apr. 22, 2022). Motions to dismiss relying on the *Rooker-Feldman* doctrine are properly brought pursuant to Rule 12(b)(1). *E.g.*, *Dudley v. Rockbridge DSS*, No. 6:22-cv-00069, 2023 U.S. Dist. LEXIS 27672, at *7 (W.D. Va. Feb. 17, 2023).

## II.    Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has stated a claim. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To sufficiently plead a claim, the Federal Rules of Civil Procedure require that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." FED. R. CIV. P. 8(a). "Each allegation must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1). When deciding a motion to dismiss under Rule 12(b)(6), courts consider both the complaint and any documents attached to that pleading. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

This pleading standard does not require detailed factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice to meet the Rule 8 pleading

7

standard. *Id.* A plaintiff is required to state facts sufficient to "raise a right to relief above the speculative level," alleging a claim that is plausible rather than merely "conceivable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Court need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (citations and quotation marks omitted).

## ARGUMENT

AMP's constitutional claims seeking to permanently enjoin the Attorney General from enforcing the CID are barred by *Younger* abstention, res judicata (claim and issue preclusion), and the *Rooker-Feldman* doctrine. Alternatively, if this Court does not dismiss this matter outright, it should stay further proceedings in this action pending a final resolution of AMP's appeal of the denial of its Petition to Set Aside the CID pursuant to the *Colorado River* abstention doctrine.

In addition, AMP's constitutional claims all fail to state a claim. The CID does not violate AMP's constitutional rights because there is a substantial relationship between the CID's requests for information and the Attorney General's interest in enforcing the VSOC law, and the CID is narrowly tailored to further that interest. Accordingly, AMP's claims should be dismissed.

### I.    Rule 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction

#### a.    The *Younger* abstention doctrine bars AMP's action to enjoin the Circuit Court's contempt proceedings

The Circuit Court's civil contempt proceeding that this Court has stayed falls squarely within a category of case that can "trigger *Younger* abstention." *Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69, 79 (2013). The Supreme Court has affirmed that *Younger* abstention precludes federal courts from interfering with "pending 'civil proceedings involving certain orders . . . uniquely in

8

furtherance of the state court's ability to perform their judicial functions.'" *Id. at* 78 (quoting *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)).

The Supreme Court first recognized this category of case in *Juidice v. Vail*, which involved a federal lawsuit challenging the constitutionality of a state court's civil contempt proceedings. 430 U.S. 327, 332, 336 (1977); *see Sprint Communs., Inc.,* 571 U.S. at 78; *Jonathan R. v. Justice*, 41 F.4th 316, 330 (4th Cir. 2022). In *Juidice*, the plaintiffs sued state court judges who had issued orders requiring them to appear and show cause why they should not be punished for contempt for failing to appear at depositions relating to unpaid judgments. 430 U.S. at 328–30. The plaintiffs sought to enjoin the judges from enforcing state statutory contempt procedures due to their alleged unconstitutionality. *Id.* at 330. While the plaintiffs could have raised the constitutional challenges in state court proceedings, they did not. *Id.* The district court enjoined the judges from enforcing the state court contempt procedures, and the Supreme Court reversed "for the reasons of federalism and comity enunciated in [*Younger v. Harris*, 401 US 37 (1971),] and [*Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975)]." *Id.* at 331, 338–39.

To invoke *Younger* abstention, parties must have "an *opportunity* to present their federal claims in the state proceedings." *Id.* at 337. In *Juidice*, it was clear that the plaintiffs had the opportunity to present their federal claims but "fail[ed] to avail themselves of such opportunities," which did "not mean that the state procedures were inadequate." *Id.* In recognizing that a state's interest in the contempt process is "of sufficiently great import" to require *Younger* abstention, the Supreme Court observed that "the contempt power lies at the core of the administration of a State's judicial system." *Juidice,* 430 U.S. at 335. "[F]ederal-court interference with the State's contempt process is 'an offense to the State's interest . . . likely to be every bit as great as it would be were [it] a criminal proceeding." *Id.* at 336 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)).

AMP's civil action fits into the category of cases recognized in *Juidice*. It is an action brought *after* the Circuit Court had issued a rule to show cause in relation to AMP failing to obey the Court's June 13, 2025 Order. Compl. ¶¶ 46, 51; ECF No. 1-4 at 15–16; June 13, 2025 Order. AMP only filed its Emergency Motion for a TRO and Preliminary Injunction *after* the Circuit Court found AMP in civil contempt of its June 13, 2025 Order and imposed sanctions. *See* ECF No. 9; Sept. 29, 2025 Order. Accordingly, this action fits the category of cases where there are "civil proceedings involving certain orders . . . uniquely in furtherance of the state court's ability to perform their judicial functions.'" *Sprint Communs., Inc.*, 571 U.S. *at* 78 (citation omitted); *see Smith & Wesson Brands, Inc. v. AG*, 27 F.4th 886, 894–96 (3d Cir. 2022) (holding that this *Younger* category did not apply because Smith & Wesson was never cited for contempt unlike the plaintiffs in *Juidice* who had already violated court orders). Furthermore, Virginia law specifically provided AMP with the opportunity to raise its constitutional challenges in state court, which it did. Va. Code § 59.1-9.10(F); Pet. to Set Aside the CID; *see*, *e.g.*, Tr. of July 16, 2024 Hr'g 16:19–21:6, 24:6–25:12; 29:12–31:25. Accordingly, *Younger* is properly invoked in these circumstances where the state court proceedings had arrived at the point of enforcement of a state court's order through contempt proceedings *before* AMP's federal action was filed.

