IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| AJP Educational Foundation d/b/a American Muslims for Palestine, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Jason S. Miyares, in his official capacity as )<br>Attorney General of Virginia, )<br>)<br>Defendant. ) | Case No. 1:25-cv-01617-LMB-IDD |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

The Attorney General's Motion to Dismiss indeed presents new arguments and facts that were not considered in the expedited proceedings on AMP's Emergency Motion for a TRO and Preliminary Injunction. First, in his Memorandum in Support, the Attorney General sets out why the Petition to Enforce the Civil Investigative Demand ("Petition to Enforce") resulted in a final judgment on June 13, 2025, and the consequences for this action when AMP did not appeal that judgment. AMP's violation of that final unappealed order led directly to the Richmond City Circuit Court ("Circuit Court") holding AMP in contempt on September 29, 2025. Pursuant to the *Younger* abstention doctrine, issue and claim preclusion, the *Rooker-Feldman* doctrine, and principles of comity and federalism, this Court should not exercise jurisdiction over AMP's request to interfere with the Circuit Court's ancillary proceedings to enforce a final unappealed order.

For the sake of clarification, as AMP's counsel appears confused regarding the procedural history supporting these new arguments (*see* ECF No. 40 at 11–13), there are two distinct state-court actions involving the parties. The Petition to Set Aside the Civil Investigative Demand

("Petition to Set Aside the CID") was filed by AMP in the Circuit Court on November 27, 2023, and was assigned Case No. CL23-5213. ECF No. 1-2. Judge Richard Campbell presided over this matter, which resulted in a final order for purposes of noting an appeal on July 30, 2024. ECF No. 1-3. AMP noted a timely appeal to the Court of Appeals of Virginia, and that matter is awaiting a decision under Record No. 142024. *See* ECF No. 15-2; ECF No. 40 at 6. The other action is the Petition to Enforce, which was a separate action initiated by the Attorney General in the Circuit Court on January 14, 2025, and assigned Case No. CL25-174-00. ECF No. 1 at 7; ECF No. 15-6; ECF No. 15-8. Judge Devika Davis presided over this matter, which resulted in a final order for purposes of noting an appeal on June 13, 2025. *See* Va. Sup. Ct. R. 1:1; ECF No. 15-7; ECF No. 15-8. AMP did not appeal this order. ECF No. 30-2. The Circuit Court then held ancillary proceedings to enforce the June 13, 2025 Order, including holding AMP in contempt of the June 13, 2025 Order following a hearing on September 29, 2025. ECF No. 15-10. The distinctions between these two separate and distinct matters, especially that AMP did not appeal the June 13, 2025 Order, are key to the new arguments made by the Attorney General in support of his Motion to Dismiss pursuant to Rule 12(b)(1). Specifically, the present motion focuses on the final order, which is also a final judgment, in the Petition to Enforce action. At the preliminary injunction stage of these proceedings, the Attorney General's arguments by contrast concerned, for the most part, the final order in the Petition to Set Aside the CID action.

In addition, the Attorney General did raise facts in support of the Motion to Dismiss that were not properly considered previously. The Attorney General explains that the Civil Investigative Demand ("CID") in question contained the exact time-period limitation that this Court, in an apparent oversight, found it lacked. As this Court found the perceived lack of a temporal limitation an important factor in concluding that the CID was not narrowly tailored,

Defendant's Motion to Dismiss AMP's claims pursuant to Rule 12(b)(6) should not be automatically denied merely because this Court previously granted the Emergency Motion for a TRO and Preliminary Injunction on a preliminary basis without the benefit of fully developed briefing submitted in the normal course.

Alternatively, should this Court reject the Attorney General's other arguments brought pursuant to Rule 12(b)(1), this Court should stay further proceedings in this action pending a final resolution of AMP's state-court appeal of the denial of its challenge of the CID pursuant to the *Colorado River* abstention doctrine. This case presents exceptional circumstances that warrant a stay pursuant to *Colorado River* because the Court of Appeals of Virginia is poised to issue a decision in a matter that has been pending in state court for almost two years and further proceedings in this Court risks inconsistent adjudications of the same legal issues. Furthermore, a stay of further proceedings would be consistent with AMP's stated objective in this matter to preserve the status quo while the state appellate process plays out. *See* ECF No. 40 at 13.

