# VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **9th** *day of* **December, 2025**.

AJP Educational Foundation, d/b/a
 American Muslims for Palestine, Appellant,

against          Record No. 1420-24-2
                 Circuit Court No. CL23-5213

Jason S. Miyares, in his official capacity as the
 Attorney General of the Commonwealth of Virginia, Appellee.

From the Circuit Court of the City of Richmond

Before Judges Beales, Chaney and Senior Judge Humphreys

As part of an investigation into possible violations of the Virginia Solicitation of Contributions Law, Code §§ 57-48 to 57-69 ("VSOC"), the Attorney General of the Commonwealth of Virginia issued a Civil Investigative Demand ("CID") against AJP Educational Foundation ("AJP") "in connection with the solicitation of charitable contributions."  AJP then filed in the Circuit Court of the City of Richmond a petition for an order to modify or set aside the CID.  Following a hearing, the circuit court denied AJP's petition.  On appeal, AJP argues that the circuit court erred by "failing to make any specific findings as to the questions of fact and issues of law presented" in AJP's petition, by "fail[ing] to address AJP's challenges to the excessive scope of the CID," and by "failing to address or sustain the questions of constitutional law" raised by AJP.  However, because AJP did not object to these alleged failures or errors by the circuit court or obtain a ruling from the circuit court on them (or even file a timely motion to reconsider them), AJP's arguments are not preserved for appeal.  Rule 5A:18.  Thus, we cannot reach them, and we therefore do not disturb the judgment of the circuit court.

BACKGROUND

In 2023, the Attorney General issued a Civil Investigative Demand against AJP, alleging that AJP

> may have solicited charitable contributions in the Commonwealth without first having been registered with the Commissioner of the Virginia Department of Agriculture and Consumer Services, employed misrepresentations in connection with the solicitation of charitable contributions, permitted the use of funds raised in a charitable solicitation for purposes other than the solicited purpose, and knowingly used or permitted the use of funds raised by a solicitation of contributions to provide support to terrorists, terrorist organizations, terrorist activities, or family members of terrorists.

*See* Code § 57-59(C) ("Whenever the Attorney General has reasonable cause to believe that any person has operated, is operating or is about to operate in violation of the provisions of this chapter, the Attorney General may issue a civil investigative demand."). The Attorney General's CID cited "possible violations" of "Code §§ 57-49 and 57-57(K), (L), (N), and (R) in connection with the solicitation of charitable contributions."

Among other things, the CID required AJP to produce "[a]ll documents submitted to the Office of Charitable and Regulatory Programs"; "[d]ocuments sufficient to show your legal identity and organization"; "[d]ocuments sufficient to identify the members of your board of directors"; "[d]ocuments sufficient to identify all of your employees"; "[a]ll Internal Revenue Service forms"; and "[a]ll audits, financial reviews, or other finance statements." The CID also required AJP to provide "[a]ll donor lists, including list-servs and email groups." In addition, the CID included a series of interrogatories, one of which asked AJP to address whether it had used any funds to support terrorist organizations.

Soon thereafter, AJP filed in the circuit court a petition for an order to modify or set aside the CID. In its petition, AJP acknowledged that most of the CID "falls within the proper purview of the Attorney General's office." However, AJP maintained that the CID "improperly seeks detailed information regarding donors, including donors from outside the State of Virginia and donations not reasonably related to the legitimate timeframe or topics at issue here." AJP also maintained that it was "now in compliance with the VSOC" because it had "properly filed its Initial Registration Statement for a Charitable Organization (Form 102) with the Office of Charitable and Regulatory Programs."

The Attorney General filed in the circuit court a response in opposition to AJP's petition for an order to modify or set aside the CID.[1] The Attorney General explained that AJP "has been the subject of numerous allegations that it has close relationships to now-defunct charitable organizations that were previously held liable for providing financial support to terrorists and terrorist organizations." In particular, the Attorney General cited a 2017 lawsuit filed in the United States District Court for the Northern District of Illinois by "the family of a teenager slain by Hamas terrorists in 1996," in which the family sought "to hold AMP and others liable for judgments previously obtained against organizations that were found liable for providing support to terrorist organizations, claiming that AMP is the mere alter ego of those organizations." *See Boim v. American Muslims for Palestine, Inc.*, No. 1:17-cv-3591, 2019 U.S. Dist. LEXIS 239606 (N.D. Ill. Dec. 13, 2019).