When a case falls within one of the categories that can trigger *Younger* abstention, federal courts next consider the three *Middlesex* factors. S*ee Sprint*, 571 U.S. at 81; *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 96 (4th Cir. 2022). The three *Middlesex* factors are: (1) whether there is "an ongoing state judicial proceeding"; (2) whether that state proceeding "implicate[s] important state interests"; and (3) whether that state proceeding provides "an adequate opportunity . . . to raise constitutional challenges." *Middlesex Cnty. Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432, (1982); *see Sprint*, 571 U.S. at 81; *Air Evac EMS, Inc.*, 37 F.4th at 96.

When a case is of the category than can trigger *Younger* abstention and the *Middlesex* factors are met, the Supreme Court has recognized three limited exceptions to the court's duty to abstain: (1) "bad faith or harassment" by state officials responsible for the prosecution; (2) a statute that is "flagrantly and patently violative of express constitutional prohibitions"; and (3) other "extraordinary circumstances" or "unusual situations." *See Younger*, 401 U.S. at 49–54; *see Air Evac EMS, Inc.*, 37 F.4th at 96.

All three of the *Middlesex* factors are met here. First, the Attorney General filed the Petition to Enforce in January 2025. Compl. ¶¶ 32, 44. On September 29, 2025, the Circuit Court held AMP in contempt for not complying with its June 13, 2025 Order directing compliance with the CID. *See* Sept. 29, 2025 Order. The Circuit Court's supervision of the enforcement of its June 13, 2025 Order is ongoing—the Circuit Court set a status hearing regarding compliance with its September 29, 2025 Order on October 28, 2025. *Id.* Second, contempt proceedings to enforce state court orders are an important state interest. *Juidice*, 430 U.S. at 336; *Dacha v. Landry*, No. 3:25-CV-516 (RCY), 2025 LX 230681, at *10-11 (E.D. Va. July 18, 2025). Third, as discussed above, AMP had the opportunity to raise its constitutional concerns in the state court proceedings and has done so. Pet. to Set Aside CID 4–12; Va. Code § 59.1-9.10(F). State court judges are fully competent to handle constitutional issues subject to review by the Supreme Court of the United States. *Charnock v. Virginia*, No. 2:16-cv-493, 2017 U.S. Dist. LEXIS 172629, at *8 (E.D. Va. Jan. 4, 2017) (citing *Bonner v. Cir. Ct. of St. Louis*, 526 F.2d 1331, 1336 (8th Cir. 1975)). "The right to present a constitutional issue in the state forum, within the meaning of *Younger*, does not equate with an assurance that those issues will be fully addressed or rightly decided. Rather, it means that there is a right to a fair hearing on the issues." *Colonial First Props. v. Henrico Cnty.*, 236 F. Supp. 2d 588, 597 (E.D. Va. 2002). As the state court proceedings, and any appeals, will provide—and have

11

provided—an opportunity for a fair hearing on AMP's constitutional arguments, the third *Middlesex* factor is also met.

Furthermore, none of the exceptions to a district court's duty to abstain apply. First, there is no evidence of bad faith or harassment by the Attorney General or the judges of the Circuit Court regarding the enforcement action or otherwise. Indeed, the Circuit Court found that the Attorney General acted in "good faith" regarding the issuance of the CID. July 30, 2024 Order. The Attorney General had good cause to investigate AMP, which raised $10 million from 2016 through 2023 when it was in violation of the VSOC law. ECF No. 15-1 at 5; ECF No. 15-6 at 2–3, 34–35. Second, this is not a case where the Attorney General or the Circuit Court's actions are "flagrantly and patently violative of express constitutional prohibitions." *Air Evac EMS, Inc.*, 37 F.4th at 96. Rather than seeking materials that potentially implicate the First Amendment indiscriminately, the Attorney General identified good cause for issuing the CID and limited the scope of the CID to the period that AMP was admittedly in violation of the VSOC law. Resp. in Opp. to Pet. to Set Aside CID; ECF No. 15-1 at 36. Finally, this case does not present any extraordinary circumstances. There is nothing extraordinary about a party being held in contempt for disobeying an express order of a court, which is what happed to AMP. Sept. 29, 2025 Order.

Because all the elements of the *Younger* abstention analysis are satisfied in this case, this Court should abstain from exercising jurisdiction over the Complaint.

### b. AMP's attempt to permanently enjoin the Attorney General from enforcing the CID is barred by issue and claim preclusion

The recipient of a CID is barred from relitigating in federal court a state-court challenge to the CID when there has been a final judgment. *See Smith & Wesson Brands, Inc. v. Atty. Gen. of N.J.*, 105 F.4th 67 (3d Cir. 2024); *Exxon Mobil Corp. v. Healey*, 28 F.4th 383 (2d Cir. 2022). AMP's federal action that seeks to permanently enjoin the Attorney General from enforcing the

CID, which has been pursued through the Petition to Enforce, is barred by issue and claim preclusion because the Circuit Court granted the Petition to Enforce, and it was not appealed.[4]

Federal courts give state court judgments the same preclusive effect the judgments would receive under state law. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481–82 (1982); *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008). This rule equally applies in the 42 U.S.C. § 1983 context to bar "relitigat[ion] [of] an issue already decided in state court." *Allen v. McCurry*, 449 U.S. 90, 101, 104 (1980).