## ARGUMENT

### I. *Younger* abstention applies because exercising jurisdiction jeopardizes a Virginia state court's ability to enforce a final unappealed judgment

AMP argues that the Attorney General engages in an outdated analysis of *Younger* abstention by considering the *Middlesex* factors and that *Younger* abstention does not apply to these proceedings to stay the Circuit Court's September 29, 2025 Order finding AMP in contempt. *See* ECF No. 40 at 9–10. Regarding this first point, the Attorney General followed the same steps of the *Younger*-abstention analysis endorsed by the Supreme Court, the Fourth Circuit, and this Court. *Compare Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69, 79, 81 (2013); *Air Evac EMS, Inc.*

*v. McVey*, 37 F.4th 89, 96 (4th Cir. 2022); ECF No. 25 at 19–20; *with* ECF No. 30 at 9–13.[1] Consistent with those authorities, the *Middlesex* factors are "additional factors" considered only after determining that a case falls within one of the three categories of cases that can "trigger *Younger* abstention." *Sprint Communs., Inc.*, 571 U.S. at 79, 81; *see Air Evac EMS, Inc.*, 37 F.4th at 96; ECF No. 25 at 20. In its Memorandum Opinion expanding on its reasoning for granting AMP's Emergency Motion for a TRO and Preliminary Injunction, this Court did not consider the *Middlesex* factors because it concluded that the state proceedings in question did not fall within one of the three categories of the "*Younger* taxonomy." ECF No. 25 at 24.

Respectfully disagreeing with this Court, the Attorney General reached the additional *Middlesex* factors because the Circuit Court's contempt proceedings concerning the Petition to Enforce that this Court stayed fall within a category of case warranting *Younger* abstention, namely "pending 'civil proceedings involving certain orders . . . uniquely in furtherance of the state court's ability to perform their judicial functions.'" *Sprint Communs., Inc.*, 571 U.S. at 78 (quoting *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)). The Supreme Court originally recognized this category of case warranting *Younger* abstention in *Juidice v. Vail*, 430 U.S. 327, 332, 336 (1977), which involved a federal lawsuit challenging the constitutionality of a state court's civil contempt proceedings. *See Sprint Communs., Inc.,* 571 U.S. at 78; *Jonathan R. v. Justice*, 41 F.4th 316, 330 (4th Cir. 2022). This category of case arises "only in the rare cases [where state court orders are not obeyed]—where a State's power to ensure 'compliance with the judgments of its courts,' [*Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 13–14 (1987)], or 'vindicate[ ] the regular operation of its judicial system," *Juidice*, 430 U.S. at 335, is

---

[1] This analysis differs from Defendant's Opposition to Plaintiff's Emergency Motion for a TRO and Preliminary Injunction, which relied on pre-*Sprint Communications, Inc.* authority. ECF No. 15 at 20.

in jeopardy . . . ." *Jonathan R.*, 41 F.4th at 331–32 (reversing district court's decision to abstain from a challenge to West Virginia's administration of child welfare services that did not involve a challenge to any state-court order).

AMP argues, in reliance on the Memorandum Opinion (ECF No. 25), that *Juidice* and the category of cases it represents does not apply here because Virginia has not accorded AMP the "opportunity"[2] to "fairly" raise its constitutional objections to the CID. ECF No. 40 at 10 (quoting in part ECF No. 25 at 23). However, Virginia provided AMP with a specific mechanism to raise its constitutional objections to the CID, AMP took advantage of that mechanism and raised its objections before a court, and it has continued to raise those objections in its appeal of the denial of its Petition to Set Aside the CID. *See* Va. Code § 59.1-9.10(F) (providing that a recipient of a CID may petition to modify or set aside the demand based upon its constitutional rights); ECF No. 1 at 6–7; ECF No. 1-2. Virginia law also afforded AMP with a statutory stay of its obligation to comply with the CID while its Petition to Set Aside the CID was pending in the Circuit Court, a period of approximately eight months. Va. Code § 59.1-9.10(F); *see* ECF No. 1 at 6. Moreover, AMP had the opportunity to raise those constitutional issues in its opposition to the Petition to Enforce in that separate action. Only after AMP did not appeal the June 13, 2025 Order, which denied AMP's responsive pleading and granted the Petition to Enforce, did the Circuit Court hold AMP in contempt for not complying with that Order. *See* ECF No. 15-8; ECF No. 15-10; ECF No. 30-2.