On July 16, 2024, the parties appeared for a hearing before the circuit court to present evidence and argument on AJP's petition. During the hearing, counsel for AJP "admitted that it missed" registering with the Commissioner of the Virginia Department of Agriculture and Consumer Services. AJP's counsel also acknowledged that "the Attorney General absolutely had a right to look into and to seek information about whether AMP was in compliance with the law" and "whether AMP had filed all necessary forms." However, counsel for AJP explained that AJP had filed "this petition because the information sought beyond what has been provided, the information to which we object, . . . [t]here are constitutional violations." Citing the United States Supreme Court's decision in *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595 (2021), AJP's counsel argued that the CID "violates the First Amendment and the right of free association for seeking detailed donor information." Counsel for AJP maintained that in "the *Bonta* case," the Supreme Court denied "a similar type of relief to the State of California which sought donor information." According to AJP's counsel, "the Supreme Court stated that was inappropriate" and was "too broad for what they were seeking. It didn't relate. The State

---

[1] The Attorney General also filed a plea in bar on the grounds that AJP's petition was untimely. In the plea in bar, the Attorney General asked the circuit court to bar AJP's request for counter discovery. The circuit court ultimately denied the plea in bar, finding that AJP had timely filed its petition. The Attorney General has not assigned cross error to that decision of the circuit court in this appeal.

-3-

did not establish the correlation between what it properly could enforce and what it sought. And that is the same situation here."

In response, the Attorney General argued that AJP "admitted that they failed to register as a charity in Virginia" and that "they did not make that registration statement for seven years." Although AJP had corrected its most recent failure to register in 2023, there still were "seven years that have not been accounted for and each of those seven violations are subject to a punishment under the statute." In addition, AJP failed to certify during that seven-year period in which it was unregistered that "no funds have been used directly or indirectly to benefit [or] to provide support to terrorists, terrorist organizations, terrorists activities, or family members of any terrorist." The Attorney General contended that AJP's failure to register and to certify that it was not misusing funds "in and of itself clears, easily clears the hurdle of reasonable cause" because "[r]easonable cause does not require a finding that a violation has actually occurred."

Addressing AJP's contention that the Attorney General should not be able to access AJP's donor lists, the Attorney General argued that the United States Supreme Court's decision in *Bonta* "is not applicable to this instance" because "[t]he California statute at issue there required as a matter of course every charity or non-profit to register when they register with the State of California to also as a matter of course disclose their donors." The Attorney General noted that Virginia, by contrast, does not require charities "to disclose their list of donors. Only in this instance where we have an admitted violation of the statute has the Attorney General [] taken the step to issue [a] CID and ask for donor information." In Virginia, the Attorney General also is required "to keep information he obtains during the course of the investigation confidential." He went on to explain why donor information was necessary to the investigation, stating:

> Donor information can be useful to the Attorney General to see how the solicited funds are being used, and it can also be useful to the Attorney General to determine whether and to what extent there are victims. There may be unwitting donors to this charity that if in fact the charity has violated the law in other ways need to be compensated for their victim[hood].

-4-

After hearing argument from counsel, the circuit court ruled:

> [T]he Attorney General was entirely within its statutory authority because AMP had directly admitted it did not register properly prior to soliciting donations. That in itself, the Court finds, provided reasonable cause for legitimate concerns of funds being used for their stated purpose pursuant to Sections 57-59 and 59.1-9.10.

The circuit court concluded that "the Attorney General has acted with good faith and reasonably in accord with the statute, has not exceeded its authority, and consequently the petition for an order to modify or set aside the civil investigative demand is denied." The circuit court then gave the parties a chance "to note your exceptions to the Court's ruling." However, AJP's counsel did not object to or otherwise raise any concerns with the circuit court's oral rulings from the bench at the conclusion of the hearing.