Under Virginia law, issue preclusion bars a subsequent suit where "a particular point or question" is litigated by the same parties or their privies in the first action which would be "final and conclusive in the second" suit. *Storm v. Nationwide Mut. Ins. Co.*, 199 Va. 130, 134 (1957). The party seeking to assert issue preclusion must establish the following:

> (1) the parties [or their privies] to the two proceedings must be the same, (2) the issue of fact sought to be litigated must have been actually litigated in the prior proceeding, (3) the issue of fact must have been essential to the prior judgment, and (4) the prior proceeding must have resulted in a valid, final judgment against the party against whom the doctrine is sought to be applied.

*Lane v. Bayview Loan Servicing, LLC*, 297 Va. 645, 654 (2019) (citation omitted)).

The related doctrine of claim preclusion bars a subsequent suit "on any claim or cause of action that arises from that same conduct, transaction or occurrence" as the first suit. *Lane*, 297 Va. at 654 (quoting Va. Sup. Ct. R. 1:6). This rule applies even if "the second suit includes alternative legal theories or would require evidence not present in the first suit." *Funny Guy, LLC v. Lecego, LLC*, 293 Va. 135, 150 (2017). The elements of claim preclusion in Virginia are: "(1) a

---

[4] In addition, once the appeal of the denial of the Petition to Set Aside the CID has been decided by the Court of Appeals of Virginia and all appellate rights have expired, there will be a final judgment, and issue and claim preclusion for that case will then provide an additional bar to AMP's claims. *See Smith & Wesson Brands, Inc. v. AG of N.J.*, 105 F.4th 67, 73 (3d Cir. 2024); *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 403 (2d Cir. 2022).

final judgment on the merits, (2) the same parties (or their privies) in both proceedings, also expressed as identity of the parties, and (3) both causes of action arising out of the same conduct, transaction, or occurrence." *Id.* (citing Va. Sup. Ct. R. 1:6).

Issue preclusion and claim preclusion bar AMP's constitutional claims seeking to enjoin the Attorney General's enforcement of the CID. ECF No. 15-6. All the elements of issue preclusion are met here. The parties or their privies to the Petition to Enforce and this federal action are the same. *Compare* Pet. to Enforce CID 1 *with* Compl. 1. The issues of fact sought to be litigated in this action relating to the enforcement of the CID were litigated in the Petition to Enforce in the Circuit Court. *Compare* Pet. to Enforce 4–15 *with* Compl. ¶¶ 44, 46, 50–51, 54–98. Finally, the Petition to Enforce resulted in a final judgment against AMP. *See* June 13, 2025 Order.

The June 13, 2025 Order is a final order for purposes of res judicata because the time period for noting an appeal has expired and AMP did not file an appeal. *See* Va. Code § 8.01-675.3 (30-day deadline to appeal a final order); *Faison v. Hudson*, 243 Va. 413, 419 (1992); Pet. to Enforce Docket. The June 13, 2025 Order was an appealable final judgment because it "dispose[d] of the whole subject, g[ave] all the relief contemplated, provide[d] with reasonable completeness for giving effect to the sentence, and [left] nothing to be done in the cause save to superintend ministerially the execution of the order." *James v. James*, 263 Va. 474, 481 (2002). Indeed, the June 13, 2025 Order denied AMP's challenge to the Petition to Enforce, granted the Petition, ordered compliance with the CID, and did not set out any further proceedings. June 13, 2025 Order. The subsequent proceedings in the Circuit Court on the Petition to Enforce, including the entry of the September 29, 2025 Order, deal with the execution of the June 13, 2025 Order and did not extend the time to appeal that judgment. *See James*, 263 Va. at 481, 483–84; Va. Sup. Ct. R. 1:1(b).

Accordingly, AMP's claims, which all seek to bar the Attorney General from enforcing the CID through the Petition to Enforce, are barred by issue preclusion.

The three elements of claim preclusion are also met here, which provides an additional bar to the Complaint. *Funny Guy, LLC*, 293 Va. at 150. The June 13, 2025 Order was a final judgment on the merits of the Petition to Enforce, which AMP failed to appeal. June 13, 2025 Order. The parties or their privies were the same in both proceedings. *Compare* Pet. to Enforce 1 *with* Compl. 1. And it is indisputable that both the Petition to Enforce and the Complaint in this matter arose out of the same conduct, transaction, or occurrence, namely the Attorney General's issuance of the CID to AMP. *Compare* Pet. to Enforce 2–4 *with* Compl. 1–6. Accordingly, claim preclusion applies to bar AMP's request to permanently enjoin the Attorney General from enforcing the CID through the Petition to Enforce.

### c. The *Rooker-Feldman* doctrine bars AMP's claims seeking to enjoin the enforcement of the CID

Plaintiffs cannot use constitutional claims to relitigate issues already decided by Virginia state courts. The *Rooker-Feldman* doctrine recognizes that federal district courts have no jurisdiction to hear what is essentially an appeal of a state court judgment. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). "A litigant may not circumvent" the principles of federalism, in which the Supreme Court of the United States is the only federal court vested with the authority to review the constitutionality of state court judgments "by instituting a federal action which, although not styled as an appeal, amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court." *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003) (alteration in the original; internal quotation omitted). To determine whether *Rooker-Feldman* deprives a federal court of jurisdiction, the analysis turns on "whether a party seeks the federal district court to review a state court decision and thus pass upon

the merits of that state court decision." *Id.* (quoting *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997), *cert. denied*, 522 U.S. 1077 (1998)). The "doctrine applies not just to constitutional claims presented or adjudicated by the state courts but also to claims that are inextricably intertwined with a state court judgment." *Marshall v. Marshall*, 523 F. Supp. 3d 802, 831 (E.D. Va. 2021) (quoting *Jordahl*, 122 F.3d at 199) (internal quotations omitted). *Rooker-Feldman* is limited to a narrow set of cases where the "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment." *Exxon Mobil Corp.*, 544 U.S. at 291.