---

[2] AMP alleges that Defendant added an emphasis to the word "opportunity" when it quoted *Juidice* for the proposition that "an *opportunity* to present their federal claims in the state proceedings" is required to invoke *Younger* abstention. ECF No. 40 at 10 (citing ECF No. 30 at 10 quoting *Juidice*, 430 U.S. at 337). However, this emphasis was in the original opinion. The relevant page from the United States Report, 430 U.S. 327, 337, is attached as Ex. 1.

Not only do these circumstances demonstrate that AMP had an adequate and fair opportunity to raise its constitutional objections in Virginia's state-court system, but they underline that enjoining the enforcement of the September 29, 2025 Order (ECF No. 15-10) implicates exactly the circumstances that trigger *Younger* abstention. This is one of those "rare cases" where a state-court order has not been obeyed. *See Jonathan R.*, 41 F.4th at 331; ECF No. 15-10 at 1 (finding AMP in contempt of the June 13, 2025 Order). Preventing the Circuit Court from enforcing its June 13, 2025 Order, an unappealed final order under Virginia law, jeopardizes Virginia's ability to "ensure 'compliance with the judgments of its courts,' *Pennzoil Co.,* 481 U.S. at 13–14, or 'vindicate[ ] the regular operation of its judicial system,' *Juidice*, 430 U.S. at 335." *Jonathan R.*, 41 F.4th at 331.

AMP points to dicta regarding the opportunities that the plaintiffs in *Juidice* would have had to raise their federal claims in the New York state-court proceedings to support its contention that it has been denied such an opportunity in Virginia's state courts. ECF No. 40 at 10–11 (quoting *Juidice*, 430 U.S. at 337 n. 14). First, AMP suggests that the September 29, 2025 hearing on the rule to show cause was the "most propitious moment" for it to raise its constitutional objections to the CID. *See* ECF No. 40 at 11. However, it was too late for AMP to object at that point because the Circuit Court, in its June 13, 2025 Order, denied AMP's plea in bar and granted the Petition to Enforce. ECF No. 15-8; *see* ECF No. 15-7. AMP did not appeal the June 13, 2025 Order, which was an appealable final order. *See* ECF No. 30 at 15–16; ECF No. 30-2; Sections II. and III., *infra*. The relevant time for AMP to raise its constitutional objections to the Petition to Enforce was in its responsive pleading and at the April 11, 2025 hearing on the Petition to Enforce and in any appeal. AMP's decisions to not raise certain issues in response to the Petition to Enforce and to not appeal the June 13, 2025 Order, decisions under its sole control, do not equate with Virginia's state-

court system denying it an opportunity to raise its constitutional objections to the Petition to Enforce. As *Juidice* states, state-court litigants "need be accorded only an opportunity to fairly pursue their constitutional claims in the ongoing state proceedings, and their failure to avail themselves of such opportunities does not mean that the state procedures were inadequate." *Juidice*, 430 U.S. at 337 (internal citation omitted).