By final order entered on July 30, 2024, the circuit court memorialized its oral pronouncements from the earlier hearing. In that final order, the circuit court found that "the Attorney General was entirely within his statutory authority to initiate a Civil Investigative Demand, because American Muslims for Palestine directly admitted it did not properly file its Initial Registration Statement." The circuit court further found that AJP's failure to register "provided *per se* reasonable cause for legitimate concerns as to whether funds were being used for their stated purpose, pursuant to Code §§ 57-59 and 59.1-9.10." In addition, the circuit court found that "the Attorney General acted in good faith and reasonably in accordance with the statutory requirement and has not exceeded its authority."

On August 5, 2024 (which was within the period that this matter was still within the bosom of the circuit court), AJP filed in the circuit court a "Motion for Stay Pending Appeal or, in the Alternative, for Specification of *Supersedeas* Bond Amount." In that motion, AJP claimed that it did not have to comply with the CID "during the pendency of AJP's planned appeal"—and that any bond amount it would have to pay on appeal "for this case should be only nominal." *However, AJP did not object to any specific findings of the circuit court*—and AJP

-5-

also did not ask the circuit court to clarify its earlier decision denying AJP's petition or even file a timely motion to reconsider its decision.[2] On August 26, 2024, AJP timely filed its notice of appeal in the circuit court.

On October 11, 2024, the circuit court entered an order declaring that the court no longer had jurisdiction to consider AJP's stay request. The circuit court determined that AJP's stay request was actually a request for a declaratory judgment, and the court explained that it "does not retain concurrent jurisdiction after notice of appeal to address" such a request. The court also denied AJP's request for specification of the *supersedeas* bond amount because the request "failed to adequately clarify whether the provisions of § 8.01-676.1 relating to bonds securing a suspension of judgment pending appeal are applicable." On November 4, 2024, AJP moved the circuit court to reconsider its October 11, 2024 order that said the court no longer had jurisdiction over the case. However, AJP did not challenge the circuit court's earlier July 30, 2024 final order in its motion to reconsider the October 11, 2024 order.

On July 15, 2025, the parties appeared before this Court for oral argument on AJP's appeal. At the conclusion of oral argument, this Court directed the parties to provide supplemental briefing addressing "what additional clarifications were sought" by AJP from "the circuit court in the motion for reconsideration," which AJP claimed at oral argument to have filed following the circuit court's July 30, 2024 order. In its supplemental brief to us, AJP "acknowledge[d] it did not file a document entitled 'Reconsideration' or 'Clarification' to the Circuit Court specifically" addressing "the constitutional objections" it now raises to this Court on appeal. In response, the Attorney General filed a supplemental brief asking this Court to affirm the judgment of the circuit court because AJP has "now finally admit[ted] that it never" exercised "its ample opportunities to object to the circuit court's July 30, 2024 Order."

## ANALYSIS

On appeal to this Court, AJP raises three assignments of error. First, AJP argues, "The circuit court erred in issuing its oral opinion on July 16, 2024," and in "subsequently entering its written Order dated July

---

[2] In AJP's response to the Attorney General's motion opposing AJP's stay request, AJP also failed to challenge the circuit court's denial of AJP's petition to modify or set aside the CID.

30, 2024," by "failing to make any specific findings as to the questions of fact and issues of law presented in Appellant's Petition for an Order to Modify or Set Aside Attorney General's Civil Investigative Demand ('CID') Issued to AJP."  Second, AJP further argues that the circuit court erred "to the extent the Circuit Court ruled only that the Attorney General had sufficient reason to initiate a CID to AJP to some extent (due to AJP's earlier partial noncompliance with some administrative requirements of Virginia law)" but "failed to address AJP's challenges to the excessive scope of the CID."  Third, AJP argues, "The circuit court erred in entering [its] oral opinion on July 16, 2024," and "in subsequently issuing its written Order of July 30, 2024," by "failing to address or sustain the questions of constitutional law AJP timely raised in its Petition." .