The doctrine applies here because AMP lost in the Petition to Enforce matter when the Circuit Court granted the Petition and entered a final judgment on June 13, 2025. June 13, 2025 Order. Had it wished to do so, AMP could have raised the constitutional issues it raises in this action in response to the Petition to Enforce and, subsequently, in a direct appeal to the Court of Appeals of Virginia. *See* Va. Code § 8.01-675.3. However, AMP did not appeal the June 13, 2025 Order within the statutory period. *See* Pet. to Enforce Docket. Accordingly, the state proceedings ended even though the Circuit Court continued to administer the execution of the June 13, 2025 Order. *See James*, 263 Va. at 481, 483-84; Va. Sup. Ct. R. 1:1(b).

In this action, AMP complains of injuries caused by the Petition to Enforce and seeks to enjoin the Attorney General from enforcing compliance with the CID. *See* Comp ¶¶ 44, 46, 51. This Court lacks jurisdiction over AMP's constitutional claims, which all seek to enjoin the Attorney General from enforcing the CID, because exercising jurisdiction would amount to a review of the Circuit Court's decision to grant the Petition to Enforce on June 13, 2025. "Under the *Rooker-Feldman* doctrine, a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court." *Am. Reliable*

*Ins. Co.*, 336 F.3d at 316 (citation and internal quotation omitted). As the substance of AMP's Complaint is a challenge of the June 13, 2025 Order, this Court is without jurisdiction. *See Chien v. Motz*, No. 3:18-cv-106, 2019 U.S. Dist. LEXIS 14541, at *15–17 (E.D. Va. Jan. 7, 2019) (recommending dismissal pursuant to the *Rooker-Feldman* doctrine of lawsuit where the plaintiff could have raised alleged constitutional violations on direct appeal).

In addition, because the Circuit Court rejected AMP's constitutional arguments when it denied its Petition to Set Aside the CID, this action is "nothing more than an attempt to seek review of [the state court's] decision by a lower federal court." *Am. Reliable Ins. Co.*, 336 F.3d at 316. In any event, once the Petition to Set Aside the CID is fully adjudicated in the state court system, the *Rooker-Feldman* doctrine would bar AMP from asking this Court to sit in judgment of the state court's resolution of that Petition. *See Exxon Mobil Corp.*, 544 U.S. at 291.

Therefore, AMP's claims seeking to permanently enjoin the enforcement of the CID are barred by the *Rooker-Feldman* doctrine and this Court is without jurisdiction.

### d. This Court should stay further adjudication of this matter pursuant to the *Colorado River* abstention doctrine

In light of the parties' parallel proceedings in Virginia state courts, if it does not dismiss this action outright, this Court should stay further proceedings in this matter until the Petition to Set Aside the CID "has been fully adjudicated through the Virginia state court system." ECF No. 19. Under the abstention doctrine delineated in *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976), there are instances where it is appropriate for a federal court to abstain from proceedings being litigated simultaneously in state court, including by staying further proceedings in the federal action. *See Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 206–07 (4th Cir. 2006); *Prop. Damage Specialists, Inc. v. Wells Fargo Bank, N.A.*, No. 5:18-cv-00069, 2018 U.S. Dist. LEXIS

181346, at *12–13 (W.D. Va. Oct. 23, 2018) (staying federal action pending resolution of parallel state court proceeding on appeal before the Supreme Court of Virginia).

"The threshold question in deciding whether *Colorado River* abstention is appropriate is whether there are parallel federal and state suits." *Great Am. Ins. Co.*, 468 F.3d at 207 (citing *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005)). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.* If there are parallel suits, courts then balance six factors: (1) whether the state court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) "the desirability of avoiding piecemeal litigation;" (4) the order in which jurisdiction was obtained by the concurrent forums and the progress of the litigation in each action; (5) whether state or federal law provides the rule of decision on the merits; (6) the adequacy of the state proceedings to protect the parties' rights. *Chase Brexton Health Servs., Inc.*, 411 F.3d at 463–64.

With respect to the threshold condition, there are parallel state and federal suits, namely the Petition to Set Aside the CID and the ancillary contempt proceeding in the Petition to Enforce and this federal action. The parties are the same in the state court proceedings as in this action. The core issue in both the state and federal cases is the validity and enforceability of the Attorney General's CID under Virginia law and the U.S. Constitution. Those questions are already before the Court of Appeals of Virginia in the appeal of the denial of the Petition to Set Aside the CID. Because the federal and state cases involve the same parties, and both turn on the same operative questions, the proceedings are substantially "parallel," satisfying the threshold requirement.