Next, AMP suggests that it is meaningful that the Supreme Court observed that the plaintiffs in *Juidice* could have sought a stay after the contempt order was issued. *See* ECF No. 40 at 11 (citing *Juidice*, 430 U.S. at 337 n. 14). However, this is no different from the situation faced by AMP. The New York law identified by the Supreme Court authorizes courts to stay proceedings in their discretion, which is similar to the authority of Virginia courts to stay proceedings as part of their authority to control their dockets. *Compare* N.Y. C.P.L.R. Law § 2201 (providing that a court "may grant a stay of proceedings in a proper case") *with Primov v. Serco, Inc.*, 296 Va. 59, 67 (2018) (recognizing the authority of courts to stay proceedings, which calls for the "exercise of judgment"). Neither mandate a stay of enforcement proceedings pending the resolution of the appellate process. *See id.* AMP did seek a stay related to the Petition to Enforce proceedings from the Court of Appeals of Virginia, but it was denied. ECF No. 1 at 7; ECF No. 15-9. A state appellate court's exercise of its judgment to deny a request for a stay does not amount to a denial of AMP's opportunity to raise its constitutional objections.

Finally, just like the plaintiffs hypothetically could have done in *Juidice*, AMP has the right to seek review in the Supreme Court of an adverse decision of Virginia's state appellate courts regarding its Petition to Set Aside the CID. *See* ECF No. 40 at 11 (citing *Juidice*, 430 U.S. at 337 n. 14 (citing 28 U.S.C. § 1257(2)). However, AMP has lost its opportunity to appeal the June 13, 2025 Order granting the Petition to Enforce, which was issued in a separate action from the

Page 7 of 18

presently pending appeal, because the time to do so has passed. *See* Va. Code § 8.01-675.3; ECF No. 30 at 15–16; ECF No. 30-2; Sections II. and III., *infra*.

In sum, AMP has been afforded the same or more opportunities to present its federal constitutional arguments in the state proceedings as the plaintiffs could have done in *Juidice*. AMP's disagreement with the results it has received so far and its failure to avail itself of all the opportunities it was afforded does not affect that conclusion. For the reasons more fully set out in Defendant's Memorandum in Support, this Court should find that all the elements of the *Younger* abstention analysis are satisfied in this case, and it should abstain from exercising jurisdiction over the Complaint.

**II.    Issue and claim preclusion bar AMP from relitigating the Petition to Enforce because that action resulted in a final judgment that was not appealed**

Plaintiff incorrectly asserts that Defendant's continued position is that the July 30, 2024 Order denying the Petition to Set Aside the CID is a final judgment for purposes of claim and issue preclusion and that Defendant has raised again the same issue and claim preclusion arguments rejected by this Court. *See* ECF No. 40 at 11. This is not the case. Defendant's argument in support of his Motion to Dismiss is that this federal action is barred by issue and claim preclusion because the Circuit Court granted the *Petition to Enforce*, and that June 13, 2025 Order was not appealed. ECF No. 30 at 13–16. To be clear, the Petition to Enforce constitutes a separate and distinct action from the Petition to Set Aside with a different case number and different judge.

Defendant recognizes that the July 30, 2024 Order denying the Petition to Set Aside the CID is not currently a final judgment for purposes of claim and issue preclusion. *See* ECF No. 30 at 13 n. 4 (observing that there will be a final judgment in the Petition to Set Aside the CID once all appellate rights in that matter have expired). Defendant acknowledges that the argument to the contrary in its Opposition to Plaintiff's Emergency Motion for a TRO and Preliminary Injunction,

which was prepared under significant time constraints, was incorrect. *See* ECF No. 15 at 15–16. Defendant should have focused on the final unappealed order in the Petition to Enforce action in making those arguments. Defendant does so now in support of his Motion to Dismiss.

Specifically, Defendant's claim and issue preclusion arguments in support of the Motion to Dismiss are directed at the June 13, 2025 Order granting the Petition to Enforce (ECF No. 15-8). *See* ECF No. 30 at 15–16. Unlike the July 30, 2024 Order denying the Petition to Set Aside the CID, which was entered in Case No. CL23-5213, the appeal of which is still pending before the Court of Appeals of Virginia, the June 13, 2025 Order granting the Petition to Enforce, which was entered in Case No. CL25-174, is a final judgment for purposes of claim and issue preclusion because it was not appealed. All appellate rights have expired as to that order.