"Rule 5A:18 provides that 'no ruling of the trial court . . . will be considered as a basis for reversal unless an objection was made with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice.'" *Commonwealth v. Carolino*, 303 Va. 399, 409 (2024) (alteration in original) (quoting Rule 5A:18).  "Rule 5A:18 requires a litigant to make timely and specific objections." *Id.* (quoting *Brown v. Commonwealth*, 279 Va. 210, 217 (2010)).  Indeed, "the onus is upon the appellant to provide [the appellate court] with a sufficient record from which [it] can decide whether the trial court erred as alleged.  A failure to furnish a sufficient record will result in an affirmance of the judgment appealed from." *Shaikh v. Johnson*, 276 Va. 537, 545 (2008) (alterations in original) (quoting *Woods v. R.D. Hunt & Son, Inc.*, 207 Va. 281, 287 (1966)); *Kiser v. Hannah*, 148 Va. 594, 599 (1927) (stating that the "burden is upon the appellant to point out clearly and convincingly the error in the decision of the trial court").  "The purpose of the contemporaneous objection rule is to alert opposing counsel to the issue and to provide the trial court an opportunity to intelligently rule on the issue." *Carolino*, 303 Va. at 409; *Hannah v. Commonwealth*, 303 Va. 106, 126-27 (2024).  "Procedural-default principles require that the argument asserted on appeal be the same as the contemporaneous argument at trial." *Carolino*, 303 Va. at 409 (quoting *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019)).  The Supreme Court has noted that appellate courts have "the discretion to invoke the contemporaneous objection bar even when a litigant has not." *Durham v. Commonwealth*, 303 Va. 310, 322 n.2 (2024).

-7-

In this case, AJP simply failed to preserve these questions for appeal because AJP did not obtain a ruling from the circuit court on the claims that it now raises on appeal—and then never even asked the circuit court to rule on those claims in the pleadings it filed with the circuit court after the circuit court's ruling. At no time during the July 16, 2024 hearing before the circuit court did AJP object to any of the oral rulings made by the circuit court from the bench—even though the circuit court expressly stated on the record to the parties that they were "certainly welcome to note your exceptions to the Court's ruling."

Moreover, although AJP filed multiple pleadings and motions in the circuit court after the court issued its final order on July 30, 2024, AJP failed to ever object to the circuit court's final order. On August 5, 2024, while the matter was still under the jurisdiction of the circuit court, AJP did file in the circuit court a "Motion for Stay Pending Appeal or, in the Alternative, for Specification of *Supersedeas* Bond Amount." In that motion, AJP addressed the circuit court's July 30, 2024 final order. Despite indicating that it "wishes to pursue an appeal" of that order, however, AJP did not raise at that time the arguments that it now raises before this Court on appeal, including its argument claiming the circuit court erred by failing to rule that the Attorney General's demand for the donor lists violates AJP's freedom of association rights under the First Amendment. After the Attorney General filed a brief in response to AJP's August 5, 2024 motion seeking a stay or a *supersedeas* bond in the alterative, AJP then filed a motion on August 13, 2024 rebutting the Attorney General's brief. However, in that pleading, AJP again failed to raise any objection to the circuit court's July 30, 2024 final order while the matter was still within the bosom of the circuit court—or, for example, make an attempt to get the circuit court to rule on AJP's First Amendment Freedom of Association argument. Furthermore, after the circuit court entered an order on October 11, 2024, ruling that the circuit court no longer had jurisdiction to consider AJP's stay request, AJP filed a motion asking the circuit court to reconsider that order. However, AJP's motion yet again did not contain any objection to the circuit court's July 30, 2024 final order, including on the circuit court's lack of any reference in the final order to AJP's First Amendment Freedom of Association arguments and claims (or to the circuit court's alleged failure to address the scope of the CID).

This Court directed the parties to file supplemental briefing addressing "what additional clarifications were sought" by AJP from "the circuit court in the motion for reconsideration." AJP then filed a supplemental brief with this Court in which it "acknowledge[d] it did not file a document entitled 'Reconsideration' or 'Clarification' to the Circuit Court specifically" addressing "the constitutional objections" AJP now raises to this Court on appeal.