Next, courts look at the six factors "holistically" and carefully balance them. *See vonRosenburg v. Lawrence*, 849 F.3d 163, 168 (4th Cir. 2017). Here the balance of the factors favor abstention. First, this litigation does not involve property over which the Court may assume in rem

jurisdiction, which makes this a neutral factor. Second, the federal court is not an inconvenient forum as the parties are all located in the Eastern District of Virginia, which makes this a neutral factor. Third, proceeding in both forums risks conflicting rulings on the same CID, including inconsistent determinations of the Attorney General's statutory authority and the constitutionality of the CID. There is a threat of piecemeal litigation "when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Gannett Co. v. Clark Constr. Grp., Inc.*, 286 F.3d 737, 744 (4th Cir. 2002) (quotation omitted). Accordingly, this factor favors abstention.

For the fourth factor, the Circuit Court first exercised jurisdiction over the CID in November 2023, when AMP filed its Petition to Set Aside. Since then, the matter has proceeded through a fully developed record, a merits ruling, and an ongoing appeal before the Court of Appeals of Virginia that has been briefed and argued. This federal action was not filed until September 2025, nearly two years later. *See Gannett Co.*, 286 F.3d at 743 (explaining that the priority factor from *Colorado River* turns not merely on which suit was filed first but "how much progress has been made in the two actions"). The state litigation is substantially further along, and this factor favors abstention.

Regarding the fifth factor, state law governs a significant portion of this dispute. The CID was issued pursuant to Virginia statutes governing charitable solicitation and investigatory powers and AMP chose to challenge the CID through a mechanism provided by state law. *See* ECF No. 15-1 at 34-35. Although AMP raises federal constitutional objections to the CID, the underlying cause of action and enforcement mechanism arise entirely under Virginia law, weighing further in favor of *Colorado River* abstention. Finally, the Virginia judiciary is fully competent to adjudicate all of AMP's constitutional claims. *Charnock*, 2017 U.S. Dist. LEXIS 172629, at *8. Indeed,

Virginia law specifically provided for the Circuit Court to hear any constitutional objections that AMP had to the CID. Va. Code § 59.1-9.10(F).

Furthermore, this Court already tied the duration of its preliminary injunction of the Attorney General to full adjudication of the parties' dispute through the state court system, which weighs in favor of this Court staying further proceedings in this action. ECF No. 19. AMP's alleged rights will be protected by this Court's October 3, 2025 Order, and the parties and the courts will avoid the inefficiency and duplication of effort that comes from parallel proceedings.

Accordingly, if it is not dismissing this action, this Court should stay further proceedings in this action until the Petition to Set Aside the CID "has been fully adjudicated through the Virginia state court system."

## II.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted

### a.    The Attorney General's investigation is lawful, and the CID is narrowly tailored to obtain information relevant to the investigation

In Counts I, II, and V, AMP alleges that the Attorney General exceeded his statutory authority by issuing the CID and violated the U.S. Constitution by seeking information irrelevant to the investigation. Compl. ¶¶ 62, 72, 74, 94. That is incorrect. The Attorney General has broad authority to investigate violations of the VSOC law. And he had reasonable cause to issue the CID making it a permissible exercise of that authority. Moreover, the CID complies with each of the statutory requirements for CIDs and seeks information relevant to the investigation.

The VSOC law, in addition to requiring that most charitable organizations register with the Commissioner before soliciting contributions within the Commonwealth, also prohibits persons from engaging in certain practices in connection with a charitable solicitation. *See* Va. Code § 57-57. Those prohibited practices include making misrepresentations in connection with charitable

solicitations, using solicited funds for purposes other than the solicited purpose, and using solicited funds to benefit or provide support to terrorists, terrorist organizations, and their family members. Va. Code § 57-57(L), (N), and (R).

Section 57-59(C) of the VSOC law empowers the Attorney General to issue a CID whenever he "has reasonable cause to believe that any person has operated, is operating or is about to operate in violation of [the VSOC law]." Va. Code § 57-59(C). There are no words of limitation in the statute empowering the Attorney General to investigate charitable solicitation matters, and accordingly his authority to investigate violations of the statute is broad and extends beyond a charitable organization's failure to properly register with the Commissioner before soliciting contributions in the Commonwealth. The CID, therefore, is a proper exercise of the Attorney General's authority to investigate not only AMP's failure to register before soliciting contributions, but also the discrepancies noted in AMP's forms 990, as well as the public allegations regarding the organization's use of solicited funds. *See* Resp. in Opp. to Pet. to Set Aside 6–12.

The VSOC law gives the Attorney General authority to issue a CID upon reasonable cause. Va. Code § 57-59(C). "The 'reasonable cause' standard requires less than the probable cause standard and does not require a showing that a violation has in fact occurred." *Paramount Builders, Inc. v. Commonwealth*, 260 Va. 22, 28 (2000). "'[R]easonable cause' does not require an actual belief that violations of the Act have in fact occurred." *In re American Dollar Exch., Inc.*, 27 Va. Cir. 428, 429 (Campbell Cnty. Cir. Ct. 1992). Accordingly, the bar that the Attorney General must clear to open an investigation and issue a CID is low.

As the circuit court properly concluded, AMP's *admission* that it violated the statute for years already satisfies the "reasonable cause" standard set forth by Virginia Code § 57-59(C) of the VSOC law. And even independent of its admission, the additional areas of concern cited by

the Attorney General (*e.g.*, the discrepancies in AMP's Forms 990 and the allegations of the use and source of funds) likewise would sufficiently satisfy the reasonable cause standard.