The June 13, 2025 Order was a final judgment for purposes of noting an appeal under Virginia law because it denied AMP's challenge to the Petition to Enforce, granted the Petition and all of the relief sought therein, i.e., by ordering full compliance with the CID, and left "nothing to be done by the [Circuit Court] except the ministerial execution of [its] judgment, order, or decree." Va. Sup. Ct. R. 1:1(b); *see James v. James*, 263 Va. 474, 481 (2002) (discussing what makes an order a final appealable order for purposes of Va. Sup. Ct. R. 1:1); ECF No. 15-8. AMP did not appeal the June 13, 2025 Order within thirty days, which then rendered the Order final for purposes of claim and issue preclusion. *Faison v. Hudson*, 243 Va. 413, 419 (1992); *see* Va. Code § 8.01-675.3 (30-day deadline to appeal a final order); ECF No. 30-2 (docket sheet for the Petition to Enforce matter showing that no notice of appeal was filed).

AMP appears to argue that there can be no claim and issue preclusion as a result of the June 13, 2025 Order granting the Petition to Enforce because it was not an appealable final judgement. *See* ECF No. 40 at 18. However, the subsequent ancillary proceedings in the Circuit Court on the

Petition to Enforce, including the entry of the September 29, 2025 Order, dealt with the Circuit Court's execution of the June 13, 2025 Order and did not change that Order's status as a final judgment that was no longer appealable due to Plaintiff's failure to exercise its right to seek appellate review. *See James*, 263 Va. at 481, 483–84 (observing that Virginia courts retain the power to enforce their final orders through ancillary show cause proceedings); *Fisher v. Salute*, 51 Va. App. 293, 302 (2008) (holding that Va. Sup. Ct. R. 1:1 did not bar a rule to show cause); Va. Sup. Ct. R. 1:1(b). An order's legal status as a final order does "not render the court powerless to enforce it by contempt proceedings." *Fisher*, 51 Va. App. at 302 (quoting *Rinehart & Dennis Co., Inc. v. McArthur*, 123 Va. 556, 563 (1918)).

Accordingly, for the reasons set out in the Memorandum in Support of Motion to Dismiss, ECF No. 30 at 13–16, this Court should afford the June 13, 2025 Order the same preclusive effect it would receive under state law and dismiss AMP's action. *See Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008).

### III. The *Rooker-Feldman* doctrine bars AMP's efforts to relitigate the Petition to Enforce in federal court

AMP wrongly contends that the Attorney General's *Rooker-Feldman* doctrine argument fails because it is the same argument already rejected by this Court, there is no final state-court judgment, and AMP is not asking this Court to exercise appellate jurisdiction over a final state-court judgment. ECF No. 40 at 12–13. In its opposition to Plaintiff's Emergency Motion for a TRO and Preliminary Injunction, Defendant argued that this Court lacks jurisdiction over AMP's constitutional claims because exercising jurisdiction would amount to a review of the Circuit Court's decisions in the litigation concerning the Petition to Set Aside the CID and the Petition to Enforce (ECF No. 15 at 19), which is distinct from the argument Defendant presents in its Motion to Dismiss. Here, Defendant's *Rooker-Feldman* doctrine argument is focused solely on the Petition

to Enforce action, which resulted in a final judgment on June 13, 2025 that was not appealed. ECF No. 30 at 17–18. This Court did not address this argument in its Memorandum Opinion. *See* ECF No. 25 at 17–19.

This Court has noted, "*Rooker-Feldman* is limited to a narrow set of cases where 'the losing party in state court filed suit in federal court *after the state proceedings ended*, complaining of an injury caused by the state-court judgment.'" ECF No. 25 at 18 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)) (emphasis added by this Court).