AJP nonetheless argued in its supplemental brief that it "did present its constitutional arguments, including the need to apply the proper analysis to the constitutional objections" in (1) its August 5, 2024 motion to stay pending appeal, (2) its August 13, 2024 rebuttal in support of its motion to stay pending appeal, and (3) its untimely filed November 4, 2024 motion to reconsider the later October 11, 2024 order of the circuit court. A review of these pleadings and the specific page numbers cited by AJP in its supplemental brief as to where it preserved for appeal these assignments of error (all of which argue that the circuit court failed to rule on claims that AJP made during the July 16, 2024 hearing) reveals that AJP never objected in these pleadings to the circuit court's July 30, 2024 final order or, in those pleadings, ever asked the circuit court to make such rulings. Indeed, a review of the pleadings also reveals that AJP never asked the circuit court in those pleadings to issue a ruling on any of the claims that AJP now raises on appeal—*despite the fact that AJP filed pleadings asking the circuit court to do other things* after the circuit court issued the July 30, 2024 final order.

Pursuant to Rule 1:1(a),[3] AJP had "twenty-one days after the date of entry" of the circuit court's July 30, 2024 final order, "and no longer," to object to that July 30, 2024 order (and, for example, at least attempt to obtain a ruling on its First Amendment Freedom of Association argument or on its other assignments of error). Rule 1:1(a). *See also Monroe v. Monroe*, 302 Va. 387, 397 (2023) (explaining that "Rule 1:1 ends the

---

[3] Rule 1:1(a) provides that all final judgments (like the July 30, 2024 final order in this case) can only be "modified, vacated, or suspended for twenty-one days after the date of entry." Rule 1:1(a).

-9-

litigation in a trial court 21 days after entry of a final order");[4] *see also, e.g.*, *Harless v. Williams*, 84 Va. App. 242, 258 (2025) ("It is the appellant's burden 'to obtain a clear ruling from the [circuit] court' on an issue he wishes to raise on appeal." (alteration in original) (quoting *Northcraft v. Commonwealth*, 78 Va. App. 563, 610 n.17 (2023))). It is without question that AJP did not object during the July 16, 2024 hearing before the circuit court to the court's oral rulings from the bench. AJP subsequently filed pleadings and motions with the circuit court after the circuit court issued its July 30, 2024 final order—but without ever objecting to the circuit court's ruling in that final order or claiming, for example, that the circuit court failed to rule on AJP's claim that the CID is unconstitutional under the First Amendment's right to freedom of association. Thus, AJP's time to obtain a ruling from the circuit court on its arguments had passed. Therefore, for all of these reasons, this Court cannot reach AJP's assignments of error on appeal as it was AJP's responsibility to seek to obtain a ruling from the circuit court (while the matter was still under the jurisdiction of the circuit court) in order to preserve AJP's assignments of error (and arguments that the circuit court failed to rule) for appeal to this Court.

## CONCLUSION

In short, AJP did not preserve its assignments of error for appeal in which AJP claimed the circuit court had failed to rule on its arguments below because AJP failed to object to the circuit court's July 30, 2024 final order. AJP then failed even to file a motion asking the circuit court to rule on those arguments that AJP now has listed as its assignments of error to this Court on appeal. AJP failed to do so even though AJP filed *other* pleadings and motions with the circuit court within the 21 days after the circuit court had issued its final order in this case when the circuit court still retained jurisdiction over the case. Simply put, AJP had ample time and opportunity to object to what it claims was the circuit court's failure to rule on AJP's

---

[4] The Supreme Court has been clear that it applies this 21-day rule "rigorously" because "[t]here are strong policy reasons favoring certainty of results in judicial proceedings." *Commonwealth v. Morris*, 281 Va. 70, 77 (2011) (alteration in original) (quoting *McEwen Lumber Co. v. Lipscomb Brothers Lumber Co.*, 234 Va. 243, 247 (1987)).

arguments—and to ask the circuit court to rule on those arguments that were still then before the circuit court. However, AJP failed to ask the circuit court to do so despite filing other pleadings asking the circuit court for a stay while the matter was on appeal and to allow a *supersedeas* bond.

Therefore, for all of the foregoing reasons, we find that appellant AJP has failed to preserve for appeal its assignments of error and arguments alleging that the circuit court erred by failing to rule on AJP's arguments to the circuit court, and, thus, we do not disturb the judgment of the Circuit Court of the City of Richmond. The appellant must pay to the appellee $150 damages.

This order shall be certified to the circuit court.

                A Copy,

                    Teste:

                                        A. John Vollino, Clerk

                    By:      *Kristen M. McKenzie*

                                        Deputy Clerk