Moreover, the Attorney General narrowly tailored the temporal scope of the entire CID to the period from November 29, 2016 to October 27, 2023, a period which corresponds to when AMP moved its headquarters to Virginia and then operated in violation of the VSOC law and raised more than $10 million. *See* ECF No. 15-1 at 5, 35–36; ECF No. 15-6 at 2–3; ECF No. 25 at 30.

Furthermore, the information requested in the CID is material to the Attorney General's investigation. As an initial matter, under his authority to issue CIDs, the Attorney General may demand from AMP information "that *he deems* relevant or material to the inquiry." Va. Code § 59.1-9.10(B) (emphasis added); *see also* Va. Code § 59.1-9.10(A). And beyond this statutory allowance, the requests in the CID all seek relevant and material information—and certainly information that he deems to be relevant or material—to his investigation as follows:

Requests for Production Nos. 1–4 seek information regarding AMP's organizational structure. ECF No. 15-1 at 38–39. Request for Production No. 5 seeks information about individuals employed by AMP. *Id.* at 39. It would provide the Attorney General with additional potential witnesses that could be interviewed or deposed regarding AMP's business practices.

Requests for Production Nos. 6–12 and Interrogatory No. 6 seek information relating to AMP's solicitation activities while not registered and contributions received, financial condition, and expenditures of funds. *Id.* at 39–40, 44. Responses to these requests would corroborate or disprove the financial figures reported in AMP's public Forms 990.

Requests for Production Nos. 13–15 seek information regarding AMP's hiring of professional solicitors to solicit contributions on behalf of AMP, which AMP reports as

expenditures on its 2019 and 2020 Forms 990. *Id.* at 40–41. Responses to these requests would reveal information regarding AMP's solicitation activities while not registered, what representations are being made to prospective donors, and they also would lead to information that either corroborates or disproves what the organization is reporting on its Forms 990.

Request for Production No. 16 seeks information on funds AMP received by solicitation in each year at issue. *Id.* at 41. The information sought by this request would provide detail on the source of those funds and establish whether those funds were expended for a permissible purpose.

Requests for Production Nos. 17–20 and Interrogatory No. 8 seek solicitation materials which would shed light on AMP's solicitation activities while not being registered and how AMP is representing that donated funds would be spent. *Id.* at 41–42, 45.

Requests for Production Nos. 22–30 seek information relating to expenditures of funds reported on AMP's Forms 990, which would either corroborate or disprove the amounts reported, including how solicited funds are being used. *Id.* at 42–43. Request for Production No. 31 seeks information about AMP's records retention policies, speaking to AMP's compliance with Virginia Code § 57-53, which requires that charitable organizations keep true fiscal records for three years after the period of registration to which they relate. *Id.* at 43.

Interrogatory No. 1 is a virtual recitation of a statement that all charitable organizations are statutorily required to make in their registration statements, which AMP admitted to not having properly filed. *Id.* at 44. Namely, all registrants are required to certify that raised funds have not, and will not, be used to support terrorists, terrorist organizations, or family members of terrorists. Va. Code § 57-49(A1).

Interrogatory No. 2 asks about AMP's registration with the Commissioner, which it is required to do before soliciting contributions in the Commonwealth. *Id.*

Interrogatories Nos. 3 and 4 ask AMP to clarify its relationship with apparently affiliated organizations. *Id.* Information responsive to this request would provide the Attorney General with information about the relationship between AMP and related organizations that either appear to be alter egos of AMP, or that appear to be soliciting contributions in conjunction with AMP.

Interrogatory No. 5 asks that AMP explain its purpose for raising charitable contributions. *Id.* This would be one of many facts that the Attorney General would examine to determine the purpose for which the organization is soliciting contributions. *See* Va. Code § 57-57(N).

Interrogatory No. 7 seeks information regarding AMP's expenditures of funds. *Id.* This would inform the Attorney General whether AMP is expending solicited funds in a manner consistent with the purpose for which it is soliciting them. *See* Va. Code § 57-57(L) and (N).

Interrogatory No. 8 seeks AMP's charitable solicitation materials, which would provide the Attorney General with information on AMP's charitable solicitation activities while it was unregistered, and what representations are made to prospective donors. *Id.* at 45.

Interrogatory No. 9 seeks an explanation of expenses on AMP's 2018 Forms 990 that were not itemized or disclosed. *Id.* Interrogatories Nos. 10 and 11 seek information about other governmental investigations into and legal actions against AMP, which may lead to information concerning claims the Attorney General may bring. *Id.* Interrogatory No. 12 is a standard interrogatory that seeks information about individuals involved in answering the interrogatories so they can potentially be interviewed or deposed by the Attorney General regarding AMP's responses. *Id.*

Each of these requests is plainly "relevant or material" to the Attorney General's investigation and are unrelated to suppressing AMP's speech. Va. Code § 59.1-9.10(B).

**b. Count I should be dismissed because the Attorney General has a significant interest in enforcing the VSOC law and the CID is narrowly tailored to further that interest**

In Count I, AMP alleges that the CID violates its right to free speech under the First Amendment because it impermissibly chills its freedom of speech and it is not narrowly tailored to the Attorney General's interest in enforcing the VSOC law. Compl. ¶¶ 59–63. A plaintiff claiming a chilling of its speech under the First Amendment "bears the initial burden of proving that speech was restricted by the governmental action in question." *Reynolds v. Middleton*, 779 F.3d 222, 226 (4th Cir. 2015) (quoting *Lim v. City of Long Beach*, 217 F.3d 1050, 1054 n.4 (9th Cir. 2000)). If the plaintiff meets that burden, the burden then shifts to the government "to prove the constitutionality of the speech restriction." *Reynolds*, 779 F.3d at 226.