This case presents those circumstances. The Petition to Enforce action became final when the Circuit Court entered the June 13, 2025 Order and it was not appealed. *See* ECF No. 15-8; ECF No. 30-2; Section II, *supra*. The Circuit Court's subsequent ancillary proceedings to enforce its June 13, 2025 Order does not change the Order's status as a final judgment. *Fisher*, 51 Va. App. at 302. AMP filed this action months after the entry of the June 13, 2025 Order. ECF No. 1. Finally, at its core, AMP's action complains of an injury caused by a state-court judgment, namely the Attorney General's efforts to obtain compliance with the June 13, 2025 Order. *See* Comp ¶¶ 44, 46, 50–51, ECF No. 1; ECF No. 9-1 at 1 (alleging AMP "faces imminent harm from the actions of [Defendant], based on a Virginia order issued by the [Circuit Court] on September 29, 2025 . . . ."). Thus, this action was brought by the losing party to the Petition to Enforce after those proceedings resulted in a final order that was not appealed, and application of the *Rooker-Feldman* doctrine to this case is appropriate.

While AMP is correct that it has not asked this Court to review an appellate decision of Virginia's state appellate courts, it has, in essence, invited this Court to review the Circuit Court's decision to enforce its own order. *See* ECF No. 40 at 13. AMP seeks to avoid the effects of the Circuit Court's September 29, 2025 Order. *See* ECF No. 9-1 at 1, 10. The Circuit Court's

September 29, 2025 Order flowed directly from AMP's decision to not comply with that Court's June 13, 2025 Order. AMP's federal action seeks, "in substance" if not explicitly, "appellate review" of the June 13, 2025 Order. *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003). Thus, this action seeks what is prohibited by the *Rooker-Feldman* doctrine: lower federal court review of a state-court decision. *Id.* (citing *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997)).

In sum, AMP's attempt in federal court to enjoin the enforcement of the CID, which had been occurring as a result of the Circuit Court's June 13, 2025 Order granting the Petition to Enforce, is barred by the *Rooker-Feldman* doctrine.

### IV. Alternatively, this Court should stay further proceedings in this action until the Petition to Set Aside the CID has been fully adjudicated through the state court system

Although AMP claims it "simply wants" through this federal action to "preserve the status quo with a stay or restraining order . . . while the full appellate process plays out," AMP argues against the Attorney General's alternative request that this Court should stay further proceedings in this matter until the Petition to Set Aside the CID has been fully adjudicated through the Virginia state court system. ECF No. 40 at 13–15; *see* ECF No. 25 at 19 ("AMP is merely asking this Court to stay enforcement of the CID pending appellate review of the Circuit Court's order."). AMP argues that Defendant does not adequately address that *Colorado River* abstention is a rare exception to a federal court's obligation to exercise its jurisdiction and that Virginia state-courts will not adequately provide an opportunity for the resolution of its constitutionals claims. *See* ECF No. 40 at 14–15.

As a threshold matter because AMP appears to question this point (ECF No. 40 at 14), motions to dismiss based on abstention grounds, such as *Colorado River* abstention, are properly

brought pursuant to a Rule 12(b)(1) motion. *See Palisades Ests. EOM, LLC v. Cnty. of Rockland*, No. 23-cv-4215, 2025 U.S. Dist. LEXIS 85721, at *117 (S.D.N.Y. May 5, 2025) (motion to dismiss raising *Colorado River* abstention "deemed a Rule 12(b)(1) motion"); *Prop. Damage Specialists, Inc. v. Wells Fargo Bank, N.A.*, No. 5:18-cv-00069, 2018 U.S. Dist. LEXIS 181346, at *12–13 (W.D. Va. Oct. 23, 2018) (granting a stay pursuant to *Colorado River* abstention in response to motion brought pursuant to Rule 12(b)(1) pending resolution of parallel state court proceeding on appeal before the Supreme Court of Virginia).

The Attorney General acknowledges that "the Supreme Court has cautioned that federal courts are bound by a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 206 (4th Cir. 2006) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). The Supreme Court has also indicated that there are limited "exceptional circumstances" where federal courts may decline to exercise their jurisdiction. *Id.* (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)). "These 'exceptional circumstances' inevitably relate to a policy of avoiding unnecessary constitutional decisions and of accommodating federal-state relations." *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 462 (4th Cir. 2005). *Colorado River* abstention is only applied "in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Great Am. Ins. Co.*, 468 F.3d at 207 (quoting *Colorado River*, 424 U.S. at 813). Here, AMP's federal action presents those "exceptional circumstances" because of the significant progress already made in the Petition to Set Aside the CID in Virginia's appellate system and the potential for conflict between rulings from Virginia's state appellate courts and this Court.