AMP has failed to meet that burden by alleging facts that would demonstrate the CID has actually chilled its speech. Indeed, the Complaint does not allege its speech regarding Palestine has been chilled or suppressed by the CID. *See* Compl. ¶¶ 54–64. But even if it had, the Attorney General has provided sufficient justification that the CID was properly issued, the scope of the CID was tailored to the purpose of the investigation, and the Attorney General has a compelling interest in the information sought by the CID. *See* Argument II. a., *supra*; Resp. in Opp. to Pet. to Set Aside. Accordingly, AMP has failed to state a claim and Count I should be dismissed.

**c. Count II should be dismissed because there is a substantial relationship between the request for donor information and the Attorney General's interest in enforcing the VSOC law and the CID is narrowly tailored to that interest**

In Count II, AMP alleges that the Attorney General's CID violates the First Amendment because it seeks "lists of donors, employees, collaborators, and other associated with AMP." Compl. ¶69. Courts apply "exacting scrutiny" to First Amendment challenges to a government compelling disclosure of information. *Am. for Prosperity Found. v. Bonta,* 594 U.S. 595, 607

(2021). Exacting scrutiny requires the government to demonstrate that there is a "substantial relation between the disclosure requirement and a sufficiently important governmental interest." *Id.* The government's demand for disclosure must be narrowly tailored to achieve its' goal. *Id.* at 608; *see McCutcheon v. FEC*, 572 U.S. 185, 218 (2014).

As discussed above in II. a., the CID is narrowly tailored to the Attorney General's investigation into AMP and it furthers his important government interest in enforcing the VSOC law and investigating wrongdoing by charitable organizations that solicit donations in Virginia.

As support for its position that the CID cannot reach this type of information, AMP has primarily relied upon *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595 (2021). *See* ECF No. 1-2 at 3; ECF No. 9-1 at 7. But *Bonta* disproves its point. That case sanctioned the use of investigative tools, such as subpoenas, to obtain donor information in the context of targeted investigations. In contrast to such investigations, *Bonta* concerned a California charities registration statute that required *all* charitable organizations to submit their Forms 990 and all attachments to the California Attorney General's Office before they solicited charitable contributions in the state. *Bonta*, 594 U.S. at 602. The heart of that dispute was over Schedule B to the Form 990, which requires that charities list all donors who have contributed more than $5,000 in a particular tax year. *Id.* (citing 26 C.F.R. §§ 1.6033-2(a)(2)(ii)(f), (iii) (2020)). It was this blanket requirement to provide donor lists that presented a First Amendment concern.

In applying exacting scrutiny to the California regulation, the United States Supreme Court struck down the statute that required blanket disclosure of donor lists in connection with charitable registrations. In doing so, the Court observed that: "[i]t goes without saying that there is a 'substantial interest[] in protecting the public from fraud.'" *Bonta*, 594 U.S. at 612 (quoting *Schaumburg v. Citizens for Better Environment*, 444 U.S. 620, 636 (1980)). The *Bonta* Court,

however, noted that there was a "dramatic mismatch" between the California Attorney General's interest in preventing fraud and California's broad disclosure requirements, which would have required more than 60,000 charities to submit Schedule B information, especially as there was no evidence that the California Attorney General ever used that information to initiate a fraud investigation. *Id.* at 612–13. "In reality, then, California's interest is less in investigating fraud and more in ease of administration . . . . This cannot justify the disclosure requirement." *Id*. at 614.

The import of *Bonta* as it pertains to this case is clear: while a statute that requires broad and indiscriminate disclosure of donors by all charities for administrative ease is impermissible, compelled disclosure of that information can be required if, like here, it is pertinent to an individual investigation. *Bonta*, 594 U.S. at 612–615. Indeed, in *Bonta*, the Court noted that the state retained "multiple alternative mechanisms through which the Attorney General can obtain Schedule B information"—*i.e.* donor information—"after initiating an investigation." *Id.* at 614. The Attorney General's CID here falls neatly within the realm of one of those "alternative mechanisms." *Id.* at 613–14 (identifying "a subpoena or audit letter" as alternatives); *see also District of Columbia v. Meta Platforms, Inc.*, No. 2021 CA 004450 2, 2022 D.C. Super. LEXIS 2, *28–29 (D.C. 2022) ("The Supreme Court emphasized that subpoenas provided an alternative to [the] blanket disclosure requirement when the attorney general needs information about misconduct relating to charitable solicitations and donations . . . .").

Furthermore, the donor information and the other information in question are relevant to the investigation at hand. *See* Resp. in Opp. to Pet. to Set Aside CID 6–9; Argument II. a., *supra*. The investigation is looking into whether donated funds were used for other than the solicited purpose and whether misrepresentations were made in connection with charitable solicitations concerning the use of donated funds. ECF No. 15-1 at 34–35.

Donor information would provide critical and pertinent information on at least four separate grounds: (1) it would tend to corroborate or disprove amounts reported on the organization's Form 990; (2) it would allow the Attorney General to ascertain donor victims and witnesses to whom he may inquire about what representations may have been made incident to charitable solicitations; (3) it would demonstrate organizational motive; and (4) it would show the number of violations of the state's registration statute from 2016 through 2023 and, if AMP made misrepresentations in connection with charitable solicitations, the number of such violations. The donor information thus is directly relevant.