AMP only disputes the Attorney General's assessment of the sixth factor used to determine if *Colorado River* abstention is appropriate: "the adequacy of the state proceeding to protect the parties' rights." *Chase Brexton Health Servs.*, 411 F.3d at 464 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983)); *see* ECF No. 40 at 15. While AMP disagrees with the decisions of the state courts so far, it appealed the July 30, 2024 Order denying its Petition to Set Aside the CID and the Court of Appeals of Virginia heard oral argument in that matter on July 15, 2025. *See* ECF No. 40 at 5–6. AMP has not identified any legitimate basis to suggest the Court of Appeals of Virginia is not competent to adjudicate AMP's constitutional claims that it raised in the appeal. Indeed, state court judges are fully competent to handle constitutional issues subject to review by the Supreme Court. *See Air Evac EMS, Inc.*, 37 F.4th at 95; *Charnock v. Virginia*, No. 2:16-cv-493, 2017 U.S. Dist. LEXIS 172629, at *8 (E.D. Va. Jan. 4, 2017).

In sum, if this Court rejects the Attorney General's other arguments regarding subject matter jurisdiction pursuant to Rule 12(b)(1), it should stay further proceedings in this matter until the Petition to Set Aside the CID has been fully adjudicated through the Virginia state-court system. Such a stay, in addition to being consistent with the exceptional circumstances necessary for *Colorado River* abstention and avoiding the inefficiency and duplication of effort that comes from parallel proceedings, would be consistent with AMP's stated goal of "preserv[ing] the status quo . . . while the full appellate process plays out." ECF No. 40 at 13.

V. **AMP's general arguments do not respond to the Attorney General's specific arguments that Counts I, III, IV, and V failed to state a claim pursuant to Rule 12(b)(6)**

AMP chose to not address the Attorney General's specific arguments that it had failed to state a claim in Counts I, III, IV, and V. ECF No. 40 at 17–19. Instead, AMP argues generally that the Attorney General's arguments regarding Counts I, III, IV, and V fail because the Circuit Court's

July 30, 2024 Order did not address whether the scope of the CID was narrowly tailored and the Attorney General's argument that the CID is narrowly tailored constitutes a factual dispute that cannot be addressed in a motion to dismiss pursuant to Rule 12(b)(6). *Id.* at 18–19.

As to this first point, whether the Circuit Court in the Petition to Set Aside the CID addressed the constitutionality of the scope of the CID is irrelevant to Defendant's argument that AMP has failed to state a claim in Counts I, III, IV, and V. Instead, the Attorney General pointed to the CID itself, including its limitation on the time-frame responsive to the CID, and the provisions of the VSOC law to address why the scope of the requests were appropriate and did not violate the federal constitution. ECF No. 30 at 21–24. AMP does not engage with any of these points in its Opposition. *See* ECF No. 40 at 16–19.

Regarding AMP's contention that the Attorney General has posed factual disputes that cannot be addressed on a motion to dismiss pursuant to Rule 12(b)(6), only a few of the purported "fact disputes" identified deal with arguments made pursuant to Rule 12(b)(6) and, with one exception, consist in fact of the Attorney General's legal arguments. *Id.* at 18–19. The parties' disagreements over the legal significance of the facts alleged in the complaint and contained in documents properly considered on a Rule 12(b)(6) motion to dismiss do not prevent a court from ruling on the legal arguments presented. Apparently in regard to Count III, AMP's First Amendment retaliation claim, AMP contends that the intent of the Attorney General in issuing the CID is a factual issue that prevents this claim from being resolved on a motion to dismiss pursuant to Rule 12(b)(6). *See id.* at 19. However, Defendant has articulated several good-faith grounds for initiating the CID, including an admitted violation of the VSOC law, which defeats AMP's claim of an adverse action. Furthermore, AMP has never alleged or disclosed what protected speech it was engaging in that allegedly caused the retaliatory action. *See Suarez Corp. Indus. v.*

*McGraw,* 202 F.3d 676, 685–86 (4th Cir. 2000) (setting out the factors for a First Amendment retaliation claim). For these reasons, AMP fails to state a retaliation claim even if the parties disagree over the Attorney General's intent.