For these reasons, AMP has failed to state a claim that the Attorney General violated its freedom of association when the CID requested donor and other information as part of its targeted investigation. In any event, only a limited portion of the CID concerns such information, and this claim cannot support a challenge to the CID in its entirety.

### d.  Count III should be dismissed because the Attorney General issued the CID for reasons separate from AMP's speech

In Count III, AMP alleges that the Attorney General violated the First Amendment by allegedly retaliating against AMP for engaging in speech about Palestine by issuing the CID. Compl. ¶¶ 78–82. To state a claim for First Amendment retaliation pursuant to 42 U.S.C. § 1983, a plaintiff must allege facts that demonstrate (1) that "his or her speech was protected"; (2) "that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech;" and (3) there is a "causal relationship exists between [the] speech and the defendant's retaliatory action." *Camastro v. City of Wheeling*, 332 F. App'x 125, 128 (4th Cir. 2009) (quoting *Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685 (4th Cir. 2000)).

AMP's First Amendment retaliation claim fails because an investigation found to have been initiated in good faith cannot constitute an adverse action and because AMP fails to adequately

allege a causal relationship between its speech and the issuance of the CID. *See* July 30, 2024 Order. As discussed above in II. a., the Attorney General had ample reason to initiate the CID for reasons that had nothing to do with AMP's speech, including an admitted violation of the VSOC law. *See* Resp. in Opp. to Pet. to Set Aside CID.

> **e. Count IV should be dismissed because it fails to adequately allege that the Attorney General issued the CID because he disagrees with AMP's speech**

In Count IV, AMP alleges that the Attorney General engaged in impermissible viewpoint discrimination by targeting AMP for its speech in support of Palestine. Viewpoint discrimination is defined as "discrimination in which the government targets not subject matter, but particular views taken by speakers on a subject." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). "Viewpoint discrimination is apparent, for example, if a government official's decision to take a challenged action was impermissibly motivated by a desire to suppress a particular point of view." *Davison v. Randall*, 912 F.3d 666, 687 (4th Cir. 2019), *as amended* (Jan. 9, 2019) (internal quotation marks omitted).

The Attorney General issued the CID for entirely legitimate reasons that do not indicate a desire to suppress AMP's speech. *See* Resp. in Opp. to Pet. to Set Aside CID; Argument II. a., *supra*; ECF No. 15-1 at 34–35. Indeed, the Attorney General's decision to launch an investigation into AMP was motivated, in part, by AMP having violated the VSOC law for almost seven years. Because the Attorney General had a legitimate basis for initiating the CID and the CID indicates no interest in suppressing AMP's speech on Palestine, AMP's viewpoint discrimination claim fails as a matter of law and should be dismissed.

**f.  Count V should be dismissed because the information sought by the CID is relevant to the Attorney General's inquiry, the CID is not overbroad, and AMP had an opportunity for pre-compliance judicial review**

Finally, AMP alleges that the Attorney General violated the Fourth Amendment to the U.S. Constitution because the CID allegedly lacked a legitimate purpose and did not seek information relevant to investigating a violation of the VSOC law. Compl. ¶¶ 89–98. However, as addressed above in II. a., the CID does not violate the Fourth Amendment because it complies with the statute authorizing it, the informational requests are relevant to the Attorney General's inquiry, and the CID is not indefinite or overbroad. *See State, ex rel. Koster v. Charter Communications*, 461 S.W.3d 851, 858–59 (Mo. App. Ct. 2015) (holding that an Attorney General's CID must comply with the Fourth Amendment, comply with certain factors, and provide for pre-compliance judicial review); *see also State v. Brelvis Consulting*, 436 P.3d 818, 831–32 (Wash. App. 2018) (in the context of a Fourth Amendment challenge to a CID, "[t]he test 'for determining the reasonableness of a subpoena . . . or similar order . . . requires that (1) the inquiry is within the authority of the agency; (2) the demand is not too indefinite; and (3) the information sought is reasonably relevant to [the purpose of the subpoena].'") (quoting *State v. Steele*, 537 P.2d 782, 788 (Wash. 1975)). Additionally, Virginia law provides for pre-compliance judicial review of the CID by the Circuit Court. Va. Code § 59.1-9.10(F).

Accordingly, AMP has failed to state a claim pursuant to the Fourth Amendment, and Count V should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant this Motion to Dismiss, dismiss the Complaint, and grant any other relief that this Court deems just and proper.

Dated: October 23, 2025

Respectfully submitted,

**JASON S. MIYARES, in his official capacity as Attorney General of Virginia**

By Counsel:____/s/ Christopher P. Bernhardt_____
Christopher P. Bernhardt* (VSB No. 80133)
Mark S. Kubiak* (VSB No. 73119)
Senior Assistant Attorneys General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 371-0977 (CPB)
Facsimile:  (804) 371-2087
Email: cbernhardt@oag.state.va.us
        mkubiak@oag.state.va.us
*Counsel of Record for Defendant*

Jason S. Miyares
Attorney General of Virginia

Thomas J. Sanford
Deputy Attorney General

## CERTIFICATE

I hereby certify that on October 23, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a copy to all counsel of record.

/s/ Christopher P. Bernhardt
Christopher P. Bernhardt (VSB No. 80133)
Senior Assistant Attorney General