Because AMP does not respond to any of the Attorney General's specific arguments in support of his motion to dismiss Counts I, III, IV, and V, Defendant relies on his arguments as set forth in his Memorandum in Support of Motion to Dismiss and asks that these claims be dismissed. *See also Evans v. City of Lynchburg*, 766 F. Supp. 3d 614, 618 (W.D. Va. 2025) (noting that failing "to respond to conspicuous, nonfrivolous arguments in an opponent's brief constitutes a waiver of the corresponding claims" and collecting supporting authority).

**VI.   Count II fails to state a claim that the Attorney General violated its First Amendment right to freedom of association because the CID was limited to the time frame suggested by this Court**

Count II is the only one of its claims that AMP addresses specifically and then only to state that this Court has already held that AMP is likely to succeed on the merits of this claim. *See* ECF No. 40 at 16. AMP contends that the Attorney General has not presented any new facts not already considered by this Court. *Id.* That is not the case.

In its Memorandum Opinion, this Court, in finding that the CID was not narrowly tailored, found that the CID was not limited to a particular time frame, and thus could be construed to "dat[e] back to 2006 when AMP was incorporated." ECF No. 25 at 29. The Court stated that the Attorney General's investigation into AMP's solicitations should be limited to the period from 2016 until November 2023. *Id.* at 30. However, the Court's finding was erroneous as the CID's temporal scope was plainly limited to the exact time period to which this Court signaled approval. *Compare* ECF No. 25 at 30 *with* ECF No. 15-1 at 36 (instructions accompanying the CID stating

that "Unless otherwise indicated, each paragraph of this CID, relates to the period from November 29, 2016 through [October 27, 2023, the day the CID was issued].").

In its Memorandum in Support of Motion to Dismiss, the Attorney General pointed out that it had in fact tailored the temporal scope of the CID to the period from November 29, 2016 to October 27, 2023, a period which corresponds to when AMP moved its headquarters to Virginia and then operated in violation of the VSOC law and raised significant funds. ECF No. 30 at 3–4, 23. AMP does not dispute that the CID was limited to this time period. *See* ECF No. 40 at 16–19. This Court should consider the Attorney General's limitation of the CID's scope in its adjudication of the Motion to Dismiss for failure to state a claim as to Count II.

Because AMP does not respond to any of the Attorney General's other arguments in support of his motion to dismiss Count II, the Attorney General otherwise relies on his arguments as set forth in his Memorandum in Support. *See* ECF No. 30 at 21–29.

## **CONCLUSION**

For the foregoing reasons and those set out in the Memorandum in Support of Motion to Dismiss (ECF No. 30), the Court should grant the Motion to Dismiss, dismiss the Complaint, and grant any other relief that this Court deems just and proper.

Dated: November 12, 2025

Respectfully submitted,

**JASON S. MIYARES, in his official capacity as Attorney General of Virginia**

By Counsel:  /s/ Christopher P. Bernhardt
Christopher P. Bernhardt* (VSB No. 80133)
Mark S. Kubiak* (VSB No. 73119)
Senior Assistant Attorneys General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 371-0977 (CPB)
Facsimile:  (804) 371-2087
Email: cbernhardt@oag.state.va.us
          mkubiak@oag.state.va.us
*Counsel of Record for Defendant*

Jason S. Miyares
Attorney General of Virginia

Thomas J. Sanford
Deputy Attorney General

# CERTIFICATE

I hereby certify that on November 12, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a copy to all counsel of record.

/s/ Christopher P. Bernhardt
Christopher P. Bernhardt (VSB No. 80133)
Senior Assistant Attorney General